UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W : | Civil No. 3:23-cv-00806-JFS |
| Plaintiffs : | |
| v. : | JURY TRIAL DEMANDED |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center : | |
| Defendants : | |

**PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT HENRY LINDNER'S MOTION TO DISMISS**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully request that this Honorable Court deny the motion of Defendant Henry Lindner, M.D., and state as follows:

**I.   COUNTERSTATEMENT OF FACTS**

Plaintiffs request that the Court consider the facts cited herein, beginning with the fact that the Complaint invokes this Court's diversity jurisdiction, Compl. at ¶¶ 1-3 (M.D. Pa. May 16, 2023), not supplemental jurisdiction as discussed in Defendant's motion and brief.  Plaintiffs agree that Pennsylvania law applies.

1

In substance, the Complaint alleges that Defendant's treatment of Plaintiff Stacey Wolking ("Stacey") involved a disease was that was unknown, a diagnosis that was unconfirmed, and drugs that were unsafe. Defendant himself acknowledged that human disease caused by the *babesia odocoilei* parasite was "unknown to mainstream medicine. *Id.* at ¶ 14. Stacey has never tested positive for this disease. *Id.* at ¶ 17. Defendant treated her for it anyway, with a drug regimen of his own invention that he knew posed serious and dangerous risks to patients, including suicidality. *Id.* at ¶¶ 15-16, 23-24. Defendant gave patients "no alternative but to continue to increase the potency of the regimen." *Id.* at ¶ 25.

The Complaint alleges many examples of Defendant's reckless and outrageous conduct, but two particular episodes stand out. First, Defendant wrote to Stacey that there was "no upper limit" on prednisone dosing, and that she should take all that she needed. *Id.* at ¶ 48. Defendant then approved a dose of 1,848 milligrams in a single day, which was nearly twenty times what a reasonable physician might rarely, if ever, give to a single patient outside of a hospital setting. *Id.* at ¶¶ 32, 59. On the same day that Defendant approved this massive dose of corticosteroids, he acknowledged that the drugs were weakening Stacey's muscles, bones, and connective tissues. *Id.* at ¶ 58. The very next day, he wrote another prescription for even more drugs. *Id.* at ¶ 60.

Second, after Stacey was admitted to Loudon Hospital and attempted to discontinue her own care and feeding so that she could die, Defendant tried to persuade Plaintiff Daryl Wolking ("Daryl") to remove Stacey from her treating physicians' care and give her more of the same corticosteroids that had put her in the hospital in the first place. *Id.* at ¶¶ 61-68. Defendant wrote to Daryl that Stacey's treating physicians would not understand the right way to care for her. *Id.* at ¶ 68.

## II. QUESTIONS PRESENTED

Plaintiffs answer Defendant's questions in the negative, and contend that only the following two questions are presented, with affirmative answers to both:

1. Whether the facts alleged in the Complaint, if accepted as true, establish a plausible demand for punitive damages; and

2. Whether the facts alleged in the Complaint, if accepted as true, establish plausible claims for Intentional[1] Infliction of Emotional Distress.

---

[1] Defendant misidentifies Plaintiffs' claims as being for Negligent Infliction of Emotional Distress, despite the fact that intent and recklessness are plainly alleged in Counts Two and Three and throughout the Complaint.

### III.     MOTION TO DISMISS STANDARD

When deciding a motion to dismiss,[2] the Court must accept the Complaint's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those allegations must establish the plausibility of a plaintiff's claim, which is not equivalent to "probability." *Id.* In determining whether a complaint meets the plausibility threshold, courts must consider the facts alleged and reasonable inferences therefrom in a light favorable to the plaintiff. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016). It is the moving party's – not the plaintiff's – burden to show that the complaint fails to state a claim. *Talarico v. Skyjack, Inc.*, 191 F. Supp. 3d 394, 397 (M.D. Pa. 2016) (citation omitted).

