UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W | : : | Civil No. 3:23-cv-00806-JFS |
| Plaintiffs | : : | |
| v. | : : | JURY TRIAL DEMANDED |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center | : : : : : | |
| Defendants | : | |

**PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT YOUNGS APOTHECARY, INC., d/b/a TUNKHANNOCK
COMPOUNDING CENTER'S MOTION TO DISMISS**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully request that this Honorable Court deny the motion of Defendant Youngs Apothecary, Inc., d/b/a Tunkhannock Compounding Center ("Tunkhannock"), and state as follows:

I.  **COUNTERSTATEMENT OF FACTS**

Plaintiffs request that the Court consider the facts cited herein, particularly the Complaint's allegation that Tunkhannock was at all relevant times a licensed pharmacy, acting through its employees, which shared an address with Defendant

1

Henry Lindner and had full knowledge of the medications it provided to Plaintiff Stacey Wolking ("Stacey"). *See* Compl. at ¶¶ 6-8 (M.D. Pa. May 16, 2023).

As Defendant Lindner began to escalate the quantity of corticosteroids he was prescribing to Stacey, he advised her to fill her prescriptions at Tunkhannock, for fear that Stacey's local pharmacy might report him to his medical board. *Id.* at ¶ 71. Lindner did not explain why he trusted Tunkhannock not to report him, but they did share an address, and Tunkhannock willingly provided the equivalent of 19,000 milligrams of prednisone to Stacey in less than two months, all of which was prescribed by Lindner. *Id.* at ¶ 74. There is no evidence that Tunkhannock ever turned down or refused to fill one of Lindner's prescriptions for Stacey.

## II.   QUESTION PRESENTED

Should this Court dismiss paragraphs 75 through 77 of the Complaint, as requested in Tunkhannock's motion under Federal Rule of Civil Procedure 12(b)(6)?

Suggested answer: No.

## III.   MOTION TO DISMISS STANDARD

When deciding a motion to dismiss, the Court must accept the Complaint's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those allegations must establish the plausibility of a plaintiff's claim, which is not equivalent to "probability." *Id.* In determining whether a complaint meets the plausibility threshold, courts must consider the facts alleged and reasonable

inferences therefrom in a light favorable to the plaintiff. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016). It is the moving party's – not the plaintiff's – burden to show that the complaint fails to state a claim. *Talarico v. Skyjack, Inc.*, 191 F. Supp. 3d 394, 397 (M.D. Pa. 2016) (citation omitted).

## IV.   ARGUMENT

Tunkhannock's motion should be dismissed because it addresses only three paragraphs of the Complaint, which do not themselves constitute a "claim" under Federal Rule of Civil Procedure 12(b)(6). Tunkhannock's motion is also premature, and Tunkhannock cannot meet its burden because of the Complaint's detailed and plausible factual allegations.

### A. Paragraphs 75 through 77 of the Complaint are not a "claim," and dismissing them would be premature.

Numerous courts have distinguished between the sufficiency of a "claim" in a complaint and the same complaint's demand for a particular remedy. The former is properly the subject of a Rule 12(b)(6) motion, while the latter is not. *See AG Spectrum Co. v. Elder*, 181 F. Supp. 3d 615, 617 (S.D. Iowa 2016) (deeming it "well-settled law" that "the demand for judgment is not considered part of the claim" and collecting cases); *see also Onely v. Redner's Markets, Inc.*, No. CV 21-4785, 2022 WL 1773606, at *6 (E.D. Pa. June 1, 2022) (" [T]he demand for judgment is not considered part of the claim.") (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1255 (4th ed. 2022) and collecting cases); *Lima v.*

3

*Newark Police Dep't*, 658 F.3d 324, 332 (3d Cir. 2011) (noting complaint's "Prayer for Relief" section was not "a particular claim or count").

In fact, "[t]o survive a motion to dismiss, it need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that *some* relief may be granted by the court." *Richard Roe W.M. v. Devereux Found.*, No. CV 21-2655, 2023 WL 173918, at *11 (E.D. Pa. Jan. 12, 2023) (quotation marks and citations omitted). If a complaint can survive a motion to dismiss even where the plaintiff may not be entitled to the relief demanded, *a fortiori* the Complaint should survive where, as here, the challenged relief is not even explicitly requested. Paragraphs 75 through 77 do not mention punitive damages against Tunkhannock.

