## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, W/H | CIVIL ACTION 3:23-cv-00806-JFS |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| HENRY LINDER, M.D., and YOUNGS APOTHECARY, INC. d/b/a TUNKHANNOCK COMPOUNDING CENTER | **SUPPLEMENTAL BRIEF IN ACCORDANCE WITH COURT'S APRIL 12, 2024, ORDER** |
| Defendants. | |

In accordance with the Court's April 12, 2024, Order (Dkt. 47), and in support of its April 11, 2024, correspondence in response to plaintiff's April 8, 2024, correspondence related to certain discovery issues, defendant, Youngs Apothecary, Inc. d/b/a Tunkhannock Compounding Center ("Tunkhannock"), by and through its attorneys, McCormick & Priore, P.C., hereby provides the following Supplemental Brief.

## I.   BACKGROUND

### A.   PROCEDURAL HISTORY

This action was commenced on May 16, 2023, by way of a Complaint filed with this Court by plaintiffs, Stacey Wolking ("Ms. Wolking") and Darly Wolking ("Mr. Wolking"), husband and wife (collectively, the "Wolkings" or "plaintiffs").

(Dkt. 1)  Plaintiffs seek damages from the alleged treatment of plaintiff, Stacey Wolking ("Ms. Wolking"), by defendant, Henry Linder, M.D. ("Dr. Linder"), from 2021-2022 for the treatment of symptoms stemming from Ms. Wolking's so-called chronic babesiosis.  (Dkt. 1 at ¶¶ 9-77)  Plaintiffs allege that, at the direction of Dr. Linder, Tunkhannock "provided Stacey with the equivalent of 19,000 milligrams of prednisone in less than two months, something that no reasonable pharmacist would do for a single patient outside of a hospital setting."  (Dkt. 1 at ¶ 74)

By correspondence dated April 8, 2024, plaintiffs request that this Court compel production of certain documents regarding one of Tunkhannock's patients, Valerie Lindner ("Ms. Lindner"), Dr. Lindner's daughter who passed away in December 2023 and who is not a party to this matter (Dkt. 45) Plaintiffs contend that they are entitled to obtain <u>any</u> corticosteroid prescription written by Dr. Lindner and filled by Tunkhannock from 2020-2022, unrelated to Ms. Wolking, including any of those written for Ms. Lindner. <u>Id.</u> at 2. While plaintiffs contend that Dr. Lindner waived certain aspects of HIPAA privilege, plaintiffs have not contended that it pertains to her treatment specifically related to prescriptions filled by Tunkhannock. <u>Id.</u> Plaintiffs finally request judicial intervention related to the production Ms. Wolking's "patient profile." <u>Id.</u>

Tunkhannock responded to plaintiffs' correspondence on April 11, 2024. (Dkt. 46)  Tunkhannock have objected to plaintiffs' discovery requests on the basis

that Ms. Lindner is not a party to this matter, plaintiffs' requests are outside the scope of discovery pursuant to the Federal Rules of Civil Procedure, and Tunkhannock further asserted privilege pursuant to the HIPAA Privacy Rule. Id.

**B.    FACTS**

At her January 8, 2024, deposition, Ms. Wolking testified that, during an annual telephone consultation with Dr. Lindner in June 2021, Dr. Lindner determined that her menopausal symptoms had resolved (for which he had been treating her since approximately 2013)[1], but that Ms. Wolking was suffering from "chronic babesiosis," based on her symptoms of fatigue, chest pain, migraines, shortness of breath, ear ringing and joint pain. See Deposition Transcript of Stacey Wolking, at pages 36:9 – 40:16, 176:24 – 177:13, a true and correct copy of which is attached as **Exhibit "A."** She started an anti-malarial and corticosteroid regimen to treat this diagnosis in March 2022. Id. at 51:1-25, 91:8-24. Plaintiffs expressed concerns to Dr. Lindner about the high dosage of anti-malarial medication and corticosteroids, but he assured them that he needed to "kill" the babesia and therefore the high amount was necessary. Id. at 66:15-23; 183:9-25. Starting in late August 2022, Ms. Wolking had several steroid prescriptions filled at her local pharmacies, primarily Harris Teeter and Giant, as well as at Tunkhannock,

---

[1]    Ms. Wolking had used Tunkhannock to fill her hormone replacement treatment related to her menopausal symptoms for a period of time between 2013 and 2022.

following Dr. Lindner's explicit instructions, until she was hospitalized in early October 2022. <u>Id.</u> at 65:10-22; 68:23 – 69:11; 189:2 – 190:20.

