UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

STACEY WOLKING and DARYL  :
WOLKING,                  :
    Plaintiffs               :  CIVIL ACTION NO. 3:23-cv-806
                             :
    v.                       :  (JUDGE MANNION)
                             :
HENRY LINDNER and YOUNGS  :
APOTHECARY, INC., d/b/a   :
TUNKHANNOCK               :
COMPOUNDING CENTER,       :
    Defendants               :

## MEMORANDUM

Plaintiffs, who claim that Defendant Tunkhannock Compounding Center was negligent in its care of Stacey Wolking, (Doc. 1), have requested from Defendant certain information relating to other patients, (Doc. 45), to which requests TCC objects. (Doc. 46). The court ordered that the parties submit supplemental briefing regarding this request, (Doc. 47), and they have done so. (Doc. 48; Doc. 49).

### I. THE CLAIMS

The Complaint alleges that Stacey Wolking met with Dr. Henry Lindner once in person, and thereafter consulted him by email and phone, for advice and treatment related to her symptoms of fatigue, brain fog, and malaise.

(Doc. 1 ¶9–11). Dr. Lindner diagnosed her with babesiosis, an infection caused by a babesia parasite, "without ever confirming his diagnosis with a blood smear examination or a PCR test," which practice is "standard" for doctors in the U.S. (Id. ¶12–16). He prescribed her a combination of antimicrobial medications and corticosteroids. (Id. ¶¶20, 29). He also told Stacey that he had diagnosed his daughter Valerie with babesiosis and had developed the treatment program for her. (Id. ¶28).

Despite Stacey's complaints of severe adverse side effects, Dr. Lindner prescribed her increasingly higher dosages of corticosteroids, (Id. ¶¶31–60), often dosages significantly higher than a reasonable physician would typically prescribe. (Id. ¶32). He informed Stacey that his daughter Valerie had also taken high dosages of corticosteroids and had suffered adverse side effects. (Id. ¶34, 37, 53).

During the course of this treatment, Lindner directed Stacey to fill her prescriptions at TCC instead of her local pharmacy, telling her that her local pharmacy might complain to the medical board about the high doses. (Id. ¶71). TCC provided Stacey "with the equivalent of 19,000 milligrams of prednisone in a period of less than two months." (Id. ¶74).

Defendants' conduct "caused Stacey to suffer severe physical and emotional pain and distress that she became suicidal, refused all medical

treatments, asked her doctors to allow her to die, and spent approximately two days in hospice care at Loudoun Hospital" in Virginia. (Id. ¶75). Plaintiffs claim that TCC provided Ms. Wolking with corticosteroid prescriptions "which they knew or should have known were excessive, dangerous, inappropriate, and/or improper"; that TCC did so "in violation of the rules, regulations, practices, policies, and/or guidelines in place for the dispensing of prescription corticosteroids by a licensed pharmacy"; and that it "failed to exercise due diligence in its professional capacity" by not contacting Dr. Lindner about the unreasonably high dosages, taking steps to correct his error, or refusing to fill such prescriptions. (Id. ¶¶96–98).

Sadly, Dr. Lindner's daughter Valerie passed away in December 2023. (Doc. 30). Her obituary states that "[s]he lost her long battle with a tick-borne disease." (Doc. 31).

## II.　THE REQUEST

Plaintiffs requested that Defendant:

- [D]escribe the prescriptions written by Henry Lindner which were filled at Tunkhannock Compounding Center in 2020, 2021, and 2022: the total number, the drug types and dosages, and the amount billed and earned by Tunkhannock Compounding Center as a result of these prescriptions. (Doc. 45-1 ¶12).
- [Produce the following]:
    - All documents showing the corticosteroid prescriptions dispensed to Valerie Lindner in 2021 and 2022, including

- 3 -

      patient history documents and prescription documents. (Doc. 45-2 ¶1).
- Records in PK dispensing software showing manufacturer of corticosteroids dispensed to Valerie Lindner and Stacey Wolking in 2021 and 2022. (Id. ¶2).
- Any and all emails or other communication between Dr. Henry Lindner and any TCC employee, in 2020 and the present, concerning his babesiosis patients and/or corticosteroid dosing and/or his treatment of Valerie Lindner for babesiosis. (Id. ¶4).
- Any and all emails or other communications between TCC employees in 2020 and the present, concerning Dr. Lindner's babesiosis patients and/or corticosteroid dosing and/or Dr. Lindner's treatment of Valerie Lindner for babesiosis. (Id. ¶5).
- Records or data showing total amounts of prednisone, dexamethasone, and any other corticosteroid acquired and dispensed by TCC in 2021 and 2022, and manufacturers or each drug and entities from which they were acquired by TCC. (Id. ¶6).

