# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, W/H<br><br>Plaintiffs,<br><br>v.<br><br>HENRY LINDER, M.D., and YOUNGS APOTHECARY, INC. d/b/a TUNKHANNOCK COMPOUNDING CENTER<br><br>Defendants. | CIVIL ACTION<br>3:23-cv-00806-MEM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT YOUNGS APOTHECARY, INC. D/B/A TUNKHANNOCK COMPOUNDING CENTER**<br><br>**ORAL ARGUMENT REQUESTED** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant, Youngs Apothecary, Inc. ("Youngs") d/b/a Tunkhannock Compounding Center ("TCC") (collectively as a defendant, "Tunkhannock"), by its undersigned counsel, hereby moves for Summary Judgment on the basis that plaintiffs have failed to establish that Tunkhannock owed a duty to plaintiff, Stacey Wolking ("Ms. Wolking"), and have failed to establish that Tunkhannock owed the alleged duty to Ms. Wolking or breached the actually applicable duty to Ms. Wolking. None of the evidence to date, including documents, deposition testimony, and expert discovery on all aspects of this matter, indicate that Tunkhannock owed a duty to Ms. Wolking, as claimed by Plaintiffs, or breached the applicable duty. Therefore,

1

Plaintiffs' claims against Tunkhannock, in their entirety, should be dismissed, with prejudice.

## I. PROCEDURAL HISTORY

Plaintiffs filed their Complaint on May 16, 2023. Discovery has closed, and the parties have exchanged expert reports. In accordance with the Court's May 7, 2024, and considering the foregoing, summary judgment is now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND

*See* Tunkhannock's Statement of Undisputed Material Facts.

## III. STATEMENT OF QUESTIONS INVOLVED

Question no. 1: Did Tunkhannock have a duty to Ms. Wolking as claimed by plaintiffs?

*Suggested Answer: No.*

Question no. 2: Did Tunkhannock breach the applicable duty to Ms. Wolking in dispensing the medications to her as prescribed by Dr. Lindner?

*Suggested Answer: No.*

## IV. LEGAL STANDARD

A motion for summary judgment may be properly granted only when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56. Ultimately, the moving party bears the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324. Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Id.* at 324. A genuine issue is one in which the evidence permits a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, this Court must draw all reasonable inferences in the light most favorable to the non-movant. *Big Apple BMW, Inc. v. BMW of North America*, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993). A court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.* The court's inquiry, at the summary judgment stage, considers whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 250-52.

## V. ARGUMENT

### A. Tunkhannock Did Not Owe a Duty to Ms. Wolking as Claimed By Plaintiffs and Plaintiffs Cannot Impose a Duty on Pharmacists Greater than Those Recognizable by Law

Plaintiffs are attempting to impose a duty onto Tunkhannock that, simply, does not exist. To state a claim under negligence in Pennsylvania, a plaintiff must aver that the defendants 1) owed her a duty of care, 2) breached that duty, 3) the breach resulted in injury to plaintiff, and 4) she suffered an actual loss or damage. *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458, 461 (1998). Determining whether a duty exists is a question of law for the court, which must balance several discrete factors, including: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *See Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550 (W.D. Pa. 2015).

The practice of pharmacy is regulated in this Commonwealth by the Pennsylvania Pharmacy Act. *See 63* P.S. §§ 390–1 et seq. (the "Pharmacy Act"). The purpose of the Pharmacy Act was to "regulate the compounding of physicians' prescriptions, preparing drugs, and dispensing them, or other products of an apothecary's calling . . . ." *Id.*

