IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, W/H<br><br>Plaintiffs,<br><br>v.<br><br>HENRY LINDER, M.D., and YOUNGS APOTHECARY, INC. d/b/a TUNKHANNOCK COMPOUNDING CENTER<br><br>Defendants. | CIVIL ACTION<br>3:23-cv-00806-MEM<br><br>**STATEMENT OF UNDISPUTED MATERIAL FACTS OF DEFENDANT, YOUNGS APOTHECARY, INC. D/B/A TUNKHANNOCK COMPOUNDING CENTER**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Youngs Apothecary, Inc. ("Youngs") d/b/a Tunkhannock Compounding Center ("TCC") (collectively as a defendant, "Tunkhannock"), by and through its undersigned counsel and pursuant to Local Rule 56.1 for the Middle District of Pennsylvania, provides this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment, as follows:

1. This action concerns claims for damages by plaintiffs, Stacey Wolking ("Ms. Wolking") and Darly Wolking ("Mr. Wolking"), husband and wife (collectively, the "Wolkings" or "plaintiffs"), from Ms. Wolking's alleged treatment by defendant, Henry Linder, M.D. ("Dr. Linder"), in 2022 for what Dr. Lindner diagnosed as "chronic babesiosis." *See* Complaint, Dkt. 1 at ¶¶ 9-77.

2. Plaintiffs allege that at the direction of Dr. Linder, Ms. Wolking consumed large amounts of steroids in August-October 2022 that were prescribed by Dr. Linder and dispensed by several pharmacies, but that her damages were caused by the steroids dispensed by TCC. *Id.* at ¶ 74.

3. Plaintiffs allege that, in filling Ms. Wolking's prescriptions according to Dr. Linder, Tunkhannock was negligent because it "failed to exercise due diligence in its professional capacity by failing to contact the prescribing physician, Dr. Lindner, to inquire about the unreasonably high doses of corticosteroids prescribed, and/or failing to take steps to correct any error by the prescribing physician, and/or by failing to refuse to fill the prescriptions for corticosteroids in the unreasonably high doses ordered by Dr. Lindner," thus causing plaintiffs' damages. *Id* at ¶¶ 98-101.

4. Ms. Wolking testified that a tick bit her in 2008, and she treated for years thereafter for Lyme disease with a homeopathic doctor, and she reported her symptoms eventually resolved. *See* Deposition of Stacey Wolking, 72: 5-9; 73:2-7; 75:1-17; 179:1-7, a true and correct copy attached hereto as **Exhibit A.**

5. Beginning in 2013, Ms. Wolking began hormone replacement therapy and telemedicine treatment with Dr. Linder for menopausal symptoms. *See* Deposition of Henry Lindner, 40: 21-24; 49: 13-17, a true and correct copy attached hereto as **Exhibit B**.

6. Around June 2021, based on a telephone consultation, Dr. Lindner determined that Ms. Wolking's continued symptoms were now unrelated to her hormone replacement therapy, and he tentatively diagnosed Ms. Wolking with "chronic babesiosis," a tick-borne illness heretofore unrecognized in humans. *See* **Exhibit B** 43:4-9; *see also* **Exhibit A** at 176:24 – 177:13.

7. Beginning in July 2021, Dr. Lindner began Ms. Wolking on an anti-babesial treatment, which included anti-malarials, to "kill" the babesia. *See* **Exhibit A** at 78: 6-10.

8. During his treatment of Ms. Wolking for chronic babesiosis, Dr. Lindner additionally prescribed antimicrobials and antibiotics to Ms. Wolking to kill the babesia. *See* **Exhibit A** at 51:19 – 52: 4.

9. By January 2022, Dr. Lindner definitively diagnosed Ms. Wolking with chronic babesiosis due to her "herxing" reactions to the anti-malarials, atovaquone and tafenoquine. *See* **Exhibit B,** at 49:2-9; 115:11 – 116:18.

10. Around January 2022, Dr. Lindner advised Ms. Wolking to take a more aggressive anti-babesial therapy. *See* **Exhibit A** at 85:8-15.

11. Around March 2022, Dr. Lindner began prescribing hydrocortisone to Ms. Wolking to treat her inflammatory reaction from the die-off of babesia. *See* **Exhibit A** at 91:8-24.

