# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and<br>DARYL WOLKING, W/H<br><br>Plaintiffs,<br><br>v.<br><br>HENRY LINDER, M.D., and<br>YOUNGS APOTHECARY, INC.<br>d/b/a TUNKHANNOCK<br>COMPOUNDING CENTER<br><br>Defendants. | CIVIL ACTION<br>3:23-cv-00806-JFS<br><br><br><br>**PROPOSED ORDER** |

**AND NOW**, this _____ day of _____, 2024, upon consideration of the Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56 of defendant, Youngs Apothecary, Inc. d/b/a Tunkhannock Compounding Center, and any response thereto, it is hereby **ORDERED** that defendant's Motion is **HEREBY GRANTED**. Paragraph 77 and any allegations as recklessness, wantonness, outrageousness as to defendant, Youngs Apothecary, Inc. d/b/a Tunkhannock Compounding Center, are **HEREBY DISMISSED, WITH PREJUDICE**.

BY THE COURT:

_____
Hon. Malachy E. Mannion

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and<br>DARYL WOLKING, W/H<br><br>Plaintiffs,<br><br>v.<br><br>HENRY LINDER, M.D., and<br>YOUNGS APOTHECARY, INC.<br>d/b/a TUNKHANNOCK<br>COMPOUNDING CENTER<br><br>Defendants. | CIVIL ACTION<br>3:23-cv-00806-JFS<br><br>**PARTIAL MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant, Youngs Apothecary, Inc. ("Youngs") d/b/a Tunkhannock Compounding Center ("TCC") (collectively as a defendant, "Tunkhannock"), by and through its attorneys, McCormick & Priore, P.C., hereby files a Partial Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, on the basis that plaintiffs are unable to carry their burden in proving that the conduct contained in paragraph 77 of their Complaint (Dkt. 1) and any/all allegations regarding "recklessness," "wantonness," or "outrageousness" contained therein and at any point within the Complaint as to Tunkhannock and, therefore, as a matter of law, Tunkhannock is entitled to summary judgment on these claims.

In support of its Partial Motion for Summary Judgment, Tunkhannock submits a Memorandum of Law, which is incorporated by reference herein. Further, Tunkhannock respectfully requests oral argument on its Motion.

                Respectfully submitted,

By: */s/ Conrad James Benedetto*
      **MCCORMICK & PRIORE, P.C.**
      Philip D. Priore, Esquire
      Attorney ID: 38987
      Conrad James Benedetto, Esquire
      Attorney ID: 312404
      Susan C. Keesler, Esquire
      Attorney ID: 312977
      2 Commerce Square
      2001 Market Street, Suite 3810
      Philadelphia, PA 19103
      (T) 215-972-0161
      (F) 215-972-5580
      ppriore@mccormickpriore.com
      cbenedetto@mccormickpriore.com
      skeesler@mccormickpriore.com
      Attorneys for Defendant,
      Youngs Apothecary, Inc. d/b/a
      Tunkhannock Compounding Center

Date: <u>July 12, 2024</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, W/H <br><br> Plaintiffs, <br><br> v. <br><br> HENRY LINDER, M.D., and YOUNGS APOTHECARY, INC. d/b/a TUNKHANNOCK COMPOUNDING CENTER <br><br> Defendants. | CIVIL ACTION 3:23-cv-00806-JFS <br><br> JURY TRIAL DEMANDED <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** |

Tunkhannock hereby moves for Partial Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, on the basis that plaintiffs are unable to carry their burden in proving that the conduct contained in paragraph 77 of their Complaint (Dkt. 1) and any/all allegations regarding "recklessness," "wantonness," or "outrageousness" contained therein and at any point within the Complaint as to Tunkhannock and, therefore, as a matter of law, Tunkhannock is entitled to summary judgment on these claims. None of the evidence to date, including documentation, deposition testimony, and expert discovery on all aspects of this matter, indicate in any way that Tunkhannock, at any material time, acted with "recklessness," "wantonness," or "outrageousness." Therefore, these allegations against Tunkhannock should be dismissed, with prejudice.

