UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY WOLKING and DARYL WOLKING, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:23-cv-806 |
| v. | : | (JUDGE MANNION) |
| HENRY LINDNER and YOUNGS APOTHECARY, INC., d/b/a TUNKHANNOCK COMPOUNDING CENTER | : : | FILED SCRANTON AUG 08 2024 |
| Defendants | : : | PER _____ DEPUTY CLERK |

## MEMORANDUM

Defendant Tunkhannock Compounding Center is sued for negligence related to its dispensing of medical prescriptions to Plaintiff Stacey Wolking. Defendant moves for summary judgment. (Doc. 56; Doc. 58).

### I. BACKGROUND

Plaintiff Stacey Wolking started treatment with Defendant Henry Lindner, M.D. in 2013. (Doc. 56-2 ¶5; Doc. 59.1 ¶5). At some point, Dr. Lindner diagnosed Ms. Wolking with "chronic babesiosis." (Doc. 56-2 ¶6; Doc. 59.1 ¶6). He prescribed her antimicrobials and corticosteroid therapy.

(Doc. 56-2 ¶¶8, 11; Doc. 56-3 at 51:16–52:4, 95:23–96:7; Doc. 59-1 ¶7; Doc. 59-8 at 5).

On August 8, 2022, Defendant dispensed Ms. Wolking's prescription from Dr. Lindner for 500 10mg tables of prednisone, with instructions "Up to 10 tabs po daily as directed." (Doc. 56-2 ¶13). On August 16, 2022, it dispensed her prescription for 200 4mg tablets of Dexamethasone.[1] (Id.). On September 27, 2022, it dispensed her prescription for 100 4mg tables of Dexamethasone, with instructions "Up to 10 tabs po as dire." (Id.; Doc. 56-7 at 4). And on October 4, 2022, it dispensed her prescription for 200 4mg tablets of Dexamethasone, with instructions "Up to 10 tabs po daily as directed." (Doc. 56-2 ¶13).

That October, Ms. Wolking experienced progressively more severe abdominal pain. (Doc. 57-3 at 112–13). She was taken to the emergency room and underwent surgery to repair gastrointestinal perforations. (Id. at 118–24). In a follow-up visit, her doctors told her that in their opinion the perforations were caused by the steroids. (Id. at 124–27). She now claims that her injuries were caused by Defendant's negligence. (Doc. 1 at 20–21).

---

[1] The record of this prescription written by Dr. Lindner shows the following instructions: "Take up to 4 tabs po daily in divided doses as directed." (Doc. 56-7 at 3). The pharmacy's report of this prescription does not indicate what instructions were provided with it. (Doc. 56-8 at 2).

## II. LEGAL STANDARD

Before trial, "a party may move for summary judgment, identifying each claim ... on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of law." *Id.* Material facts are those that "might affect the outcome of the suit under the governing law," and a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[I]n assessing the genuineness of a potential factual dispute, inferences from the underlying facts should be drawn in favor of the nonmoving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). But summary judgment in favor of the movant is warranted "if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it bears the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). At this stage, the plaintiff may not "rest upon the mere allegations or denials of his pleadings"; instead, "[t]o withstand a motion for summary judgment," he "must point to concrete evidence in the record that

supports each and every essential element of his case." *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2024).

The moving party's burden has recently been explained this way:

> In interpreting Rule 56, the Supreme Court has outlined two closely related methods for a movant to succeed at summary judgment. First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986) (explaining the meaning of the terms 'material' and 'genuine'). Second, under the *Celotex* approach, a moving party may instead demonstrate that the nonmoving party has not made "a showing sufficient to establish the existence of an element essential to that party's case … *on which that party will bear the burden of proof at trial.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).

*Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622 (3d Cir. Apr. 26, 2024).

