UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W : | Civil No. 3:23-cv-00806-JFS |
| : | |
| Plaintiffs : | |
| : | |
| v. : | JURY TRIAL DEMANDED |
| : | |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center : | |
| : | |
| Defendants : | |

**PLAINTIFFS' BRIEF IN SUPPORT
OF THEIR MOTION *IN LIMINE* TO PRECLUDE DR. JOY GREENE'S
OPINION CONCERNING CAUSE, AND TO INSTRUCT THE JURY
CONCERNING THE STANDARD OF CARE FOR PHARMACISTS**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully submit this brief in support of their motion *in limine* to preclude part of the opinion of Dr. Joy Greene, and to instruct the jury concerning the standard of care governing pharmacists, and state as follows:

### I.    PROCEDURAL HISTORY

Plaintiffs filed the Complaint in this case on May 16, 2023. Two of the six counts named Defendant Youngs Apothecary, Inc., doing business as Tunkhannock Compounding Center ("TCC"): Count Five alleged negligence, and Count Six alleged loss of consortium. The case was initially assigned to Judge Mannion.

1

In August 2024, Judge Mannion ruled on two summary judgment motions filed by TCC, denying the more comprehensive motion because Plaintiffs had established a genuine dispute of material fact concerning whether TCC breached its duty to Ms. Wolking. *See* Doc. 62 at 11-18. The case was then transferred to this Court, which scheduled a trial to begin on April 28, 2025, and established March 28, 2025 as the deadline for motions *in limine* and jury instructions. *See* Doc. 71.

## II.   STATEMENT OF FACTS

This case involves the decisions of two TCC pharmacists – Brian Bryk and Courtney Young – to dispense massive quantities of prednisone and dexamethasone to Plaintiff Stacey Wolking ("Ms. Wolking"), which perforated her bowel, nearly caused her death, and inflicted the tremendous pain and suffering alleged in the Complaint.

TCC retained Dr. Joy Greene to opine about the conduct of TCC's pharmacists, which she did in a report dated May 17, 2024. *See* Ex. A. The report's "Opinions" section contains one sub-heading for "Duty," and another for "Cause." Under the "Cause" sub-heading, Dr. Greene wrote in pertinent part:

> Despite the lack of proper documentation, it is my opinion that TCC is not responsible for causing Ms. Wolking's injuries. . . . Federal law does not recognize pharmacists as healthcare providers, which restricts their ability to access and contribute effectively to a patient's health. Dr. Lindner diagnosed Ms. Wolking's condition and prescribed corticosteroid treatment to be filled at a pharmacy he trusted. Drs. Young and Byrk trusted Dr. Lindner's clinical judgment and dispensed the prescriptions under the understanding that Dr.

Lindner would oversee dosage adjustments. . . . Trusting in Dr. Lindner's expertise, Drs. Young and Byrk dispensed the medication as directed.

*Id*. at 5-6.

### III.   QUESTIONS PRESENTED

Should Dr. Greene's opinion that TCC did not cause Ms. Wolking's injuries be precluded, because it is inconsistent with a pharmacist's legal duty in Pennsylvania, and because it is not the product of reliable principles and methods?

**Suggested Answer**:          Yes.

Should the jury be instructed concerning the standard of care governing pharmacists in Pennsylvania, using the language of the *Riff* opinion?

**Suggested Answer:**          Yes.

### IV.   ARGUMENT

Dr. Greene's opinion that Lindner somehow cut the causal chain from TCC to Plaintiffs must be precluded because it would effectively misstate Pennsylvania law, and because it would violate Rule 702 of the Federal Rules of Civil Procedure. While the Court should preclude Dr. Greene's cause opinion, it should also instruct the jury about the pharmacist's legal duty in Pennsylvania.

### A. Dr. Greene may not testify that Lindner cut the causal chain from TCC to Plaintiffs.

Dr. Greene's causation opinion would misinform the jury about Pennsylvania law.  Four decades ago, the Superior Court rejected the same reasoning that Dr. Greene employs, when it held that "legal causation is established where a pharmacy

3

fails to exercise due diligence in its professional capacity and but for its failure to exercise due diligence the injuries to the plaintiffs would not have occurred." *Riff v. Morgan Pharmacy*, 508 A.2d 1247, 1249 (Pa. Super. Ct. 1986). Much like Dr. Greene does here, the pharmacy in *Riff* argued that the patient's injuries were caused by the doctor's prescription of the drug, and that the pharmacy's act of supplying it had no separate causal significance. *Id*.

The *Riff* Court rejected that argument because the pharmacy had an independent duty to the patient:

> The appellant would seem to argue that a pharmacy is no more than a warehouse for drugs . . . . Such is not the case. . . . In the instant case the pharmacy had a legal duty to exercise due care and diligence in the performance of its professional duties. . . . [The pharmacy] breached that duty by failing to warn the patient or notify the prescribing physician of the obvious inadequacies appearing on the face of the prescription. . . . But for this negligence the error would have been corrected and the injuries would not have occurred. Causation was established.

