UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W | : | Civil No. 3:23-cv-00806-JFS |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center | : | |
| | : | |
| Defendants | : | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF CONSENT FORMS**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully submit this brief in support of their motion *in limine* seeking to preclude evidence that Stacey Wolking signed Dr. Henry Lindner's consent forms.

**I.    PROCEDURAL HISTORY**

Plaintiffs filed the Complaint in this case on May 16, 2023.  Two of the six counts named Defendant Youngs Apothecary, Inc., doing business as Tunkhannock Compounding Center ("TCC"): Count Five alleged negligence, and Count Six alleged loss of consortium.  The case was initially assigned to Judge Mannion.

In August 2024, Judge Mannion ruled on two summary judgment motions filed by TCC, denying the more comprehensive motion because Plaintiffs had

1

established a genuine dispute of material fact concerning whether TCC breached its duty to Ms. Wolking.  *See* Doc. 62 at 11-18.  The case was then transferred to this Court, which scheduled a trial to begin on April 28, 2025, and established March 28, 2025 as the deadline for motions *in limine* and jury instructions.  *See* Doc. 71.

## II.    STATEMENT OF FACTS

This case involves the decisions of two TCC pharmacists – Brian Bryk and Courtney Young – to dispense massive quantities of prednisone and dexamethasone to Plaintiff Stacey Wolking ("Ms. Wolking"), which perforated her bowel, nearly caused her death, and inflicted the tremendous pain and suffering alleged in the Complaint.

The drugs at issue were prescribed by Dr. Henry Lindner, who directed Ms. Wolking to take them because of the inflammatory effect of antimalarial drugs that Lindner had also prescribed.  Lindner prescribed the antimalarials after diagnosing Ms. Wolking with "chronic babesiosis," a condition he claims to have discovered.

During the time that Lindner treated Ms. Wolking, she signed two consent forms provided by his office.  Neither form mentions TCC.  The first was dated November 1, 2013, and was titled "Consent for Bioidentical Hormone Restoration and Nutritional Therapy."  *See* Ex. A.  Ms. Wolking signed this form approximately nine years before she was hospitalized with the injuries at issue in this case.  The second form is dated October 6, 2021, and is titled "Consent for Treatment of

Chronic Babesiosis." *See* Ex. B.  Ms. Wolking signed this form approximately one year before she was hospitalized.

### III.  QUESTIONS PRESENTED

Should the Court preclude any evidence of the consent forms?

**Suggested Answer**:          Yes.

### IV.  ARGUMENT

The consent forms should be precluded because TCC is not a party to them, and because a patient's consent is not relevant to a negligence claim.

The Court's examination of Exhibits A and B will reveal that TCC did not sign, and is not mentioned, in either form.  To the extent that these forms demonstrate any sort of agreement or knowledge, it is not an agreement or knowledge about anything that TCC did to Stacey.  For example, the forms do not mention anything about the massive quantity of corticosteroids that TCC dispensed to Stacey, or the short timespan in which they did so.  There is simply no evidence in these forms of any material facts related to TCC's conduct.

As a matter of law, the forms are irrelevant to Stacey's negligence claim against TCC.  Cases in which such forms are relevant generally involve claims of battery, not negligence.  As the Supreme Court of Pennsylvania has held, "assent to treatment does not amount to consent to negligence, regardless of the enumerated risks and complications of which the patient was made aware." *Brady v. Urbas*, 111

A.3d 1155, 1162 (Pa. 2015). Accordingly, where there is no claim alleging battery or lack of informed consent, such evidence must be excluded. *Id.* at 1163; *see also Mitchell v. Shikora*, 209 A.3d 307, 315 (Pa. 2019) ("[A]dmitting evidence that a patient is informed of certain risks in a pure negligence action can erroneously suggest to the jury that the patient has consented to negligence.").

## V.  CONCLUSION

For the reasons explained herein, evidence of the consent forms is irrelevant and would be unfairly prejudicial to the Wolkings, and no evidence related to these forms should be admitted.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: *Conor Lamb*
_____
SHANIN SPECTER, ESQUIRE
PA Attorney I.D. No. 40928
CONOR LAMB, ESQUIRE
PA Attorney I.D. No. 304874
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 402-2359
Shanin.Specter@klinespecter.com
Conor.Lamb@klinespecter.com

Date: March 28, 2025