UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W | : | Civil No. 3:23-cv-00806-JFS |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center | : | |
| | : | |
| | : | |
| Defendants | : | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION *IN LIMINE* CONCERNING ADMISSIBILITY OF LINDNER'S PHARMACY EMAIL**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully submit this brief in support of their motion *in limine* seeking a ruling that Lindner's email concerning the pharmacies is admissible at trial.

**I.     PROCEDURAL HISTORY**

Plaintiffs filed the Complaint in this case on May 16, 2023. Two of the six counts named Defendant Youngs Apothecary, Inc., doing business as Tunkhannock Compounding Center ("TCC"): Count Five alleged negligence, and Count Six alleged loss of consortium. The case was initially assigned to Judge Mannion.

In August 2024, Judge Mannion ruled on two summary judgment motions filed by TCC, denying the more comprehensive motion because Plaintiffs had

1

established a genuine dispute of material fact concerning whether TCC breached its duty to Ms. Wolking.  *See* Doc. 62 at 11-18.  The case was then transferred to this Court, which scheduled a trial to begin on April 28, 2025, and established March 28, 2025 as the deadline for motions *in limine* and jury instructions.  *See* Doc. 71.

## II.    STATEMENT OF FACTS

This case involves the decisions of two TCC pharmacists – Brian Bryk and Courtney Young – to dispense massive quantities of prednisone and dexamethasone to Ms. Wolking, which perforated her bowel, nearly caused her death, and inflicted the tremendous pain and suffering alleged in the Complaint.

The drugs at issue were prescribed by Dr. Henry Lindner, who directed Ms. Wolking to take them in response to inflammation caused by antimalarial drugs that she was taking, also at Lindner's direction.  Lindner prescribed the antimalarials after diagnosing Ms. Wolking with babesiosis.  TCC did not dispense any antimalarials to Ms. Wolking.  TCC did, however, dispense the massive quantities of corticosteroids set forth below, even though corticosteroids are not recommended or approved for the treatment of babesiosis.

At times during Ms. Wolking's treatment by Lindner, she would complain about how poorly she felt, and he directed her to increase her doses of corticosteroids.  Ms. Wolking filled the corticosteroid prescriptions written by Lindner at both TCC and at a Harris Teeter chain pharmacy closer to her home.  On

August 15, 2022, Lindner instructed Ms. Wolking in an email to get her larger corticosteroid doses from TCC instead of Harris Teeter ("the local pharmacy"), because he feared that Harris Teeter would report him once the quantities reached a certain point:

> I want you to purchase some more 4mg Dex bottles from the Tunkhannock Cmpd. Ctr. If we get anymore from the local pharmacy they'll start asking questions and possibly complain to my medical board. Pharmacies and doctors do not know anything about chronic babesiosis or its treatment. You won't use insurance with the TCC. I've sent them a prescription for 2 bottles of the 100ea of the 4mgs tabs. Give them a call to arrange payment and shipping.

Ex. A. at 2.  This email is the subject of the present motion.

Ms. Wolking did what Lindner asked and obtained most of her larger doses of corticosteroids from TCC during this period.

### III.   QUESTIONS PRESENTED

Should the Court rule that the Lindner email quoted above is admissible at trial, as a business record under Rule 803(6), or as non-hearsay relevant to its effect on Ms. Wolking?

**Suggested Answer**:         Yes.

### IV.   ARGUMENT

The email quoted above is admissible on two grounds.  First, the email is a business record.  Under Federal Rule of Evidence 803(6), a document is not excluded by the rule against hearsay if it is a record of an act, event, condition, opinion, or diagnosis, and (A) it was made at the time by someone with knowledge, (B) it was

kept in the course of a regularly conducted activity, and (C) making the record was a regular practice of that activity. Under subsection (D), these requirements may be proven by a certification that complies with Rule 902(11), which states that such a certification may be provided by a "custodian or another qualified person." Plaintiffs have provided such a certification signed by Carol Kelly, attached as Exhibit B, which complies with these rules.

Alternatively, the email is subject to the rule against hearsay at all, because it has an additional purpose beyond the truth of the matter asserted. *See* Fed. R. Ev. 801(c)(2). Instead, the email is relevant to show its effect on Ms. Wolking. *See Glover v. Coleman*, No. 3:CV-14-1800, 2017 WL 3276380, at *7 (M.D. Pa. Aug. 1, 2017) ("Testimony offered for the purpose of showing its effect on the listener is a non-hearsay use and therefore admissible."). Specifically, the email explains why Ms. Wolking would have filled so many large prescriptions at an out-of-state pharmacy far from her home. The jury will need to know that she did it because Lindner told her too, not because she had some other purpose of her own. This fact is particularly significant in light of TCC's anticipated claim of contributory negligence.

## V. CONCLUSION

For both reasons explained above, the Lindner email in Exhibit A should be admitted at trial.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: *Conor Lamb*
SHANIN SPECTER, ESQUIRE
PA Attorney I.D. No. 40928
CONOR LAMB, ESQUIRE
PA Attorney I.D. No. 304874
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 402-2359
Shanin.Specter@klinespecter.com
Conor.Lamb@klinespecter.com

Date: March 28, 2025