IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and<br>DARYL WOLKING, W/H<br><br>Plaintiffs,<br><br>v.<br><br>HENRY LINDER, M.D., and<br>YOUNGS APOTHECARY, INC.<br>d/b/a TUNKHANNOCK<br>COMPOUNDING CENTER<br><br>Defendants. | CIVIL ACTION<br>3:23-cv-00806-JFS<br><br><br><br><br>**TRIAL BRIEF OF CRITICAL<br>LEGAL ISSUES OF<br>DEFENADNT, YOUNGS<br>APOTHECARY, INC. d/b/a<br>TUNKHANNOCK<br>COMPOUNDING CENTER** |

Defendant, Youngs Apothecary, Inc. ("Youngs") d/b/a Tunkhannock Compounding Center ("TCC") (collectively as a defendant, "Tunkhannock"), by and through its attorneys, McCormick & Priore, P.C., hereby submits this Trial Brief of Critical Legal Issues in accordance with the Court's Pre-trial Order of October 10, 2024 (Dkt. 71), as follows:

I. **FACTUAL HISTORY**

This action concerns claims for damages by plaintiffs, Stacey Wolking ("Ms. Wolking") and Darly Wolking ("Mr. Wolking"), husband and wife (collectively, the "Wolkings" or "plaintiffs"), from Ms. Wolking's alleged treatment by defendant, Henry Linder, M.D. ("Dr. Linder"), in 2022 for what Dr. Lindner diagnosed as "chronic babesiosis." (Dkt. 1 at ¶¶ 9-77) Plaintiffs have

maintained that, at the direction of Dr. Linder, Ms. Wolking consumed large amounts of steroids in August-October 2022 that were prescribed by Dr. Linder and dispensed by several pharmacies, but that her damages were caused by the steroids dispensed by TCC. (Dkt. 1 at ¶ 74) Plaintiffs allege that, in filling Ms. Wolking's prescriptions according to Dr. Linder's instructions, Tunkhannock was negligent because it "failed to exercise due diligence in its professional capacity by failing to contact the prescribing physician, Dr. Lindner, to inquire about the unreasonably high doses of corticosteroids prescribed, and/or failing to take steps to correct any error by the prescribing physician, and/or by failing to refuse to fill the prescriptions for corticosteroids in the unreasonably high doses ordered by Dr. Lindner," thus causing plaintiffs' damages. (Dkt. 1 at ¶ 98-101)

     By way of further background, Ms. Wolking testified that a tick bit her in 2008, and she treated for one year thereafter for Lyme disease with a homeopathic doctor, and her symptoms resolved. Beginning in 2013, Ms. Wolking began hormone replacement therapy and telemedicine treatment with Dr. Linder for menopausal symptoms. In January 2022, based on a telephone consultation, Dr. Lindner determined that her continued symptoms were now unrelated to her hormone replacement therapy, and he diagnosed Ms. Wolking with "chronic babesiosis," a tick-borne illness heretofore unrecognized in humans. Ms. Wolking began a substantial regimen of anti-malarial, anti-biotic, and steroid consumption

to "kill" the babesia. Beginning in August 2022, Ms. Wolking had several steroid prescriptions, only, filled by TCC, while also having her other anti-malarial, antibiotic, and other and similar steroid prescriptions simultaneously filled and dispensed by other pharmacies such as Harris-Teeter and Wal-Mart nearer to her residence in northern Virginia. According to emails between Mr. Wolking and Dr. Linder, during late August through early October 2022, Ms. Wolking was taking hundreds, and even thousands, of milligrams of Prednisone and/or Prednisone-equivalent steroids according to Dr. Linder's instructions regarding the treatment of her "chronic babesiosis."

The dosage taken by Ms. Wolking varied, and it was determined on an *ad hoc* basis by Dr. Lindner and Ms. Wolking, in consultation with each other; if she felt better, they would taper the dosage down, and if she did not feel any better or felt worse, they would increase the dosage. Ms. Wolking testified that she was hospitalized on October 7, 2022, and underwent emergency gastrointestinal surgery for an intestinal perforation and an (col)ostomy. According to plaintiffs, Ms. Wolking's surgeon(s) concluded that the high quantity of steroids she was taking according to Dr. Lindner's instructions from late August through early October 2022 are what caused her perforation.

