UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W : | Civil No. 3:23-cv-00806-JFS |
| Plaintiffs : | |
| v. : | JURY TRIAL DEMANDED |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center : | |
| Defendants : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO PRECLUDE THOMAS JOHNS**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully submit this brief in opposition to the defense motion to preclude Dr. Thomas Johns, an expert pharmacist retained by Plaintiffs.

I.  **HISTORY OF THE CASE**

The upcoming trial of this case will involve one claim of negligence, and one claim of loss of consortium. In August 2024, Judge Mannion found that Plaintiffs had established a genuine dispute of material fact concerning whether Defendant Youngs Apothecary ("TCC") breached its duty. *See* Doc. 62 at 11-18. The case was then transferred to this Court, which has scheduled a trial to begin on April 30, 2025.

1

## II. QUESTIONS INVOLVED

Should Dr. Johns be precluded from testifying at trial?

**Suggested Answer:** No.

## III. COUNTER STATEMENT OF FACTS

TCC is a compounding pharmacy located in the small town of Tunkhannock, Pennsylvania. It is not disputed, however, that the same standards of practice apply both to TCC's pharmacists and to pharmacists at more familiar retail pharmacies.[1] *Compare* Ex. C to Def. Mot. at 1 (opinion of Plaintiffs' expert Dr. Johns that "the duty of a pharmacist in a variety of practice locations, including corporate retail pharmacies such as CVS . . . [and] compounding pharmacies, and hospital pharmacies. . . . regardless of the practice location, is the same."); *with* Ex. A (opinion of TCC's expert that the pharmacist's duty is the same at both compounding pharmacies and retail pharmacies like CVS).

This case involves the decisions of two TCC pharmacists – Brian Bryk and Courtney Young – to dispense massive quantities of prednisone and dexamethasone

---

[1] TCC's claim that "Dr. Johns could not testify as to whether, in Pennsylvania, there are different standards between compounding centers, such as TCC, and retail pharmacies, such as Harris-Teeter or Wal-Mart, in the dispensing of medication" does not accurately reflect Dr. Johns's testimony. *See* Def. Mot. at 12. In reality, the two citations above show that the experts on both sides of this case have opined that the standard of care for pharmacists is the same. The defense motion's claim to the contrary is based on part of the deposition where Dr. Johns was discussing standards with respect to *compounding*, not with respect to the off-the-shelf drugs at issue in this case. *See* Ex. B to Def. Mot. at 33:13-22.

to Stacey, which perforated her bowel, nearly caused her death, and inflicted the tremendous pain and suffering alleged in the Complaint.

Plaintiffs retained two pharmacy experts, one of whom is Dr. Thomas Johns, the subject of the present motion. Dr. Johns received his Doctor of Pharmacy degree from the University of Florida in 1992, and he was a resident in Adult Internal Medicine at the University of Florida College of Pharmacy and the VA Medical Center from 1992-93. *See* Ex. A to Def. Mot. at 8. After his residency, Dr. Johns worked as a pharmacist for six years, both in Florida hospitals and as a member of the U.S. Army Reserve. *Id.* at 9. He is still a licensed pharmacist. *Id*. at 8.

To the extent that the defense motion implies that Dr. Johns's leadership positions at the University of Florida Health Shands Hospital have drawn him away from the practice of pharmacy, that implication is not accurate. All of Dr. Johns's positions have involved directing and overseeing the operation of the hospital's pharmacy, and most of his positions have had the word "pharmacy" in their title. *Id*. at 8-9. His current position also involves oversight of four outpatient pharmacies, which are located both within the hospital and in the community of Gainesville. *See* Ex. B. to Def. Mot. at 14, 23. Even while serving in these leadership positions, Dr. Johns received the "Pharmacist of the Year" award, and he has continued to publish on the subject of preventing adverse drug events (precisely what TCC failed to prevent in this case). *See* Ex. A to Def. Mot. at 9-10.

3

At his deposition, Dr. Johns explained that he continues to care for individual patients by looking at their charts and verifying medication orders, which results in the hospital's pharmacy dispensing drugs to those patients. *See* Ex. B to Def. Mot. at 9. Even though Dr. Johns is not required to do this, he testified, "I think it's important that most pharmacists maintain their skill sets." *Id*. at 10. He also explained that he has served as an expert witness about 30 times, in depositions and at trial, and he has never been disqualified. *Id*. at 35-36.

### IV. ARGUMENT

Dr. Johns's testimony is admissible under Federal Rule of Evidence 702. The Third Circuit has "explained that Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Each of these factors weighs in favor of Dr. Johns's testimony.

