UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W | : | Civil No. 3:23-cv-00806-JFS |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center | : | |
| | : | |
| Defendants | : | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE DR. AUWAERTER

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully submit this brief in opposition to the defense motion to preclude Dr. Paul Auwaerter, an expert in infectious diseases retained by Plaintiffs.

### I. HISTORY OF THE CASE

The upcoming trial of this case will involve one claim of negligence, and one claim of loss of consortium. In August 2024, Judge Mannion found that Plaintiffs had established a genuine dispute of material fact concerning whether Defendant Youngs Apothecary ("TCC") breached its duty. *See* Doc. 62 at 11-18. The case was then transferred to this Court, which has scheduled a trial to begin on April 30, 2025.

1

## II. QUESTIONS INVOLVED

Should Dr. Auwaerter be precluded from testifying at trial?

**Suggested Answer:** No.

## III. COUNTER STATEMENT OF FACTS

This case involves the decisions of two TCC pharmacists – Brian Bryk and Courtney Young – to dispense massive quantities of prednisone and dexamethasone to Stacey, which perforated her bowel, nearly caused her death, and inflicted the tremendous pain and suffering alleged in the Complaint.

The drugs at issue were prescribed by Dr. Henry Lindner, who directed Stacey to take them in response to inflammation caused by antimalarial drugs that she was taking, also at Lindner's direction. Lindner prescribed the antimalarials after diagnosing Stacey with babesiosis. TCC did not dispense any antimalarials to Stacey. TCC did, however, dispense the massive quantities of corticosteroids set forth in the Complaint, even though corticosteroids are not recommended or approved for the treatment of babesiosis. *See* Ex. A to Def. Mot. at 5 ("[H]ypothetically, if she were suffering from babesiosis, corticosteroids are contraindicated as they suppress the immune system and make infection more difficult to eradicate or worsen the illness. They have no role in the primary treatment of acute or persistent babesiosis.").

At times during Stacey's treatment by Lindner, she would complain about how poorly she felt, and he directed her to increase her doses of corticosteroids. Stacey did as Lindner asked, and got the majority of her corticosteroids from TCC in the months leading up to her hospitalization in October 2022.

Plaintiffs retained Dr. Paul Auwaerter, the subject of the present motion, to provide expert testimony about how babesiosis is supposed to be treated, and to opine whether the antimalarial medications that Lindner prescribed to Stacey – but which TCC did not dispense – played any role in causing her bowel perforation. TCC's expert blamed the bowel perforation on tafenoquine, but Dr. Auwaerter concluded that tafenoquine was not the cause. *See* Ex. C to Def. Mot. at 2.

While the defense motion does not directly attack Dr. Auwaerter's qualifications, it is worth noting that he is the Clinical Director of the Division of Infectious Diseases at Johns Hopkins University School of Medicine. He also served as an author of the national babesiosis treatment guidelines published by the Infectious Diseases Society of America. *See* Ex. A to Def. Mot. at 1.

The defense motion contains many inaccurate statements, some of which are worth addressing. The claim that Dr. Auwaerter testified that "there is, therefore, no maximum dose of steroids . . . during the course of treatment of . . . babesiosis," Def. Mot. at 10, is plainly not correct. Dr. Auwaerter testified that corticosteroids should not be used at all to treat babesiosis. *See* Ex. B to Def. Mot. at 87-88. He agreed

3

that the FDA did not establish a maximum corticosteroid dose for a separate, post-babesiosis condition, but quickly clarified that the condition is not babesiosis itself. *Id.*

To the extent that the defense motion implies that Dr. Auwaerter testified that he treated babesiosis patients in the same manner as Lindner, *see* Def. Mot. at 11, that is also not correct. Dr. Auwaerter described using medications in accordance with the national guidelines, which did not include the same doses or the tafenoquine that Lindner instructed Stacey to take. *See* Ex. B to Def. Mot. at 58-59. His testimony concerning longer treatment periods referred to patients who were immunocompromised, which Stacey was not. *Id*. at 59; Ex. A to Def. Mot. at 4.

Finally, the defense motion's claim that Dr. Auwaerter agreed that "the amount of steroids that Ms. Wolking filled at pharmacies that are not TCC were enough to allegedly cause her injuries" Def. Mot. at 12, is also not supported by the transcript. Dr. Auwaerter never rendered that opinion. At most, he said "I think so" to a question about whether the amount of corticosteroids from other pharmacies was large enough to, in theory, increase the "rate" of bowel perforations. Ex. B to Def. Mot. at 79. In context, this testimony is in response to a hypothetical question, and

the concept of "rate" is never defined. Dr. Auwaerter did not opine that drugs from another pharmacy were the actual cause of Stacey's bowel perforation.[1]

## IV. ARGUMENT

Dr. Auwaerter's testimony is admissible under Federal Rule of Evidence 702. "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Each of these factors weighs in favor of Dr. Auwaerter's testimony.

