UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W | : : | Civil No. 3:23-cv-00806-JFS |
| Plaintiffs | : : | |
| v. | : : | JURY TRIAL DEMANDED |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center | : : : : | |
| Defendants | : : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* FOR BIFURCATION OF LIABILITY AND DAMAGES AT TRIAL**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully submit this brief in opposition to Defendant's motion to separate the liability and damages phases of the upcoming trial.

I.   **HISTORY OF THE CASE**

The upcoming trial of this case will involve one claim of negligence, and one claim of loss of consortium. In August 2024, Judge Mannion found that Plaintiffs had established a genuine dispute of material fact concerning whether Defendant Youngs Apothecary ("TCC") breached its duty. *See* Doc. 62 at 11-18. The case was then transferred to this Court, which has scheduled a trial to begin on April 30, 2025.

1

II.   **QUESTIONS INVOLVED**

Did TCC carry its burden to show that bifurcation of the upcoming trial into separate phases for liability and damages is warranted?

**Suggested Answer:**   No.

III.   **COUNTER STATEMENT OF FACTS**

This case involves the decisions of two TCC pharmacists – Brian Bryk and Courtney Young – to dispense massive quantities of prednisone and dexamethasone to Stacey, which perforated her bowel, nearly caused her death, and inflicted the tremendous pain and suffering alleged in the Complaint.

The drugs at issue were prescribed by Dr. Henry Lindner, who directed Stacey to take them in response to inflammation caused by antimalarial drugs that she was taking, also at Lindner's direction. Lindner prescribed the antimalarials after diagnosing Stacey with babesiosis. TCC did not dispense any antimalarials to Stacey. TCC did, however, dispense the massive quantities of corticosteroids described in the Complaint, even though corticosteroids are not recommended or approved for the treatment of babesiosis.

At times during Stacey's treatment by Lindner, she would complain about how poorly she felt, and he directed her to increase her doses of corticosteroids. Stacey filled the corticosteroid prescriptions written by Lindner at both TCC and at a Harris Teeter chain pharmacy closer to her home. On August 15, 2022, Lindner instructed Stacey in an email to get her larger corticosteroid doses from TCC instead of Harris

Teeter ("the local pharmacy"), because he feared that Harris Teeter would report him once the quantities reached a certain point:

> I want you to purchase some more 4mg Dex bottles from the Tunkhannock Cmpd. Ctr. If we get anymore from the local pharmacy they'll start asking questions and possibly complain to my medical board. Pharmacies and doctors do not know anything about chronic babesiosis or its treatment. You won't use insurance with the TCC. I've sent them a prescription for 2 bottles of the 100ea of the 4mgs tabs. Give them a call to arrange payment and shipping.

Ex. A. at 2.

Stacey did what Lindner asked and obtained most of her larger doses of corticosteroids from TCC during this period. She experienced extreme nausea, pain, weakness, difficulty sleeping, and uncertainty about her treatment throughout this period, as shown in Exhibits A and B to this brief.

### IV.   ARGUMENT

TCC's motion makes no effort to explain how any particular aspect of Stacey's injuries would prejudice TCC or unfairly influence the jury in any specific way. There are no exhibits to the motion, or arguments about any individual item of evidence, despite the fact that TCC is "the moving party who bears the burden of demonstrating that bifurcation is appropriate." *LM Gen. Ins. Co. v. Hartenfels*, No. 3:23-CV-00827, 2024 WL 3489851, at *2 (M.D. Pa. July 19, 2024) (citations omitted). TCC has not carried its burden here.

3

While the motion correctly notes that issues may be separated at trial "[f]or convenience, to avoid prejudice, or to expedite and economize" under Federal Rule of Civil Procedure 42(b), this Court has recognized the Third Circuit's guidance that "separation of issues for trial is not to be routinely granted." *See id.* (citing *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978)).  The Third Circuit recently reaffirmed this presumption, specifying in a personal injury case that "[b]ifurcating a trial into separate liability and damages sections is the exception, not the rule." *Sweigart v. Voyager Trucking Corp.*, No. 23-2397, 2024 WL 3565306, at *3 (3d Cir. July 29, 2024), *cert. denied sub nom. Patten v. Sweigart*, No. 24-585, 2025 WL 76499 (U.S. Jan. 13, 2025) (citations omitted).

This Court explained in *Hartenfels* that, "[i]n determining whether bifurcation is appropriate, the court must consider four factors: (1) whether the issues are significantly different from each other; (2) whether they require separate witnesses and documents; (3) whether the nonmoving party would be prejudiced by bifurcation; and (4) whether the [moving] party would be prejudiced if bifurcation is not granted." 2024 WL 3489851, at *2 (citing *Griffith v. Allstate Ins. Co.*, 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014)).

TCC's motion fails to discuss each of these factors, but together they demonstrate why bifurcation is unwarranted.

