UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W : | Civil No. 3:23-cv-00806-JFS |
| : | |
| Plaintiffs : | |
| : | |
| v. : | JURY TRIAL DEMANDED |
| : | |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center : | |
| : | |
| Defendants : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* CONCERNING "REPTILE THEORY"**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully submit this brief in opposition to Defendant's motion to preclude what it calls "reptile theory" arguments, questioning, and tactics.

**I.  HISTORY OF THE CASE**

The upcoming trial of this case will involve one claim of negligence, and one claim of loss of consortium.  In August 2024, Judge Mannion found that Plaintiffs had established a genuine dispute of material fact concerning whether Defendant Youngs Apothecary ("TCC") breached its duty.  *See* Doc. 62 at 11-18.  The case was then transferred to this Court, which has scheduled a trial to begin on April 30, 2025.

1

## II. QUESTIONS INVOLVED

Should the Court deny TCC's motion because it is non-specific, premature, and not directed toward inadmissible evidence?

**Suggested Answer:** Yes.

## III. COUNTER STATEMENT OF FACTS

This case involves the decisions of two TCC pharmacists – Brian Bryk and Courtney Young – to dispense massive quantities of prednisone and dexamethasone to Stacey, which perforated her bowel, nearly caused her death, and inflicted the tremendous pain and suffering alleged in the Complaint.

## IV. ARGUMENT

TCC's motion is not a proper motion *in limine* and should be denied. "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Guerrier*, 521 F. Supp. 3d 527, 531 (M.D. Pa. 2021) (quotation marks and citation omitted). The present motion, however, does not forecast or even discuss items of evidence in the case. Instead, it consists of unfounded speculation about how Plaintiffs' counsel might behave at trial. Plaintiffs' counsel is well aware of his obligation to make arguments based upon the evidence, not based upon prejudicial facts outside of the record. *See Hyrcza v. W. Penn Allegheny Health Sys., Inc.*, 978 A.2d 961, 977 (Pa. Super. Ct. 2009).

Courts in this district have denied similar motions for being premature and non-specific. *See Botey v. Green*, No. 3:12-CV-1520, 2017 WL 2485231, at *2 (M.D. Pa. June 8, 2017) ("Without proper context and having heard the specific question and/or testimony at issue, the Court is unable to determine whether that question and/or testimony is objectionable."); *R.D. v. Shohola, Inc.*, No. 3:16-CV-01056, 2019 WL 6134726, at *4 (M.D. Pa. Nov. 19, 2019). Outside of this district, other federal courts have done the same. *See, e.g.*, *Ansari v. Jimenez*, 678 F. Supp. 3d 926, 934 (E.D. Mich. 2023); *Belvin v. Electchester Mgmt., LLC*, 635 F. Supp. 3d 190, 204 (E.D.N.Y. 2022) (collecting cases); *Baxter v. Anderson*, 277 F. Supp. 3d 860, 863 (M.D. La. 2017) ("Defendants complain about amorphous and ill-defined concepts rather than specific evidence which they believe Plaintiff will introduce or arguments which they believe Plaintiff might make.").

Here, the only non-boilerplate section of TCC's motion refers to deposition questions that are not the product of a "reptile theory" – they are in fact raised by the Complaint and TCC's own defense of its case. The questions about unsafe levels of corticosteroids, for example, are directly related to the Complaint's primary allegation, which is that unsafe levels of corticosteroids caused Stacey's injuries.

3

Whether the defendant pharmacist understood what was safe and unsafe about corticosteroids is among the most obvious questions to ask.[1]

Moreover, TCC has defended the case throughout by arguing that "there is no maximum safe dosage, or upper limit, for the steroids." Doc. No. 56 at 8 (arguing for summary judgment). That is both a legal position and a factual belief of Courtney Young's. *See* Ex. A to Def. Mot. at 20 (showing testimony by Courtney Young that she believes there is no upper limit on corticosteroid dosing). Plaintiffs' experts, on the other hand, have opined that Young is incorrect, and her belief is evidence of her negligence. *See* Ex. A at 1 (showing opinion by Plaintiffs' expert that the notion of no upper limit "lack scientific merit or published evidence to support"); Ex. B at 4 ("By accepting the doctor's apparent belief that there is no upper limit on steroid dosing, the pharmacists at TCC failed to exercise their professional judgement, failed to investigate whether such doses were ever acceptable in a retail pharmacy setting,

