UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W : | Civil No. 3:23-cv-00806-JFS |
| Plaintiffs : | |
| v. : | JURY TRIAL DEMANDED |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center : | |
| Defendants : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION CONCERNING VALERIE LINDNER**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully submit this brief in opposition to the defense motion.

### I.   HISTORY OF THE CASE

The upcoming trial of this case will involve one claim of negligence, and one claim of loss of consortium. In discovery, Plaintiffs won access to evidence of TCC's prescriptions to other patients, including prescriptions filled by Valerie Lindner.

### II.   QUESTIONS INVOLVED

Should the defense motion be granted?

**Suggested Answer:**   No.

### III.   COUNTER STATEMENT OF FACTS

This case involves the decisions of two TCC pharmacists – Brian Bryk and Courtney Young – to dispense massive quantities of prednisone and dexamethasone to Stacey, which perforated her bowel, nearly caused her death, and inflicted the tremendous pain and suffering alleged in the Complaint.

The drugs at issue were prescribed by Dr. Henry Lindner, who directed Stacey to take them in response to inflammation caused by antimalarial drugs that she was taking, also at Lindner's direction.  TCC did not dispense any antimalarials to Stacey.

Lindner treated his daughter Valerie in a similar manner, and she later died while in his care.  Lindner wrote on his website that she took the equivalent of 21,000 mgs of prednisone each day, for three days, before she died.[1]  It is not clear where Valerie got those drugs, though she had filled prescriptions at TCC in previous years.

Courtney Young is the pharmacist-in-charge at TCC, and she believes that there is no upper limit on prednisone dosing.  *See* Ex. A at 20.  TCC's other pharmacist, Brian Bryk, does not remember being taught anything about limits to corticosteroid dosing.  *See* Ex. B.  Plaintiffs will contend at trial that these states of mind and lack of knowledge led directly to the decisions by TCC that injured Stacey. Accordingly, Plaintiffs will offer evidence that filling unusually large corticosteroid prescriptions was a common practice for TCC, since those prescriptions are evidence

---

[1] *See* https://www.hormonerestoration.com/chronic-babesiosis.html

of the pharmacists' state of mind, knowledge (or lack thereof), and belief. The evidence of these prescriptions was anonymized by TCC, except with respect to Valerie Lindner, so the evidence will show that Valerie Lindner was a TCC patient.

## IV. ARGUMENT AND CONCLUSION

Plaintiffs do not intend to introduce evidence of Valerie's death, but her earlier prescriptions, or Lindner's testimony, could open the door to that evidence. To the extent that TCC would challenge the relevance of Valerie's identity, Courtney Young testified that she learned about babesiosis and Lindner's treatment plan through conversations with him about Valerie. *See* Ex. A at 57. Accordingly, the Court should deny or delay ruling on the defense motion until trial.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: */s/ Conor Lamb*
SHANIN SPECTER, ESQUIRE
PA Attorney I.D. No. 40928
CONOR LAMB, ESQUIRE
PA Attorney I.D. No. 304874
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 402-2359
Shanin.Specter@klinespecter.com
Conor.Lamb@klinespecter.com

Date: April 4, 2025