UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY WOLKING and DARYL WOLKING, H/W | : : : | Civil No. 3:23-cv-00806-JFS |
| Plaintiffs | : : | |
| v. | : : | JURY TRIAL DEMANDED |
| HENRY LINDNER, M.D. and YOUNGS APOTHECARY, INC., d/b/a Tunkhannock Compounding Center | : : : : : | |
| Defendants | : | |

# **PLAINTIFFS' PRETRIAL MEMORANDUM**

Plaintiffs, Stacey and Daryl Wolking, by and through their undersigned counsel, respectfully submit this pretrial memorandum.

**A.  Jurisdiction:** This Court has jurisdiction based upon the diverse citizenship of the parties under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.

**B.  Summary Statement of Facts:** This case involves the decisions of two pharmacists employed by Youngs Apothecary ("TCC") – Brian Bryk and Courtney Young – to dispense massive quantities of prednisone and dexamethasone to Stacey, which perforated her bowel, nearly caused her death, and inflicted the tremendous pain and suffering alleged in the Complaint.

1

The drugs at issue were prescribed by Dr. Henry Lindner, who directed Stacey to take them in response to inflammation caused by antimalarial drugs that she was taking, also at Lindner's direction. Lindner prescribed the antimalarials after diagnosing Stacey with babesiosis. TCC did not dispense any antimalarials to Stacey. TCC did, however, dispense the massive quantities of corticosteroids set forth in the Complaint.

There is no objective evidence that Stacey was actually infected with babesiosis, but as one of Plaintiffs' experts wrote, "hypothetically, if she were suffering from babesiosis, corticosteroids are contraindicated as they suppress the immune system and make infection more difficult to eradicate or worsen the illness." Report of Dr. Paul Auwaerter at 5. The fact that corticosteroids "have no role in the primary treatment of acute or persistent babesiosis," *id*., is easily discoverable on the CDC website, in addition to various other public and free resources.

At times during Stacey's treatment by Lindner, she would complain about how poorly she felt, and he directed her to increase her doses of corticosteroids. On August 15, 2022, Lindner instructed Stacey to get her larger corticosteroid doses from TCC instead of Harris Teeter ("the local pharmacy"), because he feared that Harris Teeter would report him once the quantities reached a certain point. Stacey did what Lindner asked and obtained most of her larger doses of corticosteroids from TCC during this period.

**C.    Undisputed Facts:** It is undisputed that on the four dates alleged in the Complaint, Youngs Apothecary ("TCC") dispensed corticosteroids to Stacey in the amounts alleged, accompanied by the instructions provided by Dr. Lindner that are described in the Complaint. Brian Bryk was the TCC pharmacist who dispensed the drugs on the first, third, and fourth occasions, and Courtney Young did so on the second occasion.

**D.    Damages:**

1.    Stacey was rushed to the hospital on October 7, 2022, and was found to have bowel perforations. Among other conditions documented in her medical records, Stacey experienced hair loss, scarring, muscle loss, a hernia of the stomach after her ostomy reversal, Post-traumatic Stress Disorder, and severe emotional distress.

2.    She suffered enormously in the hospital for three weeks. After deciding not to end her life, she spent three more weeks in a rehabilitation hospital, and she wore an ostomy bag for approximately six months. She continues to undergo physical therapy to this day, related to the muscle weakness caused by the corticosteroids.

3.    Presently, Stacey experiences muscle weakness, less energy, overall reduced function, post-traumatic stress, bowel urgency, and mental and emotional distress as continuing effects of the steroid toxicity.

4. Past medical expenses were approximately $318,261.69.

5. Plaintiffs estimate the value of Stacey's pain and suffering at $10 million.

6. Daryl Wolking has a claim for loss of consortium.

**E.    Witnesses**

1. Plaintiff Stacey Wolking, 528 Dunning Lane, Chesapeake, VA.
2. Plaintiff Daryl Wolking, 528 Dunning Lane, Chesapeake, VA.
3. Matthew Wolking, 640 Boozy Creek Rd, Blountville, TN.
4. Alisa Wolking, 640 Boozy Creek Rd, Blountville, TN.
5. Holly Wheeler, 1211 Timberlake Court, Chesapeake, VA.
6. Abigail Shaw, 37907 Greenwood Farm Lane, Purcellville, VA.
7. Kim Vogel, 915 Dana Lane, Waukesha, WI.
8. Megan Albright, 6351 Salem Run Rd, Dover, PA.
9. Michael Underhill, 319 Moorefield Rd, Vienna, VA.
10. Courtney Young, 230 West Tioga Street, Tunkhannock, PA.
11. Brian Bryk, 230 West Tioga Street, Tunkhannock, PA.
12. Dr. Mark Dershwitz, Toxicologist. 55 N. Lake Ave, Worcester, MA.
13. Dr. Thomas Johns, Pharmacist. 1600 SW Archer Rd, Gainesville, FL.
14. Dr. Carl Gainor, Pharmacist. 6907 SE 12th Cir, Ocala, FL.
15. Dr. Jonathan Williams, Endocrinologist. 221 Longwood Ave, Boston, MA.
16. Dr. Paul Auwaerter, ID/Babesiosis. 1717 E Monument St, Baltimore, MD.