### IV.     ARGUMENT

Defendant's motion seeks the dismissal of Plaintiffs' request for punitive damages and their emotional distress claims. Plaintiffs address each in turn.

---

[2] To the extent that Defendant separately moves to strike the demand for punitive damages, "a Rule 12(f) motion to strike has 'no application to a request for punitive damages, in that it does not constitute redundant, immaterial, impertinent, or scandalous matter.'" *Castelli-Velez v. Moroney*, No. 20-CV-00976, 2021 WL 978814, at *4 (M.D. Pa. Mar. 16, 2021) (citations and quotation omitted); *Jordan v. Wilkes-Barre Gen. Hosp.*, No. 07CV390, 2008 WL 3981460, at *5 (M.D. Pa. Aug. 22, 2008) (treating Rule 12(f) motion on punitive damages as motion to dismiss).

**A. Punitive Damages**

Defendant's motion should be denied because it is premature to dismiss requests for punitive damages at the pleadings stage. *See, e.g.*, *Stanco v. Sekelsky*, No. 22-CV-00573, 2023 WL 2577240, at *3 (M.D. Pa. Mar. 20, 2023) (citation and quotation omitted); *Medina v. Haas*, No. 21-CV-1000, 2021 WL 6063237, at *4 (M.D. Pa. Dec. 22, 2021) ("Because a punitive damages award hinges on a defendant's state of mind, a judgment on the pleadings that asks to dismiss a punitive damages claim is not appropriate. . . . This is well established in this District, and in our sister districts across the Commonwealth.").

The Complaint contains sufficient and detailed factual allegations which, if accepted as true, establish the plausibility of Plaintiff's entitlement to punitive damages because of Defendant's recklessness.[3] A punitive damages request based on reckless indifference "must be supported by evidence sufficient to establish that

---

[3] Defendant moves to strike or dismiss the terms "willful," "wanton," and "reckless" from the Complaint, but it is only necessary to consider Defendant's recklessness to resolve this motion. Pennsylvania's "MCare" Act, 40 P.S. § 1303.505(a), effectively equates the three terms with respect to punitive damages, and so has the Pennsylvania Supreme Court. *See SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704-05 (Pa. 1991); *see also Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1275 (3d Cir. 1979) ("[R]eckless conduct causing emotional distress renders an actor as liable as if he had acted intentionally.").

(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 257 (E.D. Pa. 2008) (quoting *Hutchison ex. rel. Hutchison v. Luddy*, 870 A.2d 766, 771-72 (Pa. 2005)).

Defendant's "subjective appreciation of the risk of harm" that he was committing medical malpractice begins with a diagnosis that he himself acknowledged was "unknown to mainstream medicine." Compl. at ¶ 14. He then invented his own treatment program for the unknown disease, and directed Stacey to continue following it even as she failed to test positive and her condition worsened. *Id.* at ¶¶ 15-17.

Any doctor should be aware that making up a treatment program for an unknown disease entails major risks to patients, but the Complaint is far more specific: it alleges that Defendant knew the drug regimen "posed risks of depression and suicidality for his patients, as well as physical side effects." *Id.* at ¶ 23. His "Babesiosis Treatment Guide" described the risk that his patients would experience side effects like "gastrointestinal symptoms, anxiety, depression, delirium, and panic attacks." *Id.* at ¶ 24. The side effects Defendant included in his paperwork were not merely something he had read about; he had seen them firsthand when he caused

6

"osteoporosis, weakened muscles, a puffy face, and protuberant abdomen" in his own daughter. *Id.* at ¶¶ 34, 37.

The Complaint thus satisfies the first element of recklessness, and it also contains sufficient allegations of the second: that Defendant continued to act with disregard for the harm of which he was aware. The Court could resolve this element of recklessness solely by considering the emails in which Defendant wrote that Stacey had "no choice but to take these high amounts" of corticosteroids and that there was "no upper limit on dosing." *Id.* at ¶¶ 44, 48. There are in fact well-established limits on corticosteroid dosing, and Defendant was aware of them, because he communicated his fear that Stacey's local pharmacy would report him. *Id.* at ¶¶ 32, 71.