To the extent that Tunkhannock seeks only to dismiss language related to recklessness and other mental states in paragraph 76 of the Complaint, "[r]eckless conduct is the factual characterization of the events that took place giving rise to the negligence action; it is not a claim in itself that the court can dismiss." *Castelli-Velez v. Moroney*, No. 20-CV-00976, 2021 WL 978814, at *3 (M.D. Pa. Mar. 16, 2021). At the very least, Plaintiffs deserve to conduct discovery on their allegations that Tunkhannock was reckless, even if the claims "sound[] primarily in negligence." *See Cobb v. Nye*, No. 14-CV-0865, 2014 WL 7067578, at *4 (M.D. Pa. Dec. 12, 2014). It would be against the regular practice in this district to dismiss such

language so early in the litigation. *See Moroney*, No. 20-CV-00976, 2021 WL 978814, at *4; *see also Stanco v. Sekelsky*, No. 22-CV-00573, 2023 WL 2577240, at *3 (M.D. Pa. Mar. 20, 2023) (quotation marks and citation omitted).

Tunkhannock's separate request to dismiss the Complaint's reference to "interest, costs, and damages for prejudgment delay" in its final sentence should be denied for the same reasons. *See Childs v. Fitness Int'l LLC*, No. 22-CV-05196-JDW, 2023 WL 3594180, at *5 (E.D. Pa. May 22, 2023) (concluding that "litigation costs are not claims," that the availability of attorneys' fees need not be addressed at the pleadings stage, and that, "[i]n any event, a stray comment in a prayer for relief is not a 'claim' to which Rule 12(b)(6) applies").

**B. The recklessness allegations are plausible.**

Although the Court need not reach the plausibility of the recklessness allegations contained in paragraph 76, if it did, it could conclude that Tunkhannock was plainly reckless. Reckless indifference involves "evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 257 (E.D. Pa. 2008) (quoting *Hutchison ex. rel. Hutchison v. Luddy*, 870 A.2d 766, 771-72 (Pa. 2005)).

Here, the Complaint alleges that Tunkhannock was a licensed pharmacy, acting through its employees. Compl. at ¶¶ 6-7. Each of Tunkhannock's pharmacists was legally required to hold a degree in pharmacology, complete an internship, and pass a comprehensive examination. *See Riff v. Morgan Pharmacy*, 508 A.2d 1247, 1251 (Pa. Super. Ct. 1986) (citing 63 Pa. Stat. Ann. § 390-3). Thus, Tunkhannock's pharmacists would have known of the risks of overprescribing corticosteroids, and they knew specifically how much they were dispensing to Stacey Wolking. Compl. at ¶ 8. That amount was nearly two hundred times an amount that would be rare to give. *Id.* at ¶¶ 32, 72-74. In other words, Tunkhannock's conduct does not differ from the norm by a matter of degree: the massive quantity of corticosteroids alleged here is so far beyond the mainstream that it could only be the product of a conscious choice to disregard the limitations inherent in the practice of pharmacology. It appears that this was why Defendant Lindner favored Tunkhannock, because he believed they would not report these reckless dosages to the authorities. *Id.* at ¶ 71. Lindner's trust that Tunkhannock would conceal and enable his reckless prescribing, combined with the two Defendants' common address, supports a reasonable inference that they were working together, and that Tunkhannock knew of the risks inherent in filling Lindner's dangerous prescriptions, but chose to do so anyway.

## V. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO FILE AN AMENDED COMPLAINT

If the Court concludes that Plaintiffs' complaint is insufficient in any respect, Plaintiffs respectfully request that the Court "expressly state . . . that the plaintiff has leave to amend within a specified period of time." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("It does not matter whether or not plaintiff seeks leave to amend. . . . [A] district court must permit a curative amendment, unless an amendment would be inequitable or futile.") (quotation marks and citations omitted).

## VI. CONCLUSION

For the reasons set forth herein, Plaintiffs Stacey and Daryl Wolking respectfully request that this Court deny Defendant's motion in its entirety, and enter an Order in the form proposed.

                                                                **KLINE & SPECTER, P.C.**

BY: _____*Conor Lamb*_____
      SHANIN SPECTER, ESQUIRE
      PA Attorney I.D. No. 40928
      CONOR LAMB, ESQUIRE
      PA Attorney I.D. No. 304874
      1525 Locust Street, 19th Floor
      Philadelphia, PA 19102
      Telephone: (215) 772-1000
      Facsimile: (215) 402-2359
      Shanin.Specter@klinespecter.com
      Conor.Lamb@klinespecter.com

Date: June 22, 2023

## CERTIFICATE OF SERVICE

I, Conor Lamb, Esquire, hereby certify that I served a true and correct copy of the foregoing Plaintiffs' Brief in Opposition to Defendant Youngs Apothecary, Inc., d/b/a Tunkhannock Compounding Center's Motion to Dismiss via electronic service with the Clerk's E-file system on the 22nd day of June, 2023, upon all counsel and parties of record.

*Conor Lamb*
_____
CONOR LAMB, ESQUIRE