On February 21, 2024, Dr. Lindner testified that he diagnosed Ms. Wolking with "chronic babesiosis," a term of his own "invention," which is not a diagnosis recognized by the CDC or IDSA, in January 2022, based on both Ms. Wolking's symptoms as he understood them and comparing her condition to his daughter's similar condition. <u>See</u> Deposition Transcript of Dr. Lindner, at pages 43:4 – 44:1; 62:18- 64:23, a true and correct copy of which is attached as **Exhibit "B."** After reducing her anti-malarial and corticosteroid medication in August 2022, from mid-September 2022 to early October 2022, by at times daily communications, Dr. Lindner continuously instructed Ms. Wolking to continuously increase her dosage of medication, including the corticosteroids. <u>Id.</u> at 203:15 – P. 222:22. Dr. Lindner further testified that Tunkhannock understood his treatment plan for "chronic babesiosis" patients, which included larger amounts of corticosteroids than generally used in the treatment of other diseases. <u>Id.</u> at 287:4 – 288:23. Based on his medical expertise and opinion, Dr. Lindner testified that it was reasonable for Tunkhannock to dispense the prescriptions he wrote. <u>Id.</u> at 321:11-23.

Further, regarding his daughter's death, at his deposition Dr. Lindner referred to his explanation on the website, but he did not testify that he attributes her death to his corticosteroid prescriptions. <u>Id.</u> at 248:19 – 251:6; <u>see also</u>

https://www.hormonerestoration.com/chronic-babesiosis.html. Additionally, at the time of Dr. Lindner's deposition, the autopsy report was not available, and any conclusion about her cause of death was, and remains, unknown. Id. at 251:15-22.

On November 15, 2023, Courtney Young ("Ms. Young"), principal of Tunkhannock, testified that Tunkhannock generally does not fill non-compounded medications, such as corticosteroid prescriptions, which makes up less than ten percent of its revenue, but it has filled prescriptions for Dr. Lindner since 2016. See Deposition Transcript of Courtney Young, at pages 44:3-20; 45:8-16, a true and correct copy of which is attached as **Exhibit "C."**  Ms. Young testified that Dr. Lindner talked to her about his treatment of his daughter's babesiosis, and he spoke to her about his treatment plan for Ms. Wolking, which included taking anti-malarial drugs. Id. at 56:20 – 57:7; 74:19 – 75:21; 100:1-9. In fact, before she filled the prescriptions, Ms. Young would have been made aware of Ms. Wolking's treatment plan and diagnosis at least as far as the "chronic babesiosis." Id. at 58:1-8.

## II.    <u>ARGUMENT</u>

Tunkhannock contends that plaintiffs' open-ended request for documents from Tunkhannock related to any of Dr. Lindner's prescriptions, and request for documents related to Ms. Lindner, are outside the scope of the Federal Rules of Civil Procedure and the Federal Rules of Evidence because they are not likely to

lead to admissible evidence. Moreover, the request seeks to circumvent Ms. Lindner's right to privacy pursuant to the HIPAA Privacy Rule, and there is no compelling reason to produce such information.

### A.    LEGAL STANDARDS

The Federal Rules of Civil Procedure limit discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b).  This proportionality is measured by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provides otherwise. Fed. R. Evid. 402. Irrelevant evidence is not admissible. Id. The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

**B.    PLAINTIFFS ARE NOT ENTITLED TO THE REQUESTED DISCOVERY**

**1.    Plaintiffs' Request Is outside of the Scope of the Discovery Rules**

Plaintiffs are improperly seeking irrelevant material that does not concern a

party to this lawsuit, and which flies in the face of the proportionality requirement

of the Federal Rules. For this reason alone, plaintiffs' request should be denied and

plaintiffs should be prohibited from seeking the requested materials.