- [Designate officers authorized to testify as to]:
  - Corticosteroid prescriptions dispensed to/for the benefit of Valerie Lindner, (Doc. 45-3 ¶d);
  - History of prescriptions written by Dr. Henry Lindner and filled by TCC, including amounts earned by TCC from Dr. Lindner's prescriptions from 2013–2022, (Id. ¶e);
  - Manufacturer of prednisone and dexamethasone dispensed to Stacey Wolking and/or Valerie Lindner, identity of any entity from which prednisone and dexamethasone were purchased by TCC, (Id. ¶L);
  - Total amounts of prednisone, dexamethasone, and any other corticosteroid acquired and dispensed by TCC in 2021 and 2022, and manufacturers of each drug and entities from which they were acquired by TCC, (Id. ¶m);
  - Percentage of TCC revenue attributable to corticosteroids, and to prescriptions written by Dr. Henry Lindner, in 2021 and 2022. (Id. ¶n).

(See Doc. 45). Defendant objects to these requests. (Doc. 46).

## III. LEGAL STANDARD

Parties to a civil action "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). A request is relevant "if there is any possibility that the information may be relevant to the general subject matter of the action." *Kegerise v. Susquehanna Twp. Sch. Dist.*, Civ. No. 1:CV-14-0747, 2016 WL 2736048, at *1 (M.D. Pa. May 11, 2016). "Information within the scope of discovery need not be admissible in evidence to be discoverable." Rule 26(b).

"A party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The initial burden is on the moving party to demonstrate that the requested discovery falls within Rule 26(b)'s scope. *Schiavone v. Luzerne County*, 243 F.R.D. 34, 37 (M.D. Pa. 2023). If this burden is met, the nonmoving party must demonstrate that that the requested discovery is not within Rule 26's scope or is not sufficiently relevant to justify the burden of producing it. *Id.*

## IV. THE OBJECTIONS

TCC contends that the requested discovery is irrelevant, not proportional to the needs of the case, privileged under the HIPAA Privacy Rule, and not discoverable under Pennsylvania law. (Doc. 48 at 7–10). Because information protected by the Privacy Rule may be disclosed pursuant to a court order, 45 C.F.R. §164.512(f)(1)(ii)(A), the court need not address that ground of objection again. (See Doc. 47 at 3).

### A. Relevance

TCC asserts that because Valerie Lindner is not a party to this case, her treatment and prescriptions are not at issue and thus not relevant to Plaintiffs' claims or defenses. (Doc. 48 at 7).

### B. Proportionality

TCC also submits that Plaintiffs' request is not proportional to the needs of the case "because it does not assist in what's at stake in the action, i.e., the cause of Ms. Wolking's damages stemming from her alleged treatment by Dr. Lindner and the importance reaching that conclusion." (Doc. 48 at 8). It argues that the requested information will not make more or less likely any fact pertaining to "the liability and cause of Ms. Wolking's damages." (Id. at 8). TCC further asserts that "there is nothing to establish that babesiosis or the treatment of the disease was the cause of, or even

related to, Ms. Lindner's death," and so making comparison between her and Stacey Wolking "would be highly speculative and based on conjecture." (Id. at 8).

### C. Pennsylvania law

Other federal courts have applied Pennsylvania law regarding discovery of medical records in diversity cases, *see Peronis v. United States*, 2:16-cv-1389, 2017 WL 3705058, at *2 (W.D. Pa. Aug. 28, 2017); *Creely v. Genesis Health Ventures, Inc.*, No. Civ. 04-cv-679, 2004 WL 2943661, at **3–4 (E.D. Pa. Dec. 17, 2004), and Plaintiffs do not dispute that it applies. (Doc. 49 at 14–15).