4

Generally, in Pennsylvania a pharmacist's duty to its patients falls into two categories. First, liability may flow from a pharmacist's failure to remedy inadequacies on the face of a physician's prescriptions – these might include failure to correct improper dosage directions; failure to check on illegible prescriptions; and failure to notice a potentially lethal interaction between drugs on the face of a prescription. *Forish v. Paul*, 2 Pa. D. & C. 4th 413, 416–17 (Comm. Pl. Erie Co. 1989). Under these circumstances, courts have determined that a pharmacist has a duty to alert the physician and make proper adjustments. *Id.*; *see also generally Riff v. Morgan Pharmacy*, 353 Pa. Super 21, 508 A.2d 1247 (1986) (finding that where a prescription has inadequate instructions as to maximum safe dosage, a pharmacist has a duty to either ascertain if the patient is aware of the limitation concerning the use of the medication or to contact the prescribing physician to call the inadequacy of the prescription to the doctor's attention).

The second category of the duty involves negligence on the part of a pharmacist in the actual process of preparing and dispensing a medication pursuant to the orders of the physician, which might include misreading a prescription; mislabeling; improper compounding; incorrect dosage (in strength or quantity); use of improper methods for dispensing; failure to ensure that the drug is pure and unadulterated in form upon sale; and failure to attach the proper contraindication warnings as per the doctor's instructions. *Forish*, 2 Pa. D. & C. 4th at 416–17.

These particular responsibilities involve that which a pharmacist is specifically trained to practice, and as such, they must be carried out with the degree of skill and care expected of the pharmaceutical profession as a whole. *Id.*

Pennsylvania courts have specifically limited the duty a pharmacist owes its customers to filling prescriptions in a safe manner, and "***have rejected arguments seeking to expand the duties imposed by law beyond this narrow scope***," *Gabriel,* 124 F. Supp. 3d at 563 (*citing Forish*, 2 Pa. D. & C. 4th at 416–17 (emphasis added)). "***To hold a pharmacist accountable for monitoring use makes little practical sense—a patient could have prescriptions filled at a number of different pharmacies, rendering any attempt at comprehensive record-keeping virtually impossible absent some type of state-wide regulatory scheme***." *Gabriel,* 124 F. Supp. 3d at 563 (*citing Forish*, 2 Pa. D. & C. 4th at 417 (emphasis added)). ***There exists no authority in Pennsylvania which would place on the pharmaceutical profession the following duties: to be familiar with the patient's medical history and/or medical records; to warn of all possible contraindications; to advise and consult with the patient's treating physician (barring an inadequacy apparent on the face of the prescription); or to monitor the patient's use of the prescriptions via patient profiles or records***. *Forish*, 2 Pa. D. & C. 4th at 417 (emphasis added).

The *Forish* court noted that imposition of such duties would force the pharmacist to interfere in the patient-physician relationship, which Pennsylvania

6

courts hold in high regard. *Id.* "Pursuant to the rules of statutory construction, courts are precluded from imposing duties in addition to those which the legislative branch has chosen to set forth." *Id.* The *Forish* court further noted that "***[i]t must be remembered that a pharmacist is not licensed to practice medicine***." *Id.* at 18 (emphasis added).

There has been no evidence that Tunkhannock was negligent in the ***process*** of preparing the steroid prescriptions for Ms. Wolking. For example, there is no evidence that Tunkhannock misread Dr. Lindner's prescription, or provided Ms. Wolking with the incorrect dosage or quantity, or failed to ensure that the steroids were unadulterated, or failed to provide proper contraindication warnings per Dr. Lindner's instructions. *Forish*, 2 Pa. D. & C. 4th at 416–17. Thus, the second category of a pharmacist's duty under Pennsylvania law is not implicated here.