12. Around May 2022, Dr. Lindner began prescribing prednisone to Ms. Wolking instead of hydrocortisone. *See* **Exhibit A** at 96:4-7; *see also* Walmart Prescriptions (P4-000004-000005), attached hereto as **Exhibit C.**

13. Beginning in August 2022, Ms. Wolking had the following steroid prescriptions, specifically Prednisone and Dexamethasone, filled by Tunkhannock, while also having Prednisone and Dexamethasone prescriptions simultaneously filled and dispensed by another pharmacy, Harris Teeter Pharmacy, nearer to her residence in northern Virginia:

| Date Dispensed | Medication | Amount | Instructions | Pharmacy |
|---|---|---|---|---|
| 8/7/2022 | Prednisone | 5 mg, 120 tablets | Up to 12 tabs po daily as directed | Harris Teeter |
| 8/8/2022 | Prednisone | 10 mg, 500 tablets | Up to 10 tabs po daily as directed | Tunkhannock |
| 8/13/2022 | Dexamethasone | 4 mg, 120 tablets | | Harris Teeter |
| 8/16/2022 | Dexamethasone | 4 mg, 200 tablets | | Tunkhannock |
| 8/30/2022 | Prednisone | 1mg, 180 tablets | | Harris Teeter |
| 9/26/2022 | Dexamethasone | 4 mg, 120 tablets | | Harris Teeter |
| 9/27/2022 | Dexamethasone | 4 mg, 100 tablets | Up to 10 tabs po daily as directed | Tunkhannock |

| Date Dispensed | Medication | Amount | Instructions | Pharmacy |
|---|---|---|---|---|
| 10/4/2022 | Dexamethasone | 4 mg, 200 tablets | Up to 10 tabs po daily as directed | Tunkhannock |
| 10/5/2022 | Dexamethasone | 4 mg, 30 tablets | Up to 10 tabs po daily as directed | Harris Teeter |

*See* E-Prescription Orders (batestamped YA 0020-0022), attached hereto as **Exhibit D**; *see also* Patient Rx History Report of Stacey Wolking (batestamped YA 0019), attached hereto as **Exhibit E**; Harris Teeter Pharmacy Statement Report (P4-000001 - 000002), attached hereto as **Exhibit F.**

14. Tunkhannock clarified that it dispensed 200, 4 mg tablets of Dexamethasone on October 4, 2022, which was the balance of the September 26, 2022, prescription order by Dr. Lindner for 300, 4mg tablets of Dexamethasone, as only 100, 4 mg tablets of Dexamethasone of that order had been filled by Tunkhannock on September 27, 2022. *See* Deposition Testimony of Courtney Young, dated November 15, 2023, 119:19 – 120:22, a true and correct copy attached hereto as **Exhibit G.**

15. According to patient messages between Mr. Wolking and Dr. Linder, during late August 2022 through early October 2022, Ms. Wolking was taking hundreds, and possibly thousands, of milligrams of Prednisone and/or Prednisone-equivalent steroids according to Dr. Linder's instructions regarding the treatment

of her "chronic babesiosis." *See* Patient messages (Bates-stamped LINDNER 000753-985), attached hereto as **Exhibit H.**

16.   At no point did Ms. Wolking ever communicate that she was suffering from any side effects from the steroids to Tunkhannock and there is no evidence that Dr. Linder ever communicated to Tunkhannock that Ms. Wolking was experiencing any side effects. *See* **Exhibit A** at 191:2-5.

17.   On October 7, 2022, Ms. Wolking testified that she was hospitalized and underwent emergency gastrointestinal surgery for an intestinal perforation and an (col)ostomy. *See* **Exhibit A** at 112:15-18; 122:24 – 123:3; 124: 1-9.

18.   Ms. Wolking testified that her surgeon(s) discussed their belief that the high amount of steroids she was taking caused her perforation. *Id.* at 126:9 – 127:10.

19.   Courtney Young ("Ms. Young"), principal of Youngs and owner of TCC, testified that TCC, a compounding pharmacy center that specializes in compounding hormone replacement therapy treatments, filled Ms. Wolking's prescriptions, having been made aware previously prior to filling such prescriptions through more than one conversation with Dr. Lindner of the following: 1) Dr. Lindner's treatment of his patients for babesiosis, including his daughter; 2) that the treatment is dependent on the patient and their symptoms at the time; 3) and Ms. Wolking's general treatment plan, including anti-malarials

and steroids, and diagnosis by Dr. Lindner. *See* Deposition Testimony of Courtney Young, dated April 3, 2024, 6:23 -7:4; 65:9-13; 67:2-16, a true and correct copy attached as **Exhibit I**; *see also* **Exhibit G** at 57:16 – 58:1-8; 74:8-16; 75:7-21; 82:1-11.