I.  **FACTUAL HISTORY**

This action concerns claims for damages by plaintiffs, Stacey Wolking ("Ms. Wolking") and Darly Wolking ("Mr. Wolking"), husband and wife (collectively, the "Wolkings" or "plaintiffs"), from Ms. Wolking's alleged treatment by defendant, Henry Linder, M.D. ("Dr. Linder"), in 2022 for what Dr. Lindner diagnosed as "chronic babesiosis." (Dkt. 1 at ¶¶ 9-77) Plaintiffs have alleged and testified that, at the direction of Dr. Linder, Ms. Wolking consumed large amounts of steroids in August-October 2022 that were prescribed by Dr. Linder and dispensed by several pharmacies, but that her damages were caused by the steroids dispensed by TCC. (Dkt. 1 at ¶ 74) Plaintiffs allege that, in filling Ms. Wolking's prescriptions according to Dr. Linder, Tunkhannock was negligent because it "provided prescription corticosteroids for the use of [Ms.] Wolking which [it] knew or should have known were excessive, dangerous, inappropriate, and/or improper" and "failed to exercise due diligence in its professional capacity by failing to contact the prescribing physician, Dr. Lindner, to inquire about the unreasonably high doses of corticosteroids prescribed, and/or failing to take steps to correct any error by the prescribing physician, and/or by failing to refuse to fill the prescriptions for corticosteroids in the unreasonably high doses ordered by Dr. Lindner," thus causing plaintiffs' damages. (Dkt. 1 at ¶ 96-98)

Plaintiffs' allegations have been denied. Moreover, discovery has shown that these allegations are, at a minimum, disputed and, arguably, inaccurate in that the allegations regarding the "excessive, dangerous, inappropriate, and/or improper" prescription is misleading, and that Tunkhannock exercised due diligence when it, in fact, questioned Dr. Lindner about his prescriptions and treatment plan of the disease with which he diagnosed Ms. Wolking. Therefore, as discussed further *infra*, Tunkhannock acted, at most, negligently, which is strenuously denied.

In support of their claims, plaintiffs testified at their respective depositions, and they have proposed five (5) experts, each of whom have submitted reports and testified at a deposition. Dr. Lindner also testified on his own behalf. In support of its defenses, Tunkhannock's principal and pharmacists have testified, and proposed two (2) experts, each of whom have submitted reports and testified.[1]

By way of further background, Ms. Wolking testified that (a) a tick bit her in 2008, (b) she treated for one year thereafter for Lyme disease with a homeopathic

---

[1] Tunkhannock has submitted the following as exhibits, which are attached hereto and made a part hereof in support of its Partial Motion for Summary Judgment: Ms. Wolking's January 8, 2024, deposition testimony (Ex. A); Mr. Wolking's January 9, 2024, deposition testimony (Ex. B); Courtny Young's ("Ms. Young") November 15, 2023, deposition testimony (Ex. C); Young's Fed. R. Civ. P. 30(b)(6) April 3, 2024, deposition testimony (Ex. D); Brian Bryk's ("Mr. Bryk") February 2, 2024, deposition testimony (Ex. E); Dr. Lindner's February 21, 2024, deposition testimony (Ex. F); the report, C.V., and June 4, 2024, testimony of Mark Dershwitz, M.D. (Ex. G); the report, C.V., and June 6, 2024, testimony of Thomas Johns, Pharm.D. (Ex. H); the report, C.V., and June 11, 2024, testimony of Jonathan Williams, M.D. (Ex. I); the report, C.V., and June 13, 2024, testimony of Paul G. Auwaerter, M.D. (Ex. J); the report, C.V., and June 18, 2024, testimony of Carl Gainor, Ph.D., J.D. (Ex. K); the report, C.V., and June 17, 2024, testimony of Stephen Smith, M.D. (Ex. L); and the report, C.V., and June 18, 2024, testimony of Joy Bowers Greene, Pharm.D. (Ex. M).

doctor, and (c) her symptoms resolved.[2] Beginning in 2013, Ms. Wolking began hormone replacement therapy and telemedicine treatment with Dr. Lindner for menopausal symptoms. In January 2022, based on a telephone consultation, Dr. Lindner determined that her continued symptoms were now unrelated to her hormone replacement therapy, and he diagnosed Ms. Wolking with "chronic babesiosis," a tick-borne illness heretofore generally unrecognized, or at least rarely recognized, in humans. Based on Dr. Lindner's treatment plan, Ms. Wolking began a substantial regimen of anti-malarial, anti-biotic, and steroid consumption to "kill" the babesia and treat the subsequent inflammation.