## III. DISCUSSION

Defendant contends that there is no genuine dispute of material fact as to whether it breached a duty owed to Ms. Wolking. (Doc. 56-1). It understands its duty to patients—"a duty to fill … prescriptions in a safe manner"—as twofold. (Id. at 5–9). First, it owes a duty to "remedy inadequacies on the face of a physician's prescriptions." (Id. at 5 (citing

- 4 -

*Forish v. Paul*, 2 Pa. D & C.4th 413, 416–17 (Erie Cnty. Ct. Comm. Pls. 1989)). Second, it owes a duty to act with reasonable care "in preparing and dispensing a medication pursuant to the orders of a physician." (Id. (citing *Fowler*, 2 Pa. D & C.4th at 416–17)).

According to Defendant, it is undisputed that "[t]here were no inadequacies on the face of the prescription orders written by Dr. Lindner." (Id. at 8). Defendant also asserts that "[t]here has been no evidence that [it] was negligent in the process of preparing the steroid prescriptions for Ms. Wolking." (Id. at 7 (emphasis omitted)).

Plaintiffs argue that Defendant breached its duty "to act in response to facially inadequate prescriptions." (Doc. 59 at 6 (stating that "the duty to act in response to facially inadequate prescriptions" "is the duty that Plaintiffs allege.")). They submit that it is disputed whether (1) Dr. Lindner's prescriptions were inadequate on their face; and (2) if they were, "whether the pharmacists should have recognized that risk as obvious on the face of the prescriptions." (Id. at 10). Next, Defendant asserts, genuine disputes exist regarding the conduct of Defendant's pharmacists before dispensing the prescriptions. (Id. at 11).

### A. Pharmacists' Duty

A negligence claim requires a plaintiff to demonstrate that the defendant owed her a duty, the defendant breached that duty, the breach injured her, and she suffered actual loss or damage. *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 758 (Pa. 2018). Pharmacists owe a duty of care to their patients, and because pharmacists are professionals, they are "held to the standard of care, skill, intelligence which ordinarily characterizes the profession." *Riff v. Morgan Pharmacy*, 508 A.2d 1247, 1251 (Pa. Super. Ct. 1986). A pharmacist may breach this duty "by failing to warn the patient or notify the prescribing physician of the obvious inadequacies appearing on the face of the prescription which created a substantial risk of serious harm to the plaintiff." *Id.* at 1252.

### B. Obvious Inadequacies

Again, Defendants asserts that it is undisputed that "there were no inadequacies on the face of the prescriptions orders." (Doc. 56-1 at 8). Plaintiffs contend that the same *is* disputed. (Doc. 59 at 10).

First, Plaintiffs dispute Defendant's assertion that "there is no maximum dosage, or upper limit, for" prednisone or dexamethasone. (Doc.

56-2 ¶25; Doc. 59-1 ¶25).[2] In support, they cite Professor Thomas Johns, Pharm.D.'s opinions that Dr. Lindner's approach to corticosteroid treatment based on the belief that there is no upper limit on dosing "lacks scientific merit or published evidence to support [it]," (Doc. 59-1 ¶25 (citing Doc. 56-16 at 5)) and that "[t]he initial dosing recommendation for corticosteroids in the official FDA approved product labeling provides a useful benchmark when it comes to evaluating the reasonableness of that prescription." (Id. (citing Doc. 59-9 at 2)).

Second, Plaintiffs dispute any assertion by Defendant that the corticosteroid prescriptions "were facially reasonable." (Doc. 59-1 ¶25). Here they cite Dr. Mark Dershwitz's opinion that "the risk of adverse effects" created by the quantity of corticosteroids dispensed by Defendant to Ms. Wolking in August 2022 "is extremely high," (id. (citing Doc. 56-14 at 3)),[3] and Dr. Johns's opinion that Defendant's pharmacists "should have known

---

[2] Defendant relies on this asserted nonexistence of a maximum dosage as supporting its contention that the prescriptions were not inadequate on their face. (Doc. 56-1 at 8–9 (distinguishing *Riff*, 508 A.2d at 1249–50, in which the defendant pharmacy had dispensed prescriptions for Cafergot suppositories in excess of the "maximum dosage ... accepted in the accepted medical literature.")).