*Id*. at 1251-52 (emphasis in original).

In other words, *Riff* states that the law's imposition of a professional duty upon pharmacists means that legal causation can run from a pharmacist's breach of the duty directly to a patient's injuries, because in situations where a pharmacist could have intercepted any negligence by the physician, he must do so. Here, Dr. Greene's opinion is effectively the opposite: she concludes that the causal chain runs from Lindner to Plaintiffs only, despite the fact that the TCC pharmacists plainly had their own opportunity to intervene. She suggests that the pharmacists' reliance upon

4

Lindner somehow removes their influence, but *Riff* was clear that "[c]ausation does not require reliance." *Id.* at 1251. Dr. Greene's opinion is simply not consistent with Pennsylvania law.[1]

Dr. Greene's causation opinion is also unreliable under Federal Rule of Civil Procedure 702, which states that the opinion of an expert who is otherwise qualified must still be "the product of reliable principles and methods." While this Court enjoys wide latitude in making that determination, it is nonetheless appropriate for the court to ask whether the methodology employed by the expert is "generally accepted in the relevant . . . community." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999).

Neither Dr. Greene nor Defendants have offered any support for the notion that pharmacists are absolved from causing a patient's injuries simply because the pharmacists trusted the prescribing physician. On the contrary, Defendants have

---

[1] It also runs counter to the basic definition of proximate cause: "An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence that the act or failure to act played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission." 3 Fed. Jury Prac. & Instr. § 120:60 (7th ed.). TCC's act of dispensing the drugs in question clearly played a substantial part in Ms. Wolking's injuries, considering that there is no evidence Lindner could have dispensed the drugs himself, and in fact there is evidence that Lindner relied on TCC specifically in order to get the drugs to Stacey. *See* Ex. B.

cited *Riff* favorably throughout this litigation.[2] Dr. Greene did not make any reference to *Riff*, nor did she cite any professional literature or standards at all in the "Cause" section of her report. The fact that it is impossible to determine how Dr. Greene arrived at her opinion further demonstrates its unreliability. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

For these reasons, Dr. Greene's causation opinion would be unhelpful to the jury, it would provide them with an inaccurate view of the law, and it should be precluded.

**B. Jury Instruction**

Particularly in light of Dr. Greene's unfamiliarity with the standard of care applicable to pharmacists under Pennsylvania law, that standard of care should be the subject of its own jury instruction. "A trial judge has considerable discretion in choosing the language of an instruction so long as the substance of the relevant point is adequately expressed." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

---

[2] The report of Plaintiffs' expert, Dr. Carl Gainor, shows how difficult it would be for Dr. Greene to argue that the *Riff* opinion is not generally accepted. Gainor, who has taught pharmacy and law students in Pennsylvania for 40 years, continues to cite *Riff* and wrote that "There is no support in the professional literature or binding Pennsylvania case law that would contradict this duty." Ex. C at 5.

Here, there is no dispute that *Riff* accurately describes the standard of care governing pharmacists:

> A pharmacist is a professional. In the performance of his professional duties he will be held to the standard of care, skill, intelligence which ordinarily characterizes the profession. Public policy requires that pharmacists who prepare and dispense drugs and medicines for use in the human body must be held responsible for the failure to exercise the degree of care and vigilance commensurate with the harm which would be likely to result from relaxing it.

508 A.2d at 1251. The Court went on to explain that in the circumstances of that case, the pharmacy breached its duty "by failing to warn the patient or notify the prescribing physician of the obvious inadequacies appearing on the face of the prescription which created a substantial risk of serious harm to the plaintiff." *Id*. at 1252.

Both this Court and TCC have favorably cited *Riff*. *See* Doc. No. 62 at 6 (Judge Mannion's summary judgment decision); Doc. No. 56 at 8 (TCC's summary judgment brief). It would cause no prejudice to either party and it would help the jury understand the law. *Riff* is therefore a proper basis for a jury instruction.

## V. CONCLUSION

For the reasons stated herein, Dr. Greene's causation opinion should be precluded, and the jury should be instructed with the following language from Plaintiffs' Proposed Jury Instructions:

> A pharmacist is a professional. In the performance of their professional duties, pharmacists will be held to the standard of care, skill, intelligence

7

which ordinarily characterizes the profession. Pharmacists who prepare and dispense drugs and medicines for use in the human body are held responsible for the failure to exercise the degree of care and vigilance commensurate with the harm which would be likely to result from relaxing it.

One way that a pharmacist may breach the standard of care is by failing to warn a patient or notify the prescribing physician of obvious inadequacies on the face of a prescription, which created a substantial risk of serious harm to the patient.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: *Conor Lamb*
SHANIN SPECTER, ESQUIRE
PA Attorney I.D. No. 40928
CONOR LAMB, ESQUIRE
PA Attorney I.D. No. 304874
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 402-2359
Shanin.Specter@klinespecter.com
Conor.Lamb@klinespecter.com

Date: March 28, 2025