Courtney Young ("Ms. Young"), principal of Youngs and owner of TCC, testified that TCC, a compounding pharmacy center that specializes in

3

compounding hormone replacement therapy treatments, filled four (4) of Ms. Wolking's corticosteroid prescriptions, having been made aware of Ms. Wolking's treatment plan and diagnosis by Dr. Lindner. Ms. Young and the other TCC pharmacist consulted each other, reviewed the package inserts,[1] likely conducted further research, and would have offered Ms. Wolking standard counseling before dispensing the medication. While the Tunkhannock pharmacists could not specifically recall specific conversations with Dr. Lindner about Ms. Wolking's prescriptions, Ms. Young specifically recalls consulting with Dr. Lindner about his treatment plan regarding his "chronic babesiosis" diagnosis as it related specifically to Ms. Wolking prior to TCC dispensing its first of only four corticosteroid prescriptions on August 8, 2022, which were to be taken in accordance with both Dr. Lindner's directions as instructed on the prescriptions and a pharmacist's duty to the patient to dispense the prescription as ordered by the treating physician, for a disease that does not have an FDA steroid indication.

## II.   LEGAL ISSUES

Tunkhannock incorporates by reference the issues raised in its Affirmative

---

[1] Patient package inserts ("PPI") are, according to the Food and Drug Administration ("FDA"), patient labeling that can be part of the FDA-approved prescription drug labeling. PPIs for most prescription drugs are submitted to the FDA voluntarily by the manufacturer and approved by the FDA, but their distribution is not mandated. PPIs include details and directions that health care providers need to prescribe a drug properly, including approved uses for the drug, contraindications, potential adverse reactions, available formulations and dosage, and how to administer the drug. *See*, *e.g.*, https://www.fda.gov/drugs/fdas-labeling-resources-human-prescription-drugs/patient-labeling-resources.

Defenses, Motion for Summary Judgment, Motions to Preclude plaintiffs' experts pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell-Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1998), issued raised in its Motions *in Limine*, as well as in its proposed non-stipulated jury instructions.

### A.   DUTY AND BREACH OF DUTY

Tunkhannock's position remains that it did not owe the duty to plaintiffs that plaintiffs allege that it did. In Pennsylvania, the practice of pharmacy is regulated in this Commonwealth by the Pennsylvania Pharmacy Act. *See 63* P.S. §§ 390–1 et seq. (the "Pharmacy Act"). A pharmacist's duty is to remedy inadequacies on the face of a physician's prescriptions. *Forish v. Paul*, 2 Pa. D. & C. 4th 413, 416–17 (Comm. Pl. Erie Co. 1989). A pharmacist must also be accurate in the actual process of preparing and dispensing a medication pursuant to the orders of the physician. *Id.*[2] A pharmacy does **_not_** have a duty to monitor the use of a prescription by a patient. *Gabriel v. Giant Eagle, Inc.,* 124 F. Supp. 3d 550, 553 (W.D. Pa. 2015), citing *Forish*, 2 Pa. D. & C. 4th at 41. Further, a pharmacist does not have a duty 1) to be familiar with the patient's medical history and/or medical records; 2) to warn of all possible contraindications; 3) to advise and consult with

---

[2]   A breach of the duty would be where the pharmacist misreads a prescription; mislabels the prescription; improperly compounds a medication; dispenses an incorrect dosage (in strength or quantity); uses improper methods for dispensing medication; fails to ensure that the drug is pure and unadulterated in form upon sale; and fails to attach the proper contraindication warnings as per the doctor's instructions.

5

the patient's treating physician (barring an inadequacy apparent on the face of the prescription); or to monitor the patient's use of the prescriptions via patient profiles or records. *Forish*, 2 Pa. D. & C. 4th at 417.

### B. CAUSATION

Plaintiffs allege that Tunkhannock's dispensing of four (4) orders prescribed by Dr. Lindner caused Ms. Wolking's injuries. However, plaintiffs' experts offer nebulous conclusions on this issue, as their conclusions that steroids caused Ms. Wolking's injury is mere conjecture. More importantly, assuming *arguendo* steroids caused Ms. Wolking's injury, plaintiffs are unable to identify what specific steroids caused Ms. Wolking's injury, because she was taking ever increasing amounts of steroids dispensed by other pharmacies before she took any that were dispensed by Tunkhannock, and she had similar-sized quantities of similar steroids filled by other pharmacies simultaneously as those at Tunkhannock.

### IV. CONCLUSIUON

Tunkhannock hereby incorporates by reference its pre-trial filings as though set forth at length herein. It also reserves the right to amend its trial brief regarding critical legal issues up to the time of trial.

Respectfully submitted,

By: */s/ Conrad James Benedetto*
    Philip D. Priore, Esquire
    Attorney ID: 38987
    Conrad James Benedetto, Esquire

Attorney ID: 312404
Susan C. Keesler, Esquire
Attorney ID: 312977
**MCCORMICK & PRIORE, P.C.**
2 Commerce Square
2001 Market Street, Suite 3810
Philadelphia, PA 19103
(T) 215-972-0161
(F) 215-972-5580
ppriore@mccormickpriore.com
cbenedetto@mccormickpriore.com
Attorneys for Defendant,
Youngs Apothecary, Inc. d/b/a
Tunkhannock Compounding Center

Date: March 28, 2025