**1. Dr. Johns is qualified as an expert pharmacist.**

Dr. Johns's education and work experience provide more than enough expertise for him to testify in this case. Rule 702's first requirement is "that a witness proffered to testify to specialized knowledge must be an expert." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). The Third Circuit has "interpreted this requirement liberally," and has "eschewed imposing overly rigorous requirements of expertise." *Id*. Instead, "a broad range of knowledge, skills, and

4

training qualify." *Id*. In *Paoli*, the Third Circuit overruled a district court that excluded expert testimony by witnesses with PhD degrees in pathology, microbiology, and physics, simply because the district court appeared to believe that more specific training or experience would be appropriate. *Id*. The Third Circuit, however, made clear such hair-splitting judgments about degrees of expertise should go to the weight, not the admissibility, of the testimony. *Id*.

Here, the facts discussed above about Dr. Johns's education, clinical pharmacy experience, pharmacy leadership, publication, and awards all demonstrate that he possesses more than the "generalized qualifications" required under *Paoli* and Rule 702. *Id*. He has overseen and led multiple pharmacies for years, because he is an expert in pharmacists' decision-making. His appointment to pharmacy leadership positions, combined with his publication of articles about how pharmacists can help patients avoid adverse drug events – far from detracting from his qualifications – reflect the strength of his qualifications under Rule 702. In a similar case within this circuit where a clinical pharmacist moved into leadership positions outside of the immediate clinical setting, the court had no trouble recognizing that the proffered expert was qualified. *See In re: Tylenol (Acetaminophen) Mktg., Sales Pracs., &*

*Prods. Liab. Litig.*, No. 2436, 2016 WL 4039286, at *4 (E.D. Pa. July 28, 2016).[2] The Court should reach the same result here.

The defense motion makes several other scattered claims with respect to Dr. Johns's qualifications. With respect to the percentage of Dr. Johns's time spent directly verifying medication orders, the expertise of a witness under Rule 702 is relevant to the extent that it is "helpful" to the lay people on the jury. *Paoli*, 35 F.3d 744; *id.* at 741 (noting that Rule 702's liberal policy of admissibility extends beyond formal qualifications to the substance of the expert's qualifications); Fed. R. Evid. 702(a) (specifying that the witness's expertise must "help the trier of fact"). Lay people do not spend any percentage of their time verifying medication orders, as Dr. Johns formerly did full-time, and still continues to do. It would be helpful for him to explain to the jury what he learned during all of that time.

With respect to Dr. Johns's knowledge about corticosteroids, his expertise is plainly demonstrated by his deposition testimony, and by his report. For example, he wrote that "The normal doses for corticosteroids are listed in common reference materials and easy for any pharmacist to find." Ex. A to Def. Mot. at 6. He also described the process pharmacists use to look up information on specific drugs, and to review the appropriateness of any drug dosage for an individual patient. *Id.* at 3-

---

[2] There, the defendants also argued that the expert's experience with the particular drug in question was not extensive enough, but that argument was rejected. *See id.* at *4 n.11.

6. He can easily provide additional foundational testimony at trial about his experience with corticosteroids.

With respect to therapeutic duplication and "an exact dose of steroids that would lead to a withdrawal," Def. Mot. at 11, these issues have nothing to do with Dr. Johns's qualifications, and everything to do with his opinion. *See, e.g.*, Ex. B to Def. Mot. at 93-94 ("There isn't an exact dose. What is thought is that anything above a physiological equivalent could result in withdrawal symptoms."). The same is true for the defense claims that "Dr. Johns does not know whether steroids can be used to treat chronic babesiosis," Def. Mot. at 13, and that "Dr. Johns could not say what the daily maximum dose of steroids would be for Ms. Wolking." *Id*. at 14. Dr. Johns testified that corticosteroids should not be used at all to treat babesiosis, an infectious disease. *See* Ex. B to Def. Mot. at 105. He also wrote that chronic babesiosis is not a diagnosis recognized by mainstream medicine. *See* Ex. C to Def. Mot. at 2. These are statements of opinion that do not reflect an absence of expertise, but instead an expert's familiarity with the basic precepts of mainstream medicine.

The issue of drug utilization review raised by the defense motion is also relevant to the persuasiveness of Dr. Johns's opinion, but not to his qualifications. He clearly explained what a drug utilization review is, and TCC does not appear to question that. *See* Ex. B to Def. Mot. at 49-50. He then testified that Courtney Young's drug utilization review was inadequate because she should have identified

7

that prednisone and dexamethasone were therapeutically duplicative. *Id*. at 91. While TCC may argue that point in front of the jury, there is nothing inadmissible about it.

Finally, to the extent that TCC's motion suggests that Dr. Johns is not familiar enough with Pennsylvania's pharmacy practices, his report refers to both the Pennsylvania drug utilization review statute, as well as the Pennsylvania Superior Court's decision in *Riff v. Morgan Pharmacy*, 508 A.2d 1247 (Pa. Super. Ct. 1986). *See* Ex. A to Def. Mot. at 1, 3. He also testified that, with respect to the standard of care for a drug utilization review, "it's pretty clear in Pennsylvania Board of Pharmacy regs exactly what's required." Ex. B to Def. Mot. at 127. Dr. Johns has thus adequately demonstrated enough familiarity with Pennsylvania practices. *Cf. United States v. Ridley's Fam. Markets, Inc.*, No. 1:20-CV-173-TS-JCB, 2025 WL 253277, at *2 (D. Utah Jan. 21, 2025) (rejecting argument that out-of-state pharmacy professor could not testify after reviewing specific in-state materials).