### 1. Dr. Auwaerter is qualified as an expert.

The defense motion does not directly attack Dr. Auwaerter's qualifications, perhaps because he is so well qualified. Rule 702's first requirement is "that a witness proffered to testify to specialized knowledge must be an expert." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). The Third Circuit has "interpreted this requirement liberally." *Id*.

A review of Dr. Auwaerter's CV, in Exhibit A to the defense motion, establishes that his knowledge, skills, and training are within the "broad range" of

---

[1] Relatedly, the defense claim that Dr. Auwaerter could not identify "which steroids from which pharmacy allegedly caused Ms. Wolking's injury," Def. Mot. at 12, suggests that he shared the defense premise that a bowel perforation can be traced to a single moment of ingesting corticosteroids. Dr. Auwaerter in fact testified that he believes the injury was caused by the cumulative effect of the corticosteroids. *See* Ex. B to Def. Mot. at 96 ("Well, certainly in the weeks to month or so preceding . . . . There could have been more cumulative effect over time. But it was prednisone and/or dexamethasone causing that.").

5

expertise required for this case. *Id.* He co-authored the national guidelines for treating the disease at issue in this case. *See* Ex. A to Def. Mot. at 1. His expertise has also been recognized by other courts. *See, e.g.*, *West v. Bayer HealthCare Pharms. Inc.*, 293 F. Supp. 3d 82, 96 (D.D.C. 2018) (denying defense motion to exclude Dr. Auwaerter). Accordingly, Dr. Auwaerter meets the first requirement.

**2. Dr. Auwaerter's testimony is reliable.**

Dr. Auwaerter's testimony is reliable because it is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Paoli*, 35 F.3d at 742 (quotation marks and citation omitted). In his report, Dr. Auwaerter explained that his knowledge of babesiosis stems in part from his role in publishing the national treatment guidelines, which involved "a rigorous review of the best available scientific evidence." Ex. A to Def. Mot. at 1. He went on to explain his opinions about Stacey's case by referring to the specific and objective diagnostic criteria for babesiosis. *Id.* at 4. In particular, he noted that he reviewed the laboratory testing in Stacey's medical record, but he found no evidence of babesiosis. *Id.* In his supplemental report, Dr. Auwaerter discussed the scientific properties of tafenoquine, including its half-life, the doses that were explored in early studies, and the potential for toxicity that was discussed in a cumulative review of medical studies. *See* Ex. C to Def. Mot. at 1-2. He further demonstrated his reliance

on scientific knowledge about the bowel, bone marrow, and corticosteroids. Dr. Auwaerter's opinions are plainly "based on the methods and procedures of science."

It is hard to discern, among the defense motion's long string of citations to the deposition transcript, what exactly TCC contends is unreliable. To the extent that the unreliability is supposed to be demonstrated in the paragraph beginning with "For example" on page 14, the claims of that paragraph are mostly inaccurate. Some are ridiculous, such as the claim that Dr. Auwaerter should be faulted for not knowing whether Stacey was taking NSAIDs, when the defense admits there is no evidence that she was taking NSAIDs. In any event, a brief review of Dr. Auwaerter's report shows that he did not "handwave" away the possibility that tafenoquine caused the bowel perforation, nor did he fail to "look into the actual cause of Ms. Wolking's injury." In fact, his reports show that he studied Stacey's medical records, including her laboratory results, and then analyzed scientific knowledge about the properties of tafenoquine and its potential toxicity, to see whether her injuries and labs matched what tafenoquine might do to a person. He reached the conclusion that they did not, which TCC is free to contest in front of the jury. There are no grounds, however, to preclude the jury from hearing his opinion.

**3. Dr. Auwaerter's testimony fits this case.**

The defense motion refers to the issue of "fit," but does not specifically address it. The Third Circuit has described "fit" as testimony that is "sufficiently

tied to the facts of the case." *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025) (quotation marks and citations omitted).  Dr. Auwaerter is a national leader in the treatment of the infectious disease that supposedly justified TCC's decisions here. He also prescribes corticosteroids regularly, and prescribes and studies the antimalarial medications, such as tafenoquine, that will be discussed at trial.  *See* Ex. C to Def. Mot.  Accordingly, his testimony fits the case and should be admitted.

## V.   CONCLUSION

For all of the reasons explained herein, TCC's motion should be denied.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: *Conor Lamb*
SHANIN SPECTER, ESQUIRE
PA Attorney I.D. No. 40928
CONOR LAMB, ESQUIRE
PA Attorney I.D. No. 304874
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 402-2359
Shanin.Specter@klinespecter.com
Conor.Lamb@klinespecter.com

Date: April 4, 2025

8