### 1. The issues are not significantly different.

The primary reason that the issues of liability and damages are not significantly different here is that, under the controlling case of *Riff v. Morgan Pharmacy*, part of the pharmacist's duty is to warn the patient or challenge the doctor when the face of the prescription reveals a "substantial risk of serious harm." 508 A.2d 1247, 1252 (Pa. Super. Ct. 1986). In other words, the question of liability depends upon the harm that the drugs can cause. Because the jury will need to hear evidence of these harms at the liability phase, it is neither efficient nor necessary to withhold evidence of the actual harm from them until a second phase.

In addition, TCC plans to argue that Stacey was contributorily negligent, which depends upon her state of mind as her corticosteroid doses increased. Evidence will show that during this period, the corticosteroids were already causing Stacey to suffer extreme pain and mental distress. *See e.g.* Ex. B ("I'm so weak I can barely get out of bed. Non-stop sweats and chills. Feet and hands and face are swollen. Everything hurts. Foggy blurry vision. . . . It's too much I'm dying. . . . Just day after day of hell."). In her weakened state, Lindner would tell her "you just need to take more." Ex. A at 2. Accordingly, this and other similar evidence is relevant to both damages as well as Stacey's lack of negligence. These issues are not different enough to warrant separating them at trial.

**2. There are overlapping documents and witnesses.**

It would be inefficient and unnecessary to separate the trial into two phases because there are multiple overlapping documents and witnesses. Exhibit A to this motion, for example, supports both liability and damages as described above, and it also informs Plaintiffs' pharmacy expert's opinion with respect to cause and damages. *See* Ex. C at 6. That same expert, however, will also testify concerning liability. Plaintiffs' other experts would also touch on both liability and causation, including (if they are both called) Drs. Mark Dershwitz and Jonathan Williams. *See* Ex. D at 2-4; Ex. E at 5-6. Each of these experts can testify about the "substantial risk of serious harm" element of liability, as well as whether the corticosteroids in fact caused Stacey's injuries. In addition to these experts, Plaintiffs themselves would testify to both issues, amounting to at least five witnesses who would be needed at both phases. This is not the type of case envisioned by Rule 42(b).

**3. Plaintiffs would be prejudiced.**

Because of the overlapping evidence, Plaintiffs' presentation at trial would be unnecessarily complicated by bifurcation. The Third Circuit has also acknowledged that the prejudice to personal injury plaintiffs is more than just procedural. *See Lis*, 579 F.2d at 824 ("[A]n equally impressive argument is . . . that in many cases, especially personal injury negligence cases, the separation might affect the outcome of the case."). This case is illustrative of the Third Circuit's concern: it will be

6

difficult for the jury to grasp why each prescription dispensed by TCC created a substantial risk of serious harm – and was thus a negligent act – unless they are educated about the seriousness of the injuries those drugs can cause. Discussion of the injuries will naturally raise questions in their minds about which injuries Ms. Wolking actually suffered. Evidence of Ms. Wolking's injuries can help the jurors achieve a practical understanding of how substantial a risk was at stake, and how serious the harm can be. It is one thing for an expert to explain that bowel perforations are serious; it is another for them to see pictures of Ms. Wolking's perforation, and the ostomy bag she was required to wear for six months. Plaintiffs deserve the opportunity to show all the relevant and admissible evidence to the jury, which is presumed to follow the Court's instructions about how to use that evidence.

### 4. TCC did not show any prejudice.

TCC bears the burden to show prejudice, but it did not identify a specific injury of Ms. Wolking's that would create unfair prejudice, much less explain how.[1] To grant TCC's boilerplate motion would effectively say that every personal injury trial should be bifurcated, which would "flip the presumption against bifurcation on

---

[1] To the extent that TCC relies on *Amidon v. Goodyear Tire & Rubber Co.*, No. 1:18-CV-02138, 2021 WL 7907072 (M.D. Pa. Sept. 2, 2021), as persuasive authority on the issue of prejudice, the prejudicial impact of punitive damages evidence is often viewed differently with respect to bifurcation. Here, Plaintiffs are not seeking punitive damages. Thus, like in *Amidon*, liability and compensatory damages should be dealt with a single proceeding.

its head." *Sweigart*, 2024 WL 3565306, at *3. Notably, the Third Circuit cautioned against that approach in a case involving even more graphic injuries. *Id*. at *1 ("Sweigart's injuries were horrific. One of the emergency room orthopedic surgeons who helped save Sweigart's life testified at trial that it was 'unquestionably the worst pelvic fracture that he had ever seen.'"). Even in that case, the district court's instruction was sufficient to cure any potential prejudice, as it would be here. TCC has not shown that this case should be decided differently than *Sweigart*.

V. **CONCLUSION**

For the reasons explained above, TCC has not carried its burden, and the Court should deny this motion.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: *Conor Lamb*
_____
SHANIN SPECTER, ESQUIRE
PA Attorney I.D. No. 40928
CONOR LAMB, ESQUIRE
PA Attorney I.D. No. 304874
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 402-2359
Shanin.Specter@klinespecter.com
Conor.Lamb@klinespecter.com

Date: April 4, 2025