---

[1] To the extent that TCC suggests asking about "unsafe" corticosteroid doses is impermissible or prejudicial without reference to a prescribing physician or "parameters on a diagnosis, patient age, prior conditions," Def. Mot. at 14, those comments simply restate a disagreement between the parties that the jury will have to decide. The questions of Plaintiffs' counsel reflect expert opinions in the record that the corticosteroid doses involved here created substantial risks and required extensive investigation, regardless of who the patient is. *See* Ex. A at 6 (referring to the prescriptions as "extremely high and potentially fatal"); Ex. B at 4 ("Doses of the magnitude dispensed by TCC would generally never be seen in a retail pharmacy because it is simply <u>not safe</u> for patients outside of a hospital setting to be consuming hundreds of milligrams of prednisone per day for any length of time.") (emphasis added).

and failed to protect their patient from the foreseeable harm that such doses could cause."). However the jury decides between Young and Plaintiffs' experts, the issue it will decide is rooted firmly in the record of the case. It has nothing to do with "the reptile theory."

The questions cited in TCC's motion about the CDC likewise have nothing to do with "the reptile theory." The CDC's guidance about babesiosis treatment is so well established – and publicly available on a government website – that Plaintiffs have asked the Court to take judicial notice of it. Ms. Young, however, never looked it up, and testified that she does not consider the CDC to be on "the cutting edge of information." Ex. A to Def. Mot. at 61. Questions demonstrating that Ms. Young ignored and questioned mainstream medical advice are relevant within even the narrowest possible understanding of this case, because the drugs at issue here are well understood by mainstream medicine, and Ms. Young is accused of dispensing them negligently. Her behavior was dangerous, but the questions cited in the defense motion relate only to the danger posed to Stacey Wolking.

As a final point, to the extent that TCC contends that any question or argument touching on safety is impermissibly "reptilian," that contention is inaccurate. Whether Stacey's safety was threatened by a "substantial risk of serious harm" is something Plaintiffs have to prove under *Riff v. Morgan Pharmacy*, 508 A.2d 1247, 1252 (Pa. Super. Ct. 1986). A court in this district denied a similar motion where

5

"evidence regarding safety rules and practices may be relevant to the questions of negligence that lie at the heart of this case." *Shohola*, 2019 WL 6134726, at *4.

Likewise, a broad range of federal courts have denied similar "reptile theory" motions that attempt to preclude arguments and evidence concerning safety. *See, e.g.*, *Smith v. Tabletops Unlimited Inc.*, No. 3:22-CV-00198-KGB, 2025 WL 675433, at *3 (E.D. Ark. Mar. 3, 2025) (denying "a motion to preclude so-called Reptile Theory evidence, testimony, and argument [that] would be unduly prejudicial to her ability to try her case, given that 'the discussion of legal requirements, rules, regulations, and safety are core to any discussion of liability in a tort claim'"); *Wadsworth v. Walmart Inc.*, No. 2:23-CV-118-KHR, 2025 WL 511095, at *10 (D. Wyo. Feb. 11, 2025) (denying motion because "Defendants cannot prevent Plaintiff from asking the jury to consider community safety standards and whether Defendants' conduct conformed to those standards"); *Ansari*, 678 F. Supp. 3d at 934 (denying motion where deposition questions cited by defense did not reveal any attempt to "show[ ] the jury that the [D]efendant's conduct represents a danger to the survival of the jurors and their families"); *McNally v. Riis*, No. 18-CV-1150 JLS (AGS), 2020 WL 209141, at *7 (S.D. Cal. Jan. 14, 2020) ("Defendant's request to preclude arguments concerning the 'reptile theory' and the sweeping range of categories related to public safety, however, are far too broad and nebulous to rule

on at this time."). There is nothing in TCC's motion that would warrant a different result here.

V.   CONCLUSION

For the reasons explained above, TCC's motion should be denied.

                                               Respectfully submitted,

                                               **KLINE & SPECTER, P.C.**

                          BY: *Conor Lamb*
                                   SHANIN SPECTER, ESQUIRE
                                   PA Attorney I.D. No. 40928
                                   CONOR LAMB, ESQUIRE
                                   PA Attorney I.D. No. 304874
                                   1525 Locust Street, 19th Floor
                                   Philadelphia, PA 19102
                                   Telephone: (215) 772-1000
                                   Facsimile: (215) 402-2359
                                   Shanin.Specter@klinespecter.com
                                   Conor.Lamb@klinespecter.com

Date: April 4, 2025