**F.    Summary of Expert Testimony**

1. Dr. Thomas Johns is an expert pharmacist who will testify consistently with his two reports, which have been attached to motions already filed. Specifically, he will explain that Courtney Young and Brian Bryk breached the standard of care for pharmacists when they dispensed the corticosteroid prescriptions described in the Complaint. His opinion is that these prescriptions were facially unreasonable and required a much more thorough investigation than either

4

pharmacist performed. He will also testify that these quantities of corticosteroids could not have been obtained at a retail pharmacy, consistent with Lindner's direction to Stacey that she fill them at TCC. If needed, he would also testify in rebuttal to the defense pharmacist expert.

2. Dr. Carl Gainor is an expert pharmacist who will testify consistently with his two reports, and based upon his experience as both a pharmacist and a lawyer in Pennsylvania, and as a professor of pharmacy and law. While Dr. Gainor would not cite a case in front of the jury, he will establish that the duty described in *Riff v. Morgan Pharmacy* is the standard of care for pharmacists in Pennsylvania.

3. Dr. Mark Dershwitz is an expert toxicologist who will testify consistently with his two reports that TCC's corticosteroids created a substantial risk of serious harm to Stacey, and that TCC caused her injuries. He will describe for the jury how adverse drug events are among the most common causes of bowel perforations, and how corticosteroids are associated with bowel perforations, but antimalarial medications are not. Depending upon the outcome of the pretrial motions, he may address other topics raised in his reports and deposition. He may also rebut the defense expert, Dr. Smith, on the issue of cause, and particularly the impact of high doses of corticosteroids on the bowel.

4. Dr. Jonathan Williams is an endocrinologist who, <u>if called</u>, will testify consistently with his two reports that TCC's corticosteroids created a substantial risk

of serious harm to Stacey, and that TCC caused her injuries. Depending upon the outcome of the pretrial motions, he may address other topics raised in his reports and deposition. He may also rebut the defense expert, Dr. Smith, particularly with respect to the impact of high doses of corticosteroids on the structure of the bowel, and the cumulative nature of the injury.

     5.     Dr. Paul Auwaerter is an infectious diseases expert with particular knowledge about babesiosis who, <u>if called either in the case-in-chief or in rebuttal</u>, can educate the jury about babesiosis and its treatment, and address the issue of whether tafenoquine could have caused the bowel perforation, as alleged by the defense expert Dr. Smith.

     **G.**     **Special Comment about Pleadings and Discovery:** None.

     **H.**     **Summary of Legal Issues and Legal Authorities:** In Judge Mannion's summary judgment opinion, he recognized that the pharmacists' duty in this case is described in *Riff v. Morgan Pharmacy*, 508 A.2d 1247 (Pa. Super. Ct. 1986). *See* Doc. No. 62 at 6. TCC also cited *Riff* favorably at the summary judgment stage. *See* Doc. No. 56-1 at 8.

    The legal duty described in *Riff* is as follows:

> A pharmacist is a professional. In the performance of his professional duties he will be held to the standard of care, skill, intelligence which ordinarily characterizes the profession. Public policy requires that pharmacists who prepare and dispense drugs and medicines for use in the human body must be held responsible for the failure to exercise the degree

> of care and vigilance commensurate with the harm which would be likely to result from relaxing it.

508 A.2d at 1251. The Court went on to explain that in the circumstances of that case, the pharmacy breached its duty "by failing to warn the patient or notify the prescribing physician of the obvious inadequacies appearing on the face of the prescription which created a substantial risk of serious harm to the plaintiff." *Id*. at 1252. Plaintiffs have requested a jury instruction with this language.

The other legal issues in the case are reflected in the parties' motions *in limine*, for which they await rulings by the Court.

    **I.**    **Stipulations Desired:** Plaintiffs believe that TCC should stipulate to the amount of past medical expenses, and to the fact that Courtney Young and Brian Bryk were both agents of TCC, acting in the scope of their normal duties, when they dispensed the drugs alleged in the Complaint.

    **J.**    **Estimated Trial Days**: Ten.

    **K.**    **Other Pertinent Matters**: The Court should also address the presence of Dr. Lindner during the trial.

    **L.**    **Exhibit List**: See attached.

    **M.**    **Special Verdict Questions**: See attached verdict sheet, updated to remove future medical expenses and earning capacity.

    **N.**    N/A.

**O.** **Deposition Videos**: Plaintiffs presently intend to use deposition videos only if needed for impeachment. Accordingly, the parties have not yet conferred on this issue, but Plaintiffs' counsel commits to doing so before trial if needed to comply with LR 30.10.

**P.** N/A.

                                              Respectfully submitted,

                                              **KLINE & SPECTER, P.C.**

BY: *Conor Lamb*
                                          SHANIN SPECTER, ESQUIRE
PA Attorney I.D. No. 40928
CONOR LAMB, ESQUIRE
PA Attorney I.D. No. 304874
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 402-2359
Shanin.Specter@klinespecter.com
Conor.Lamb@klinespecter.com

Date: April 4, 2025