Nonetheless, that fear did not stop Defendant from prescribing higher and higher amounts of corticosteroids to Stacey, despite their increasingly severe side effects. For example, on the same day Defendant acknowledged that "the prolonged high steroid doses are weakening her muscles, bones, and connective tissues," he approved a dose of 1,848 milligrams. *Id.* at ¶¶ 58-59. That dosage is nearly twenty times the amount that a reasonable physician would give a patient outside of a hospital setting under rare circumstances. *Id.* at ¶ 32. The very next day, Defendant prescribed even more corticosteroids to Stacey. *Id.* at ¶ 60.

7

The Complaint's description of how Defendant continued escalating Stacey's corticosteroid dosages even as he knew that she was experiencing such negative side effects is more than sufficient to survive a motion to dismiss. *Cf. Thomas v. Cnty. of Chester, Pocopson Home*, 312 F. Supp. 3d 448, 455 (E.D. Pa. 2018) (denying motion to dismiss punitive damages where doctor was made aware of nursing home patient's decreased food intake and weight loss, and did not make any changes to the care plan); *Stroud*, 546 F. Supp. 2d at 257) (denying motion to dismiss where hospital's treatment did not address patient's complaints and CT results); *Medvecz v. Choi*, 569 F.2d 1221, 1229 (3d Cir. 1977) (holding that a jury could conclude that there was reckless indifference if it found that doctor failed to monitor and respond to patient's changing reaction to drug); *cf. Mattson v. Idaho Dep't of Health & Welfare*, No. 49187, 2023 WL 3236922, at *14 (Idaho May 4, 2023) (finding a material issue of fact where patient attempted suicide after defendant prescribed Prozac but failed to warn, educate, and monitor patient).

The Complaint's description of Defendant's reckless infliction of emotional distress upon Plaintiffs likewise provides enough factual specificity for Plaintiffs' demand for punitive damages to survive the motion to dismiss. With respect to Stacey, as noted above, Defendant's written materials explicitly acknowledged the risk that his treatment program could cause various forms of emotional distress,

8

including suicidality, anxiety, depression, delirium, and panic attacks. Compl. at ¶¶ 23-24. Nonetheless, Defendant continued escalating Stacey's corticosteroid dosages, even as she said she felt like she was dying. *Id.* at ¶ 56. Her emotional distress continued at Loudon Hospital, which Defendant himself attributed to steroid withdrawal, a risk he discussed with Plaintiffs in September 2022, before he rapidly escalated Stacey's corticosteroid dosages. *Id.* at ¶¶ 40, 63-68.

Defendant's recklessness with respect to Daryl was at its most extreme when he advised Daryl to remove Stacey from the care of her doctors and give her additional corticosteroids against their advice. *Id.* at ¶¶ 67-68. Defendant knew that Daryl had been "consumed with [S]tacey's wish to stop treatment," yet he still forced Daryl onto the horns of a terrible dilemma, making him choose among doctors with diametrically opposed plans, as Stacey's life hung in the balance. *Id.* at ¶ 64. It is difficult to imagine more straightforward case recklessness by a physician than one who circumvents the lifesaving work of real doctors.

### B. Emotional Distress Claims

Apart from his challenge to Plaintiffs' request for punitive damages, Defendant also argues for the dismissal of the intentional infliction of emotional distress claims brought by Stacey and Daryl Wolking, respectively. The Third Circuit has predicted that the Pennsylvania Supreme Court would recognize the tort

9

of intentional infliction of emotional distress, *see Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 890 (3d Cir. 1998), and the Pennsylvania Superior Court has recognized the same tort, including when it is alleged alongside a medical malpractice claim. *See Hoffman v. Mem'l Osteopathic Hosp.*, 492 A.2d 1382, 1386 (Pa. Super. 1985); *see also Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) (acknowledging that the minimum elements of such a claim are found in Restatement (Second) of Torts § 46).