*a.    Plaintiffs Seek Information That Is Not Proportional to the Needs of the Case*

Ms. Lindner is not a party to this case. Despite plaintiffs' contentions, her

treatment by Dr. Lindner, and any prescriptions that may have been filled by

Youngs Apothecary at the direction of Dr. Lindner, are **not** at issue in this case,

and thus discovery related to her treatment and prescriptions are not relevant to the

claims or defenses in this matter and well outside the scope of discovery pursuant

to Federal Rules of Procedure 26(b).

Simply put, Ms. Lindner's treatment plan and condition are not the subject

of this suit. Tunkhannock's other patients are not the subject of this suit. Dr.

Lindner's steroid prescriptions filled by Tunkhannock related to any other

individual that is not Ms. Wolking is not the subject of this suit.

While discussed further <u>infra</u>, plaintiffs' request is not proportional to the needs of the case, because it does not assist in what's at stake in the action, <u>i.e.</u>, the cause of Ms. Wolking's damages stemming from her alleged treatment by Dr. Lindner and the importance reaching that conclusion. <u>See</u> Fed. R. Civ. P. 26(b).[2] This information also will not make a fact as to the liability and cause of Ms. Wolking's damages any more or less probable without that information, and that information is not of consequence in determining such liability, causation, and damages. Fed. R. Civ. P. 401.

It has not even been established, either by testimony or documents, whether Ms. Lindner had additional, underlying medical condition(s) or what other pre-existing conditions she may have had because, again, she is not a party here. In fact, there is nothing to establish that babesiosis or the treatment of the disease was the cause of, or even related to, Ms. Lindner's death. There is no evidence that she is similarly situated like plaintiff. Therefore, making any comparisons about how corticosteroids would affect one patient over the other would be highly speculative and based on conjecture, and not proportional to the needs of the case.

---

[2]    It is further important to note the subcommittee notes to the post recent amendments to the Rules. The purpose of the discovery rules are, in part, "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. Fed. R. Civ. P. 26 (Subcomm. 2015). The revisions, specifically to the proportionality requirement, is "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." <u>Id.</u> The notes further discuss that proportionality does not hinge on, <u>e.g.</u>, the monetary costs of the discovery, but rather there is a balance of factors. <u>Id.</u>

### b.    Plaintiffs' Request Violates Privileges Including HIPAA

The HIPAA Privacy Rule (the "Privacy Rule") provides federal protections for personal health information ("PHI") held by covered entities, such as Tunkhannock.[3] Broadly speaking, the Privacy Rule allows for the production of the information to the patient him/herself, and during a compliance investigation or enforcement action. See 45 C.F.R. § 164.502(a)(2). Neither situation is implicated here. This is a private cause of action for negligence, so the second factor is out. Further, Ms. Lindner is deceased and has not provided any such required written authorization to Tunkhannock to release her PHI to plaintiffs.[4] No other patient of Dr. Lindner has authorized Tunkhannock to do so, either.

Further, in Pennsylvania, it is a well-established balancing test that must be satisfied in order to disclose an individual's medical information without

---

[3]    The Privacy Rule protects all "protected health information (PHI)," which is defined as *individually identifiable health information* held or transmitted by a covered entity or its business association. *See* 45 C.F.R. § 160.103. PHI includes information related to the individual's past, present or future physical or mental health condition, the provision of health care to the individual, or the past, present or future payment for the provision of health care to the individual, and that identifies the individual or for which there is a reasonable basis to believe it can be used to identify the individual. Id.

A covered entity may not use or disclose PHI except either: 1) as the Privacy Rule permits or requires; or 2) as the individual who is subject of the information (or the individual's personal representative) authorizes in writing. See 45 C.F.R. § 164.502(a). A covered entity must disclose PHI in only two situations: (a) to individuals (or their personal representatives) specifically when they request access to, or an accounting of disclosures of, their PHI; and (b) to Health and Human Services when it is undertaking a compliance investigation or review or enforcement action.