Defendant references the balancing test that has been applied in evaluating a request for medical information, *see Lykes v. Yates*, 77 A.3d 27, 31 (Pa. Super. Ct. 2013), but does not advance a position as to what result that test yields here. (Doc. 48 at 910). It also relies on *Buckman v. Verazin*, 54 A.3d 956, 964 (Pa. Super. Ct. 2012) for the proposition that "[a]ny information related to third parties that have not given their consent is confidential and not relevant to this negligence claim against Tunkhannock." (Doc. 48 at 10).

### V. PLAINTIFFS' ARGUMENT

#### A. Relevance

Plaintiffs submit that the prescriptions written by Dr. Lindner between 2013 and 2022 are relevant to (1) evaluate the conflicting testimony of Lindner and Courtney Young of TCC as to whether TCC spoke to Lindner about Ms. Wolking's prescriptions; (2) to assess the financial impact of Lindner's prescriptions and thus the motive of TCC to challenge his decisions; (3) to assess Young's conduct in consulting Dr. Lindner about Ms. Wolking's prescriptions; and (4) to assess the pharmacists' knowledge of safe dosages by reading the package inserts provided by manufacturers. (Doc. 49 at 3–8). As to its requests for communications related to other patients, Plaintiffs assert that such information is relevant to their "theory that TCC established a pattern and practice based on information about other patients" and to the pharmacists' knowledge about babesiosis and the risks of corticosteroid prescriptions. (Id. at 8).

#### B. Proportionality

As to proportionality, Plaintiffs argue that the burden and expense involved in producing such discovery would be minimal, because TCC has access to its own data and Young has testified that corticosteroid prescriptions were not a large aspect of TCC's business. (Doc. 49 at 11).

According to Plaintiffs, "[t]he minimal burden involved is appropriate in a case where TCC's negligence nearly killed Ms. Wolking and has injured her for life." (Id. at 12).

### C. Pennsylvania Law

With regard to Defendant's argument about the application of Pennsylvania law to discovery of confidential medical information, Plaintiffs contend that disclosure of Valerie Lindner's information would not harm any physician-patient relationship because she is deceased. They further suggest that identifying information about other patients can be redacted. (Doc. 49 at 14 (quoting *Roth v. Sunrise Senior Living Mgmt., Inc.*, No. 2:11-cv-4567, 2012 WL 748401, at *2 (E.D. Pa. Mar. 8, 2012) ("Pennsylvania state privacy laws do not preclude disclosure of the redacted medical records in this case.")).

### D. Patient profile

Finally, Plaintiffs reiterate their request for Ms. Wolking's "patient profile." (Doc. 49 at 9). Though Defendant mentions this request in its supplemental brief, (Doc. 48 at 2), it offers no objection thereto.

## VI. DISCUSSION

The court finds that Plaintiffs have satisfied their burden of demonstrating that the requested discovery is within the scope of Rule 26(b). The requested information about prior corticosteroid prescriptions filled by TCC, manufacturer information, and communications concerning babesiosis patients and/or corticosteroid dosing, even if related to other patients, may be relevant to Plaintiffs' claim that TCC was negligent in its care of Stacey Wolking. Such information could indicate that the pharmacists were on notice of the proper dosages or could aid in evaluating testimony regarding their consultations with Dr. Lindner regarding high dosages. And given the serious nature of the allegations here and the minor burden on Defendant to produce a portion of its own information, the court finds that the request is proportional to the needs of the case.

With respect to Valerie Lindner's medical information, the court finds that a privacy interest does not outweigh the need for disclosure because Ms. Lindner is deceased and Dr. Lindner has testified about her medical history. As to other patients' information, redaction will adequately ameliorate the concern of privacy intrusion. Finally, the court finds that Plaintiffs' request for Plaintiff Stacey Wolking's "patient profile" is relevant and proportional to

the needs of the case. Accordingly, Plaintiffs' requests are within the scope of Fed. R. Civ. P. 26(b)(1), and Defendant must fulfill them.

The court advises the parties that this memorandum does not opine on the admissibility of the requested information at trial.

VII.   CONCLUSION

For the foregoing reasons, the court concludes that Plaintiffs' discovery requests are within the scope of Federal Rule 26(b)(1). It will therefore order that Defendant fulfill these requests. Such order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: May 3, 2024**
23-806-02