Rather, plaintiffs allege that Tunkhannock was negligent when it dispensed the three (3) prescriptions of steroid medications that it did to Ms. Wolking because Tunkhannock "failed to exercise due diligence in its professional capacity by failing to contact the prescribing physician, Dr. Lindner, to inquire about the unreasonably high doses of corticosteroids prescribed, and/or failing to take steps to correct any error by the prescribing physician, and/or by failing to refuse to fill the prescriptions for corticosteroids in the unreasonably high doses ordered by Dr. Lindner." *See* Complaint, Dkt. 1 at ¶¶ 98-101. However, plaintiffs, through their

7

testimony and experts, attempt to expand the duty of a pharmacist greater than those imposed by law, by offering that Tunkhannock failed to refer to any unspecified outside reference materials[1] regarding the steroid prescriptions prescribed by Dr. Lindner and/or have any discussions with Dr. Lindner as to his treatment plan for Ms. Wolking, that it was required to question and challenge Dr. Lindner on each of the three (3) prescriptions (August 8, 2022, August 16, 2022, and September 27 / October 4, 2022) filled by Tunkhannock and, ultimately, it should have refused to fill them. *See* Statement of Facts ¶¶ 13, 26; *see also* **Exhibits K, L, M**, and **N**. This type of expansion of duty of pharmacists is exactly what the *Gabriel* and *Forish* courts have rejected.

Here, there were no inadequacies on the face of the prescription orders themselves written by Dr. Lindner, and plaintiffs do not dispute this. Further, unlike the facts in *Riff* where the medication involved had a maximum safe dosage, here, ***there is no maximum safe dosage, or upper limit, for the steroids for this indication (chronic babesiosis) that were prescribed by Dr. Lindner*** to Ms. Wolking and, therefore, Tunkhannock was not under a duty under *Riff* to contact Ms. Wolking to ascertain whether she was aware of the maximum safe dosage concerning the use of steroids (because there is none) or to contact Dr. Lindner to

---

[1] There is testimony that Tunkhannock pharmacists, indeed, referred to outside reference materials when researching the medication and Dr. Lindner's treatment plan.

8

indicate the maximum safe dosage on the prescription itself (again, because there is none). *See* Statement of Facts ¶ 25; see also *Riff*, 353 Pa. Super. Ct. at 26-27, 508 A.2d at 1249-50. Moreover, Tunkhannock owed no duty to monitor Ms. Wolking's use of the steroids and, in fact, Tunkhannock had no knowledge that Ms. Wolking was having other prescriptions, including prednisone and dexamethasone prescriptions, filled by Harris Teeter and other locations in Virginia during the same period. *See* Statement of Facts ¶¶ 13, 24. Further, Tunkhannock was not aware that Ms. Wolking was experiencing any side effects from the steroids, as neither Ms. Wolking nor Dr. Lindner ever communicated to Tunkhannock that Ms. Wolking was experiencing any. *See* Statement of Facts ¶ 16.

Therefore, Tunkhannock did not owe a duty, as claimed by plaintiffs, to Ms. Wolking, as this expanded duty is not recognized by law. Tunkhannock owed a duty to fill her prescriptions in a safe manner, which Tunkhannock did, as further discussed *infra*, and therefore plaintiffs' claims against Tunkhannock should be dismissed, with prejudice.

### B. Tunkhannock Fulfilled Its Duty to Ms. Wolking and Did Not Breach That Duty

Here, Tunkhannock fulfilled its duty to Ms. Wolking, as prescribed by Pennsylvania law, by filling her prescriptions in a safe manner. *See Gabriel,* 124 F. Supp. 3d at 563 (*citing Forish*, 2 Pa. D. & C. 4th at 416–17). In fact, the evidence of record establishes that Tunkhannock took the following steps to ensure that they