20. Ms. Young further testified that she and the other Tunkhannock pharmacist, Brian Bryk, consulted each other, reviewed the package inserts, she had previous knowledge of babesiosis from reading Stephen Bruner's books on Lyme disease and tick-borne illnesses, likely conducted further online research, and would have offered Ms. Wolking standard counseling before dispensing the medication. *See* **Exhibit I** at 74:1-10; 44:24 – 45:3; and 46:11-22; *see also* **Exhibit G**, 37:23 – 38: 9; 59:8-22; 73:1-16; 74:8-16; and 85:20 – 86:4.

21. In fact, Ms. Young testified that she and Dr. Lindner discussed the August 8, 2022, prescription prior to dispensing it because she had questioned him about the quantity prescribed. *See* **Exhibit G** at 76:19 – 77:9.

22. Ms. Young further testified the conversation she had with Dr. Lindner about his treatment plan for Ms. Wolking's chronic babesiosis carried through for the subsequent steroid prescriptions, and that she understood what the course of treatment was from that conversation. *See* **Exhibit G** at 76:19 – 77:9; 131: 2-17.

23. Tunkhannock has no record that Ms. Wolking ever refused to accept patient counseling related to her steroid prescriptions. *See* **Exhibit I** at 47:16-19.

24. Tunkhannock was not aware of other medications that were being filled by and dispensed to Ms. Wolking by other pharmacies, including other prescriptions for steroids filled by Harris Teeter nor did Dr. Lindner ever inform Tunkhannock that Ms. Wolking was having other prescriptions filled at other pharmacies. *See* **Exhibit G** at 81:5-20.

25. It is undisputed that there is no maximum dosage, or upper limit, for the Prednisone or Dexamethasone prescriptions dispensed to Ms. Wolking by Tunkhannock. *See* **Exhibit G** at 20: 3-13; *see also* Package Inserts for Prednisone and Dexamethasone, attached hereto as **Exhibit J.**

26. Plaintiffs' experts allege that Tunkhannock breached their duty to Ms. Wolking, causing her injuries; however, their experts impose a duty upon pharmacists, such as Tunkhannock, that is greater than those imposed by law. *See* Plaintiffs' expert reports, attached hereto as **Exhibit K** (Dr. Dershwitz's Report), **Exhibit L** (Dr. Williams' Report), **Exhibit M** (Dr. Gainor's Report), and **Exhibit N** (Dr. Johns' Report).

27. Based on the foregoing, where there is no evidence that Tunkhannock owed a duty to Ms. Wolking, as claimed by Plaintiffs, and where there is no evidence that Tunkhannock breached the applicable duty to Ms. Wolking, Tunkhannock is entitled to summary judgment on all of Plaintiffs' claims. *See* Tunkhannock's Brief in Support of its Motion for Summary Judgment.

Respectfully submitted,

By: <u>*/s/ Conrad James Benedetto*</u>
   **MCCORMICK & PRIORE, P.C.**
   Philip D. Priore, Esquire
   Attorney ID: 38987
   Conrad James Benedetto, Esquire
   Attorney ID: 312404
   Susan C. Keesler, Esquire
   Attorney ID: 312977
   2 Commerce Square
   2001 Market Street, Suite 3810
   Philadelphia, PA 19103
   (T) 215-972-0161
   (F) 215-972-5580
   ppriore@mccormickpriore.com
   cbenedetto@mccormickpriore.com
   skeesler@mccormickpriore.com
   Attorneys for Defendant,
   Youngs Apothecary, Inc. d/b/a
   Tunkhannock Compounding Center

Dated: <u>July 12, 2024</u>

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, I served the foregoing Statement of Undisputed Material Facts on all registered counsel of record via ECF.

By: */s/ Conrad James Benedetto*
**MCCORMICK & PRIORE, P.C.**
Philip D. Priore, Esquire
Attorney ID: 38987
Conrad James Benedetto, Esquire
Attorney ID: 312404
Susan C. Keesler, Esquire
Attorney ID: 312977
2 Commerce Square
2001 Market Street, Suite 3810
Philadelphia, PA 19103
(T) 215-972-0161
(F) 215-972-5580
ppriore@mccormickpriore.com
cbenedetto@mccormickpriore.com
skeesler@mccormickpriore.com
Attorneys for Defendant,
Youngs Apothecary, Inc. d/b/a
Tunkhannock Compounding Center