From August 4, 2022, through October 4, 2022, Ms. Wolking had three (3) steroid prescriptions, only, filled by TCC, while also having her anti-malarial, anti-biotic, and other and similar steroid prescriptions simultaneously filled and dispensed by other pharmacies such as Harris-Teeter and at least one other pharmacy nearer to her residence in northern Virginia.[3] According solely to emails

---

[2] According to plaintiffs' infectious disease expert, Dr. Auwaerter, the longest time between a tick bite and a diagnosis of a tick-borne illness is no more than 1-2 years.

[3] It is uncontroverted that Tunkhannock filled three (3) prescriptions written by Dr. Lindner to Ms. Wolking regarding his treatment of her chronic babesiosis: (1) 500 10mg tablets of Prednisone, written on August 4, 2022, and filled on August 8, 2022, with instructions for Ms. Wolking to take "[u]p to 10 tabs (*i.e.*, 100mg) po daily *as directed*" (emphasis added); (2) 200 4mg tablets of dexamethasone, written on August 15, 2022, and filled on August 16, 2022, with instructions for Ms. Wolking to take "[u]p to 4 tabs (*i.e.*, 16mg) po daily in divided doses *as directed*" (emphasis added); and (3) 300 4mg tablets of dexamethasone, written on September 26, 2022, and filled on September 27, 2022 (100 tablets) and October 4, 2022 (200 tablets), with instructions for Ms. Wolking to take "[u]p to 10 tabs (*i.e.*, 40mg) po daily *as dire[cted]*" (emphasis added).

During this time, between August 4, 2022, and October 4, 2022, Ms. Wolking had other steroid prescriptions filled by other pharmacies. *See*, *e.g.*, the reports and testimony of Dr. Auwaerter and Dr. Smith. The dosing ratio between Prednisone and dexamethasone is agreed among all proposed experts of between 5-7 : 1, in that

4

between Mr. Wolking and Dr. Linder, only,[4] during late August through early October 2022, Ms. Wolking was taking hundreds, and possibly thousands, of milligrams of Prednisone and/or Prednisone-equivalent steroids according to Dr. Linder's instructions regarding the treatment of her "chronic babesiosis."[5]

On October 7, 2022, Ms. Wolking testified that she was hospitalized and underwent emergency gastrointestinal surgery for an intestinal perforation and an (col)ostomy. According to plaintiffs' testimony, Ms. Wolking's surgeon(s) concluded that the high amount of steroids she was taking, in accordance with Dr. Lindner's instructions, from late August through early October 2022 are what caused her perforation. Ms. Young, principal of Youngs and owner of TCC, testified that TCC, a compounding pharmacy center that specializes in compounding hormone replacement therapy treatments, filled Ms. Wolking's prescriptions having been made aware of Ms. Wolking's treatment plan and diagnosis directly by Dr. Lindner.[6]  Ms. Young and Mr. Bryk, the other TCC

---

5-7 milligrams of Prednisone would equal 1 mg of dexamethasone, for conversion purposes in their reports and testimony.

[4]   Tunkhannock was not carbon copied on these emails and were not aware of this communication as it was ongoing.

[5]   Dr. Lindner would base his daily "as directed" instructions to Ms. Wolking regarding her steroid consumption based on Mr. Wolking's email reporting to Dr. Lindner of how much steroids she was taking in a given day and how she was subjectively feeling. This was generally in accordance with Dr. Lindner's treatment plan.