[3] Dr. Dershwitz also opined that the prescriptions dispensed by Defendant "created a substantial risk of serious harm .... due to the high doses of corticosteroids contained in those prescriptions and dispensed to Ms. Wolking in such a short time." (Doc. 56-14 at 3).

the significant health risk posed by the extremely high corticosteroid doses." (Id. (citing Doc. 56-16 at 7)).

Defendant in reply again asserts that "there is no upper limit for either medication." (Doc. 61 at 3). It states that "all of plaintiffs' experts concede this fact," but does not support this assertion with citation. (Id.). Defendant also resists the argument that the prescriptions were facially inadequate by reason of their quantity on the ground that "the medication was to be taken as directed by Dr. Lindner, i.e., that **he** was monitoring Ms. Wolking's intake of the medications." (Id. at 4).

The court is not persuaded that "as directed" instructions or the lack of a specific accepted "maximum dosage" foreclose a finding of inadequacy.

*Riff* does not appear to contemplate a duty which a pharmacist may automatically fulfill simply by instructing a patient to take prescribed medication "as directed." See *Riff*, 508 A.2d at 1251 (explaining that it "is not that case" "that a pharmacy is no more than a warehouse for drugs and that a pharmacist has no more responsibility than a shipping clerk who must dutifully and *unquestioningly* obey the written orders of omniscient physicians"). Such a protection would virtually absolve pharmacists from their duty entirely. And to require the pharmacy to take action in response to

a facially inadequate prescription does not, as Defendant suggests, (Doc. 61 at 4 & n.3), impose on it the duty to monitor a patient's intake.

Nor does the court see reason to conclude that a prescription cannot be inadequate on its face unless there is, as in *Riff*, a "uniformly accepted maximum safe dosage." 508 A.2d at 1248. While accepted maximum dosages may define the boundaries of a pharmacist's duty, the court does not understand *Riff* as suggesting that the absence of an accepted maximum eliminates those boundaries entirely.

The court instead views the expert opinions offered by Plaintiffs as sufficient to establish a genuine dispute regarding the existence of an obvious inadequacy on the face of Dr. Lindner's prescriptions for Ms. Wolking. Crediting testimony that the quantities/dosages prescribed and dispensed (which quantities/dosages are undisputed) posed a substantial risk of serious harm, and that pharmacists should have recognized that risk, a reasonable jury could determine that the prescriptions were inadequate on their face. So for the purpose of this motion, the court accepts as true that the prescriptions were facially inadequate.

### C. Pharmacists' Conduct

Accepting the premise that the prescriptions were facially inadequate, the court concludes that Plaintiffs have also established genuine disputes of

material fact with regard to the pharmacists' conduct in response to that inadequacy.

Defendant's owner Courtney Young testified that she and Dr. Lindner did not talk about any potential side effects Ms. Wolking might experience from the prescriptions. (Doc. 59-2 at 80).[4] Brian Byrk, who dispensed Ms. Wolking's prescriptions on August 8th, September 27th, and October 4th, (Doc. 56-8), testified that he did not remember whether, before he did so, he spoke to Ms. Young or Dr. Lindner about Ms. Wolking. (Doc. 59-4). And Ms. Wolking testified that the phone calls she had with Defendant regarding her

---

[4] On this issue, Plaintiffs also point to Dr. Lindner's testimony that Defendant's pharmacists did not question his corticosteroid prescriptions for a babesiosis patient. (Doc. 59 at 11 (citing Doc. 59-5 at 291)). Lindner added that "one of them asked me at one point … to give … a prescription in terms of how many tablets to take for how long or whatever." (Doc. 59-5 at 291).

Because there are other material factual disputes, the court need not address whether a pharmacist's failure to question a physician concerning the wisdom of a particular treatment approach (as opposed to, for example, the quantity or interactions of particular drugs) could constitute a breach of duty. *Cf. Forish*, 2 Pa. D & C.4th at 417 ("[T]here exists no authority in Pennsylvania which would place on the pharmaceutical profession the … [duty] to advise and consult with the patient's treating physician (barring an inadequacy apparent on the face of the prescription)."); *id* at 418 ("It must be remembered that a pharmacist is not licensed to practice medicine.").