For all of these reasons, TCC's motion should be denied with respect to Dr. Johns's qualifications.

**2. Dr. Johns's testimony is reliable.**

Dr. Johns's testimony is reliable because it is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Paoli*, 35 F.3d at 742 (quotation marks and citation omitted). In his report, Dr. Johns

cited scientific knowledge about the properties of corticosteroids and referred to the findings of the Infectious Diseases Society of America, the CDC, and the FDA. *See* Ex. A to Def. Mot. at 4-6. He described the drug utilization review process as a scientific procedure in which pharmacists must make decisions based upon the properties of specific drugs and allergies. *Id*. at 3. His opinion was that TCC's pharmacists failed to perform a sufficient scientific investigation of the risks posed by the corticosteroids in this case. *Id*. at 6. In his supplemental report, Dr. Johns further demonstrated the scientific basis of his testimony when he wrote that "[a] fundamental tenet of the pharmacy profession is to follow evidence-based medicine practices," which is particularly important in a case where the defendant dispensed drugs for a condition that is not recognized by mainstream medicine. Ex. C to Def. Mot. at 2.

    TCC's arguments concerning reliability mostly restate its earlier points about Dr. Johns's qualifications, or they attack the substance of Dr. Johns's opinion as opposed to its reliability. For example, Dr. Johns's opinion that the FDA-recommended initial dose of prednisone "provides a useful benchmark when it comes to evaluating the reasonableness of the prescription," Ex. C to Def. Mot. at 1, is plainly rooted in his clinical and academic experience. *See* Ex. B to Def. Mot. at 65 ("I can certainly tell you that pharmacy school curriculum contains coursework relative to the therapeutic application of drugs exactly as you're describing, what is

9

the appropriate drug at the appropriate dose for given disease states. Not only does that happen in pharmacy school, I've taught that in pharmacy school.").

To the extent that the defense motion attacks the reliability of Dr. Johns's opinion because it refers to "reasonableness," it is worth emphasizing that this is a negligence case, and in the governing opinion (*Riff*), the Superior Court described how experts established what was "reasonable" for pharmacists to do. *See* 508 A.2d at 1253 ("Expert testimony established that the 'reasonable pharmacist' has an affirmative duty to read the prescription and to be aware of patent inadequacies in the instructions as to maximum safe dosage of known toxic drugs and medicines."). Given Dr. Johns's extensive pharmacy experience, his thorough review of the evidence, and his reliance on scientific knowledge from multiple sources, his opinion as to what was reasonable here is reliable and will be helpful to the jury.

**3. Dr. Johns's testimony fits this case.**

Dr. Johns's testimony fits this case and would help the jury decide whether TCC's pharmacists were negligent. The defense motion does not appear to specifically address the issue of "fit," which the Third Circuit described as testimony that is "sufficiently tied to the facts of the case." *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025) (quotation marks and citations omitted). Dr. Johns's reports and deposition testimony focus entirely on the decisions of TCC's pharmacists, and they

demonstrate that he evaluated those decisions using his academic and clinical experience.

To the extent that TCC points to the different clinical settings where Dr. Johns and TCC's pharmacists practice, TCC has provided nothing to show that those different settings have any legal significance under Rule 702. As noted above, TCC's own expert wrote that the standards applicable to pharmacists are the same in every setting, which matched Dr. Johns's opinion. *See* Ex. C to Def. Mot. at 1 (opinion of Plaintiffs' expert Dr. Johns that "the duty of a pharmacist in a variety of practice locations, including corporate retail pharmacies such as CVS . . . [and] compounding pharmacies, and hospital pharmacies. . . . regardless of the practice location, is the same."); Ex. A (opinion of TCC's expert that the pharmacist's duty is the same at both compounding pharmacies and retail pharmacies like CVS). In addition, Dr. Johns's experience in a community pharmacy, *see* Ex. B to Def. Mot. at 22, in a deployed military environment, *id.* at 20-21, and academic work concerning small rural hospitals, *see* Ex. A to Def. Mot. at 10, all strengthen the connection between his expertise and the facts of this case. Accordingly, his testimony should be admitted.

## V. CONCLUSION

For all of the reasons explained herein, TCC's motion should be denied, and Dr. Johns should be permitted to testify at trial.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: *Conor Lamb*
SHANIN SPECTER, ESQUIRE
PA Attorney I.D. No. 40928
CONOR LAMB, ESQUIRE
PA Attorney I.D. No. 304874
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 402-2359
Shanin.Specter@klinespecter.com
Conor.Lamb@klinespecter.com

Date: April 4, 2025