"At the pleading stage, the court is to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' as a matter of law." *Smith v. Roberts*, No. 18-CV-1957, 2019 WL 3838316, at *3 (M.D. Pa. Aug. 15, 2019) (quotation marks and citations omitted). The court must determine whether the conduct was so outrageous in character as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Dobson v. Milton Hershey Sch.*, 356 F. Supp. 3d 428, 439 (M.D. Pa. 2018) (quotation marks and citations omitted).

In making this determination, the Court must still view the factual allegations in a light most favorable to Plaintiffs. *See, e.g.*, *Hollinghead v. City of York*, 912 F. Supp. 2d 209, 226 (M.D. Pa. 2012). Courts in this Circuit have also recognized that the outrageousness standard is less stringent in the context of a special relationship,

such as physician-patient. *Sharrow v. Bailey*, 910 F. Supp. 187, 194 (M.D. Pa. 1995); *Jones v. CVS Pharmacy, Inc.*, No. 21-CV-157, 2022 WL 4536124, at *7 (M.D. Pa. Sept. 28, 2022); *see also Woolfolk v. Duncan*, 872 F. Supp. 1381, 1391 (E.D. Pa. 1995) (collecting cases); *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989).

This is not a case where a defendant's conduct varies from the norm by degree. Defendant here approved of a prednisone dose nearly twenty times the normal limit, just three days after Stacey told him she was "dying." Compl. at ¶¶ 55-59. Stacey followed Defendant's outrageous advice because he convinced her that she was harboring dangerous parasites, leaving her with "no alternative" but to overdose on corticosteroids. *Id.* at ¶¶ 25-28. Defendant even lied to Stacey, telling her that there was "no upper limit on dosing," and to Daryl, telling him that Stacey "needed" such high doses, both statements which were untrue. *Id*. at ¶¶ 32, 48, 55.

Defendant's outrageous conduct continued even after Stacey was admitted to Loudon Hospital. *See Guzzardi*, 875 F.2d at 52 ("Pennsylvania courts have also indicated they will be more receptive where there is a continuing course of

11

conduct.") As discussed above, Defendant's determination to persuade Daryl to give Stacey more of the drugs that nearly killed her is intolerable conduct by a physician.[4]

Although each case addressing the outrageousness of a complaint's allegations is unique, analogous decisions in this circuit support the denial of Defendant's motion here. In *Jones v. CVS Pharmacy, Inc.*, for example, Judge Conner considered allegations that CVS pharmacists ignored a plaintiff's allergy concerns and withheld critical information about her medications. 2022 WL 4536124 at *7. He concluded that these allegations met the "outrageousness" standard because the pharmacists were medical professionals who were "acutely aware" of the plaintiff's "objectively serious" condition. *Id.* at *7-8. Defendant here

---

[4] Although Defendant argues that the Complaint has not sufficiently alleged a physical manifestation of Daryl's emotional distress, the Complaint specifically cites Daryl's fatigue and insomnia, among other symptoms of severe emotional distress. Compl. at ¶ 92. These allegations are sufficient at the pleading stage. *Cf. Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 200 (Pa. Super. Ct. 2008), *aff'd*, 614 Pa. 98, 36 A.3d 83 (Pa. 2011) (approving of allegations of "insomnia" among other symptoms); *Flynn v. Wilson, Morrow, Broderick, O'Neill & Thompkins, L.L.P.*, No. 1375 EDA 2012, 2013 WL 11287674, at *4 (Pa. Super. Ct. Jan. 3, 2013) (holding evidence of "anxiety" was enough for emotional distress claim to survive summary judgment); *Fargione v. Sweeney*, No. CV 16-5878, 2017 WL 4283955, at *5 (E.D. Pa. Sept. 27, 2017) (denying motion to dismiss where complaint alleged "numerous physical symptoms, including, *inter alia*, stress, nervousness, anxiety, and insomnia").

was also acutely aware of Stacey's objectively serious condition, but he ignored her concerns about maximum dosages in a similarly outrageous manner.