[4]    The Privacy Rule protections apply to PHI of deceased individuals, such as Ms. Lindner, for a period of 50 years following the date of death of the individual. Ms. Lindner has not been deceased for more than 50 years, and therefore the Privacy Rule continues to protect her PHI. See 45 C.F.R. § 160.103, Protected Health Information, (2)(iv). Tunkhannock is, in fact, prohibited by the Privacy Rule from disclosing such PHI of Ms. Lindner, or any of its other patients, along with any other information that would implicate the disclosure of PHI.

permission, and several factors are considered. <u>Smith v. Schaff</u>, No. 610 EDA 2019, 2019 WL 5295409, at *3 (Pa. Super. Ct. Oct. 18, 2019) (<u>citing</u> <u>Lykes v. Yates</u>, 77 A.3d 27, 31 (Pa. Super. Ct. 2013)). Any information related to third parties that have not given their consent is confidential and is not relevant to this negligence claim against Tunkhannock. <u>Buckman v. Verazin</u>, 54 A.3d 956, 964 (2012); <u>see also</u> <u>Peronis v. United States</u>, No. 2:16-CV-01389-NBF, 2017 WL 3705058, at *2-3 (W.D. Pa. Aug. 28, 2017).[5]

Plaintiffs' request for discovery related to Ms. Lindner, and other Tunkhannock patients, is not only well outside the scope of what the Federal Rules of Civil Procedure permit but it is also a request for PHI which is clearly protected from disclosure by the HIPAA Privacy Rule and Regulations and supported Pennsylvania case law. Moreover, the records as it relates to Ms. Lindner, or any of Dr. Lindner's prescriptions from 2020-2022, are just as easily obtainable from Dr. Lindner, so as not to have Tunkhannock disclose privileged third-party and non-party material to plaintiffs. There is no legitimate basis for this discovery, and plaintiffs' request should be denied.

---

[5]    <u>Buckman</u> and <u>Peronis</u> are instructive in that the Superior Court and the Western District Court, in similar situations as here, denied each plaintiff's request for medical records of third parties. The <u>Buckman</u> Court denied a request for the treating physician and his facility to produce records related to all patients the physician treated with the same procedure as he treated plaintiff there for a five (5) year period. <u>Buckman</u>, 54 A.3d at 956. The Western District denied an even narrower request for the records of any "high risk" babies born on the same day as plaintiff's decedent. <u>Peronis</u>, 2017 WL 3705058, at *1. The respective courts cited Pennsylvania statutory law the prohibits the disclosure of patient information.

**2.    Even Assuming Plaintiffs' Request Is for Relevant Information, None of the Requested Discovery Is Admissible**

Discovery of non-privileged information, even if it is permitted, must be relevant to a party's claim and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). However, information is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. Civ. P. 401.

Simply put, the information plaintiffs seek fails to meet this requirement. The requested information does not have a bearing on _**their**_ claims against Tunkhannock, because those claims relate merely to the dispensing of certain medication to Ms. Wolking over a several month period.  Whether Tunkhannock filled other steroid prescriptions, or other prescriptions for Dr. Lindner for other patients (which is open ended, and not narrowed to "chronic babesiosis" patients) does not make whether Tunkhannock is liable to plaintiffs for its alleged conduct more or less true. While the test for relevant evidence is expansive, that evidence must be related to the claims and proportional to what's at stake. See Szabo v. Muncy Indus., LLC, No. 4:21-CV-00468, 2024 WL 436354, at *1 (M.D. Pa. Feb. 5, 2024); see also Coles Wexford Hotel, Inc. v. Highmark, Inc., 209 F. Supp. 3d 810, 823 (W.D. Pa. 2016). The requested information is not relevant to plaintiffs'

claims or proportional to whether Tunkhannock's conduct towards plaintiffs was negligent, and therefore the request should be denied.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Tunkhannock respectfully submits that plaintiffs are not entitled to the requested information as it falls outside the scope of the Federal Rules of Civil Procedure regarding discovery, HIPAA, and is not proportional to the needs of this case. Tunkhannock further requests that this Court deny plaintiffs' request, with prejudice.

Respectfully submitted,

By:  <u>/s/ Conrad James Benedetto</u>
      Philip D. Priore, Esquire
      Attorney ID: 38987
      Conrad James Benedetto, Esquire
      Attorney ID: 312404
      **MCCORMICK & PRIORE, P.C.**
      2 Commerce Square
      2001 Market Street, Suite 3810
      Philadelphia, PA 19103
      (T) 215-972-0161
      (F) 215-972-5580
      ppriore@mccormickpriore.com
      cbenedetto@mccormickpriore.com
      Attorneys for Defendant,
      Youngs Apothecary, Inc. d/b/a
      Tunkhannock Compounding Center

Date: <u>April 26, 2024</u>