9

filled Ms. Wolking's prescriptions in a safe manner: it (1) reviewed the package inserts for the steroids dispensed to Ms. Wolking; (2) had previous knowledge of chronic babesiosis, the condition being treated by Dr. Lindner, based on knowledge from Stephen Bruner's books on Lyme Disease and tick-borne illnesses; (3) would have conducted further online research; (4) discussed with Dr. Lindner his treatment of his patients with chronic babesiosis, including Dr. Lindner's own daughter; (5) discussed with Dr. Lindner that the treatment for chronic babesiosis is dependent on, and varies with, the patient and the status of their symptoms at the time; (6) questioned Dr. Lindner's first steroid prescription order (August 8, 2022) because of the quantity prescribed; (7) discussed with Dr. Lindner the general treatment plan for Ms. Wolking's babesiosis; and (8) had an understanding that Dr. Lindner's treatment plan for Ms. Wolking carried through for all three (3) prescriptions filled by Tunkhannock. *See* Statement of Facts ¶¶ 19-22. Even where there is no maximum safe dosage for prednisone and dexamethasone, the drugs involved here, Tunkhannock went above its duty by questioning Dr. Lindner's prescription, seeking explanation of his treatment plan, and researching the diagnosis and the drugs involved prior to filling the prescriptions.

Even if this Court were to expand the duty owed by pharmacists to its customers, as suggested by plaintiffs, Tunkhannock still fulfilled that duty by

10

performing the aforementioned actions. Therefore, where plaintiffs have failed to establish that Tunkhannock breached the applicable duty, plaintiffs' claims against Tunkhannock must be dismissed, with prejudice.

## VI. CONCLUSION

For the foregoing reasons, defendant, Youngs Apothecary, Inc. d/b/a Tunkhannock Compounding Center, respectfully requests that summary judgment be entered in its favor and the case against it be dismissed, with prejudice. Plaintiffs claimed duty owed by Tunkhannock simply does not exist, and Tunkhannock did not breach the applicable duty it owed.

Respectfully submitted,

By: */s/ Conrad James Benedetto*
Philip D. Priore, Esquire
Attorney ID: 38987
Conrad James Benedetto, Esquire
Attorney ID: 312404
**MCCORMICK & PRIORE, P.C.**
2 Commerce Square
2001 Market Street, Suite 3810
Philadelphia, PA 19103
(T) 215-972-0161
(F) 215-972-5580
ppriore@mccormickpriore.com
cbenedetto@mccormickpriore.com
skeesler@mccormickpriore.com
Attorneys for Defendant,
Youngs Apothecary, Inc. d/b/a
Tunkhannock Compounding Center

Date: July 12, 2024

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.8(b)(2) for the Middle District of Pennsylvania, I hereby certify that the Memorandum of Law in Support of the Motion for Summary Judgment of defendant, Youngs Apothecary, Inc. d/b/a Tunkhannock Compounding Center, complies with the word count limit and does not exceed 5,000 words. Certification is reliant on the word-processing system used to prepare the foregoing brief.

By: _/s/ Conrad James Benedetto_
Philip D. Priore, Esquire
Attorney ID: 38987
Conrad James Benedetto, Esquire
Attorney ID: 312404
**MCCORMICK & PRIORE, P.C.**
2 Commerce Square
2001 Market Street, Suite 3810
Philadelphia, PA 19103
(T) 215-972-0161
(F) 215-972-5580
ppriore@mccormickpriore.com
cbenedetto@mccormickpriore.com
skeesler@mccormickpriore.com
Attorneys for Defendant,
Youngs Apothecary, Inc. d/b/a
Tunkhannock Compounding Center

Date: July 12, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, I served the foregoing Memorandum of Law in Support of the Motion for Summary Judgment on all registered counsel of record via ECF.

    Respectfully submitted,

By:   */s/ Conrad James Benedetto*
      Philip D. Priore, Esquire
      Attorney ID: 38987
      Conrad James Benedetto, Esquire
      Attorney ID: 312404
      **MCCORMICK & PRIORE, P.C.**
      2 Commerce Square
      2001 Market Street, Suite 3810
      Philadelphia, PA 19103
      (T) 215-972-0161
      (F) 215-972-5580
      ppriore@mccormickpriore.com
      cbenedetto@mccormickpriore.com
      skeesler@mccormickpriore.com
      Attorneys for Defendant,
      Youngs Apothecary, Inc. d/b/a
      Tunkhannock Compounding Center