[6]   There is testimony that Dr. Lindner developed his chronic babesiosis treatment plan – that included a patient-driven consumption of the large amounts of anti-malarial, anti-biotic, and corticosteroids based on the patient's daily condition as communicated to Dr. Lindner and his directed response to that condition – from the treatment of his daughter, Valerie Lindner, and potentially other patients, before he began Ms. Wolking on her chronic babesiosis treatment plan.

pharmacist, consulted each other, reviewed the package inserts,[7] likely conducted additional research online, and would have offered Ms. Wolking standard counseling before dispensing the medication. While the Tunkhannock pharmacists could not recall specific conversations, or specific details of conversations, with Dr. Lindner or Ms. Wolking about Ms. Wolking's specific prescriptions, the course and scope of their standard of practice would have been to speak with Dr. Lindner before dispensing the prescribed steroids, which were to be taken in accordance with both Dr. Lindner's directions as instructed on the prescriptions and a pharmacist's duty to the patient to dispense the prescription as ordered by the treating physician, for a disease that does not have an FDA steroid indication.

## II.     ARGUMENT

Tunkhannock contends that paragraph 77 pf plaintiffs' Complaint should be dismissed, with prejudice, for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Plaintiffs have not pleaded, nor has extensive discovery revealed, any facts that support any contentions that Tunkhannock acted in any reckless, wanton, or

---

[7] Patient package inserts ("PPI") are, according to the Food and Drug Administration ("FDA"), patient labeling that can be part of the FDA-approved prescription drug labeling. PPIs for most prescription drugs are submitted to the FDA voluntarily by the manufacturer and approved by the FDA, but their distribution is not mandated. PPIs include details and directions that health care providers need to prescribe a drug properly, including approved uses for the drug, contraindications, potential adverse reactions, available formulations and dosage, and how to administer the drug. *See*, *e.g.*, https://www.fda.gov/drugs/fdas-labeling-resources-human-prescription-drugs/patient-labeling-resources.

outrageous manner, or that plaintiffs are entitled to interest, delay damages, or costs from Tunkhannock.

### A. Legal Standard

#### 1. *Summary Judgment*

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Id.*

It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) *(citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

7

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. *Celotex Corp.*, 477 U.S. at 322-23.

    2.    ***Recklessness***

In Pennsylvania, pleadings of "recklessness" are only proper where a defendant's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct. *Slappo v. J's Dev. Assoc., Inc.*, 791 A.2d 409

8

(Pa. Super. Ct. 2002).[8] The "state of mind of the actor is vital" and that "[t]he act, or failure to act, must be intentional, reckless or malicious." *Feld v. Merriam*, 506 Pa. 382, 785 A.2d 742 (1984). An allegation of evil motive must be supported by specific averments ***of fact***. *See McDaniel v. Merk, Sharp and Dohme*, 533 A.2d 436 (Pa. 1987) (emphasis added). Conduct is sufficiently reckless ***only*** when a defendant knows, or has reason to know, of facts that create a high degree of risk of physical harm to another, ***and*** deliberately proceeds to act in conscious disregard of, or indifference to, that risk. *Jones*, 958 F. Supp. at 236 (emphasis added).

In other words, recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence. *Monroe v. CBH20, LP*, 2022 PA Super 197, 286 A.3d 785, 806 (2022) (quotations omitted). The plaintiff must establish that the defendant did an act or intentionally failed to do an act which it was its duty to the plaintiff to do, knowing or having reason to know of facts which would lead a

---

[8] Allegations of recklessness give rise to the potential for punitive damages. Punitive damages may only be "awarded for conduct that is outrageous, because of . . . evil motive or . . . reckless indifference to the rights of others." *Jones v. McDonald's Corp. AGA*, 958 F. Supp. 234, 236 (E.D. Pa. 1997) (*citing Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)); *see also Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355 (1963). In other words, punitive damages are an "extreme remedy" available only in the most exceptional matters. *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005). A claim for punitive damages premised upon reckless indifference may succeed if the plaintiff satisfies two conditions: first, that "a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed," and second, that "he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Wilson v. TA Operating, LLC*, No. 4:14-CV-00771, 2017 WL 569195, at *4 (M.D. Pa. Feb. 13, 2017) (*citing Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 124 (Pa. 2005); *see also Martin v. Johns-Manville Corp.*, 508 Pa. 154 (1985).