- 10 -

prescriptions from Dr. Lindner were "strictly, do you want this? I'd say yes, we'd confirm my address, and that would be it." (Doc. 57-3 at 69–70).

Plaintiffs have presented some evidence that Defendant "fail[ed] to warn the patient or notify the prescribing physician of the obvious inadequacies appearing on the face of the prescription which created a substantial risk of serious harm to" Ms. Wolking. *Riff*, 508 A.2d at 1252. They have thereby established a genuine dispute of material fact as to Defendant's breach of its duty to Ms. Wolking. *See id.*

### D. Causation and Injury

Defendant presently advances no argument that Plaintiffs have failed to make a sufficient showing regarding the causation and injury elements of their negligence claim. (See generally Doc. 56.1).

Therefore, having concluded that genuine disputes of material fact exist with regard to the first two negligence elements, the court concludes that Defendant is not entitled to summary judgment on Plaintiffs' negligence claims against it.

### E. "Recklessness," "wantonness," and "outrageousness" allegations

Defendant separately moves for partial summary judgment with respect to the Complaint's allegation, in paragraph 77, (Doc. 1 ¶77), that Ms.

- 11 -

Wolking's injuries "were caused solely and wholly by reason of the recklessness, negligence, wantonness, outrageousness, and carelessness of Defendants." (Doc. 58). It requests that this paragraph be dismissed under Rule 12(b)(6) for failure to state a claim and/or for summary judgment to be entered in its favor with respect to this paragraph. (Doc. 57 at 6, 11). According to Defendant, "Plaintiffs have not pleaded, nor has extensive discovery revealed, any facts that support any contentions that Tunkhannock acted in any reckless, wanton, or outrageous manner." (Id. at 6).

Defendant previously moved to dismiss paragraphs 75–77 under Rule 12(b)(6). (Doc. 11; Doc. 12). The court denied this motion because "Plaintiffs' allegation that Defendants acted with 'recklessness, ... wantonness, outrageous[ness], and carelessness,' (Doc. 1 ¶77), ... is not a 'claim' subject to dismissal." (Doc. 32 at 14–15). 2024 WL 84206, at *6. Defendant does not now challenge this decision. (See generally Doc. 57).

As to Defendant's request for summary judgment on this allegation, Plaintiffs contend that it has not met its summary judgment burden because its "brief does not cite to any portion of the record at all." (Doc. 60 at 3–4). See Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record ... or; (B) showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.").

In Pennsylvania, a plaintiff may recover punitive damages "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchinson ex rel. Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Id.* Plaintiffs' Complaint, though it generally alleges "recklessness, negligence, wantonness, outrageousness, and carelessness" on the part of "Defendants," (Doc. 1 ¶77), only seeks punitive damages against Dr. Lindner. (Id. ¶¶87, 92, page 22).

Initially, the court notes that the federal rules require that a pleading contain "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). But a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). So "[t]he absence of a specific request for punitive damages in a complaint does not necessarily preclude recovery of such damages." *Holick v. Burkhart*, No. 16-1188, 2018 WL 4052154, at *5 (D. Kan. Aug. 24, 2018); *see also Soltys v. Costello*, 520 F.3d 737, 742 (7th Cir. 2008) (deeming erroneous the

"assumption that a prayer for punitive damages had to appear in the complaint in order to sustain an award of such damages."); *Griffith Lab'ys U.S.A., Inc. v. Promper*, 607 F. Supp. 999, 1001 (S.D.N.Y. 1985) ("[Fed. R. Civ. P. 54(c)] has been construed to permit the award of punitive damages when a complaint did not separately plead for them but did allege facts sufficient to support a punitive damages award." (citing *Guillen v. Kuykendall*, 470 F.2d 745, 748 (5th Cir. 1972))). So the fact that Plaintiffs have not demanded punitive damages from Defendant Tunkhannock Compounding Center does not itself bar them from recovering such damages from Tunkhannock.