Likewise, in *Ponzini v. Monroe County.*, Judge Mariani concluded that the plaintiffs' allegations of improper psychiatric care were sufficiently outrageous. 897 F. Supp. 2d 282, 290 (M.D. Pa. 2012). That case dealt with medication withdrawal, which Stacey experienced here because of Defendant's overprescribing. In both cases, the victims suffered from depression, gastrointestinal distress, and suicidal thoughts. *Id.* at 285. At the pleading stage, these allegations are sufficient, even though the burden gets heavier as the case proceeds. *Id.* at 290-91.

While *Ponzini* dealt with medication withdrawal, in *McDonald-Witherspoon v. City of Philadelphia* the court held that allegations concerning too much medication can also meet the outrageousness standard. No. CV 17-1914, 2018 WL 4030702, at *13 (E.D. Pa. Aug. 23, 2018), *aff'd*, No. 21-1019, 2021 WL 6101246 (3d Cir. Dec. 21, 2021). There, the defendants gave an inmate more than a month's worth of blood pressure medicine despite knowing that he suffered from psychiatric conditions and had just left a psychiatric hospital. *Id.* at *1. The inmate consumed more than eleven times the therapeutic level of the drug and died. *Id.* at *2. The court found that these allegations were sufficiently outrageous because the defendants "willfully gave Jones a lethal amount of medication, with full knowledge

13

of the danger it posed to him." *Id.* at * 13. Likewise here, Lindner knew of the dangers posed to Stacey but continued to give her the massive doses of corticosteroids that nearly killed her.

Finally, in *Chuy* the Third Circuit allowed an emotional distress claim to reach the jury where evidence in the record suggested that a doctor for the Philadelphia Eagles had revealed a player's disease to a journalist, despite the doctor's awareness that the player did not actually have that disease. *See* 595 F.2d at 1274-75. As the court described it, the doctor told a falsehood knowingly, and was reckless about the emotional distress it caused. *Id.* Here, the Defendant was reckless with respect to both the falsehood (his unconfirmed diagnosis of an unknown disease) and the consequences, but *Chuy* discerned no legal difference between those mental states, and neither have other Pennsylvania courts. *Id.* at 1275; *see also supra.* at 5, note 3.

For all of these reasons, the Complaint's allegations sufficiently describe both reckless and outrageous conduct by Defendant, and his motion should be denied in its entirety.

### V. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO FILE AND AMENDED COMPLAINT

If the Court concludes that Plaintiffs' complaint is insufficient in any respect, Plaintiffs respectfully request that the Court "expressly state . . . that the plaintiff has

leave to amend within a specified period of time." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("It does not matter whether or not plaintiff seeks leave to amend. . . . [A] district court must permit a curative amendment, unless an amendment would be inequitable or futile.") (quotation marks and citations omitted).

## VI. CONCLUSION

For the reasons set forth herein, Plaintiffs Stacey and Daryl Wolking, respectfully request that this Court deny Defendant's motion in its entirety, and enter an Order in the form proposed.

**KLINE & SPECTER, P.C.**

BY: *Conor Lamb*
_____
SHANIN SPECTER, ESQUIRE
PA Attorney I.D. No. 40928
CONOR LAMB, ESQUIRE
PA Attorney I.D. No. 304874
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 402-2359
Shanin.Specter@klinespecter.com
Conor.Lamb@klinespecter.com

Date: June 14, 2023

## CERTIFICATE OF SERVICE

    I, Conor Lamb, Esquire, hereby certify that I served a true and correct copy of the foregoing Plaintiffs' Brief in Opposition to Defendant Henry Lindner's Motion to Dismiss via electronic service with the Clerk's E-file system on the 14th day of June 2023, upon all counsel and parties of record.

*Conor Lamb*
_____
CONOR LAMB, ESQUIRE