9

reasonable person to realize, not only that the defendant's conduct created an unreasonable risk of physical harm to the plaintiff, but also that such risk was substantially greater than that which was necessary to make its conduct negligent. *See id.* (*citing Tayar v. Camelback Ski Corp.*, 616 Pa. 385, 401-02, 47 A.3d 1190, 1200-01 (2012)); *see also* Restatement (2d) Torts § 500, 501(1).

### B. Plaintiffs Do Not Allege and Cannot Prove Any Facts that Establish that Tunkhannock Acted Recklessly, Wantonly, or Outrageously

Given the foregoing, Pennsylvania requires a plaintiff to do more than simply allege, in conclusory terms, that ordinary actions or omissions somehow rise to "reckless," "outrageous," "willful," or "wanton" conduct necessitating "exemplary, treble and/or punitive damages." Here, plaintiffs have not established that Tunkhannock acted "recklessly," "wantonly," or "outrageously" for what is, at the very most, ordinary negligence, which is specifically denied.

In fact, the record is replete with the absence of recklessness on the part of Tunkhannock. Plaintiffs testified that Ms. Wolking was consuming steroids (and all her medication) at the direction of Dr. Lindner, not Tunkhannock or TCC. Dr. Lindner testified that he instructed Ms. Wolking as to her treatment, not Tunkhannock or TCC. The pharmacists dispensed the medication, in accordance with the instructions written on the prescription, after consultation and review. There is no allegation that TCC dispensed the wrong quantity, misrepresented Dr.

Lindner's instructions, or failed to dispense the medication in accordance with Dr. Lindner's prescription.[9]

There is absolutely no evidence in the record to suggest ill-will, bad motive, or reckless indifference on the part of Tunkhannock, and therefore no evidence that Tunkhannock acted recklessly, wantonly, or outrageously. There is no genuine issue of material fact to support plaintiffs' assertions of recklessness, wantonness, or outrageousness on the part of Tunkhannock and, therefore, under these circumstances, plaintiffs' claims contained in paragraph 77 and any claims of recklessness, wantonness, or outrageousness as to Tunkhannock should be dismissed, with prejudice.

## III.  CONCLUSION

Tunkhannock respectfully requests that this Court grant its Partial Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and enter the accompanying proposed Order. This Court should dismiss paragraph 77 plaintiffs' Complaint (Dkt. 1) and any/all allegations regarding "recklessness," "wantonness," or "outrageousness" contained therein or throughout plaintiffs' Complaint as to

---

[9] Tunkhannock is simultaneously filing a Motion for Summary Judgment as to its duty. Tunkhannock incorporates that Motion as though fully set forth at length herein.

Tunkhannock, with prejudice.

                                  Respectfully submitted,

By: */s/ Conrad James Benedetto*
      Philip D. Priore, Esquire
      Attorney ID: 38987
      Conrad James Benedetto, Esquire
      Attorney ID: 312404
      **MCCORMICK & PRIORE, P.C.**
      2 Commerce Square
      2001 Market Street, Suite 3810
      Philadelphia, PA 19103
      (T) 215-972-0161
      (F) 215-972-5580
      ppriore@mccormickpriore.com
      cbenedetto@mccormickpriore.com
      skeesler@mccormickpriore.com
      Attorneys for Defendant,
      Youngs Apothecary, Inc. d/b/a
      Tunkhannock Compounding Center

Date: July 12, 2024

## CERTIFICATE OF SERVICE

I, Conrad James Benedetto, Esquire, hereby certify that on this date the Partial Motion for Summary Judgment of defendant, Youngs Apothecary, Inc. d/b/a Tunkhannock Compounding Center was filed electronically and is available for viewing and downloading from the ECF system, and was therefore forwarded to all counsel of record via ECF.

**MCCORMICK & PRIORE, P.C.**

By: */s/ Conrad James Benedetto*
    Philip D. Priore, Esquire
    Conrad James Benedetto, Esquire
    Susan C. Keesler, Esquire
    Attorneys for Defendant,
    Youngs Apothecary, Inc. d/b/a
    Tunkhannock Compounding Center

Date: July 12, 2024