The court next comments on the formulation of Defendant's motion. It seeks an unusual procedural result—summary judgment with respect to one allegation in Plaintiffs' complaint. But given Defendant's brief's discussion of the availability of punitive damages for reckless conduct, (Doc. 58-1 at 9 n.8), and the facts that Plaintiffs alleged "recklessness," "wantonness," and "outrageousness" and requested punitive damages (against Dr. Lindner), (Doc. 1 ¶¶77, 87, 92, and page 22), there is no reason to believe that the purpose of this motion is less than clear. Defendant seeks summary judgment with respect to any claim for punitive damages against it.

Rule 56 requires the moving party to "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Plaintiffs do not dispute that summary judgment *can* be granted with respect to a punitive damages claim alone. (See generally Doc. 60). *See, e.g.*, *Marsh v. Norfolk S. Ry.*, 243 F. Supp. 3d 557, 573 (M.D. Pa. 2017).

Plaintiffs' argument in opposition to summary judgment with respect to punitive damages against Tunkhannock Compounding Center rests on Fed. R. Civ. P. 56(c)(1)(A). (Doc. 60 at 3–5). And it is true that Defendant does not cite record evidence in its brief in support of this motion. (See Doc. 58-1). But Rule 56 permits other means of supporting one's assertions regarding factual disputes: a party may "cit[e] to particular parts of materials in the record … *or* show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support a fact." Fed. R. Civ. P. 56(c)(1)(B) (emphasis added).

Defendant argues that "[P]laintiffs have not established that Tunkhannock acted 'recklessly,' 'wantonly,' or 'outrageously,'" and that "[t]here is … no evidence in the record to suggest ill-will, bad motive, or reckless indifference on the part of Tunkhannock, and therefore no evidence

that Tunkhannock acted recklessly, wantonly, or outrageously." (Doc. 58-1 at 10–11).[5]

A plaintiff bears the burden of proof at trial to establish that the defendant's conduct warrants punitive damages. *See Hutchinson*, 870 A.2d at 772 ("[N]either is there anything in law or logic to prevent the plaintiff in a case sounding in negligence from undertaking the additional burden of attempting to prove, as a matter of damages, that the defendant's conduct not only was negligent but that the conduct was also outrageous, and warrants a response in the form of punitive damages."). Defendant here has attempted to demonstrate that Plaintiffs have not established the existence of a state of mind warranting punitive damages. (Doc. 58-1 at 10–11).

The court cannot endorse Plaintiffs' contention that Defendant's motion for summary judgment regarding punitive damages must be denied solely because it did not cite the record. (Doc. 60 at 3–4). That reasoning ignores the second method by which a defendant can satisfy its burden. *See Mall Chevrolet*, 99 F.4th at 630.

---

[5] Defendant's brief also asserts that numerous specific facts demonstrate "the absence of recklessness on the part of Tunkhannock." (Doc. 57 at 13). But because those factual assertions are made without citation to the record (or even to Defendant's statement of material facts), they are disregarded.

Rule 56 is interpreted in light of its purpose "to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24. Accordingly, the Supreme Court has rejected an interpretation which would impose on the moving party the burden "to produce evidence showing the absence of a genuine dispute of material fact ... with respect to an issue on which the nonmoving party bears the burden of proof." *Id.* at 325. Instead, the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* That is what Defendant has tried to do here. Where their contention is simply that *there is no* evidence of recklessness, requiring them to support that contention by citing particular parts of the record would be unproductive.

Plaintiffs in response have not attempted to identify evidence of willful, wanton or reckless conduct on the part of Defendant. So they have failed to make a sufficient showing as to any claim against Defendant for punitive damages. Defendant is therefore entitled to summary judgment on Plaintiffs' claim for punitive damages.

## IV. CONCLUSION

For the foregoing reasons, Defendant's first motion for summary judgment, (Doc. 56), will be denied. Defendant's partial motion for summary judgment with respect to punitive damages, (Doc. 58), will be granted. Summary judgment will be granted in favor of Tunkhannock Compounding Center and against Plaintiffs as to Plaintiffs' claim for punitive damages only. An appropriate order follows.

_____
MALACHY E. MANNION
United States District Judge

**DATE: August 8, 2024**
23-806-03