## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY WOLKING and DARYL WOLKING, W/H | CIVIL ACTION 3:23-cv-00806-MEM |
| Plaintiffs, | |
| v. | **BRIEF IN SUPPORT OF THE RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF CONSENT FORMS** |
| HENRY LINDNER, M.D., and YOUNGS APOTHECARY, INC. d/b/a TUNKHANNOCK COMPOUNDING CENTER | |
| Defendants. | |

Defendant, Youngs Apothecary, Inc. ("Youngs") d/b/a Tunkhannock Compounding Center ("TCC") (collectively as a defendant, "Tunkhannock"), by its undersigned counsel, hereby files Brief in Support of its Response in Opposition to Plaintiffs' Motion *in Limine* to Preclude Evidence of Consent Forms.

### I.    FACTUAL AND PROCEDURAL HISTORY

*See* the Factual History in the *Daubert* Motion and Memorandum filed as to plaintiffs' expert, Paul Auwaerter, M.D., filed by Tunkhannock, which it hereby incorporates by reference as if fully set forth herein at length.

Additionally, Tunkhannock stipulates to the following facts in Plaintiffs' Statement of Facts contained in their Brief in Support of their Motion to Preclude Evidence of Consent Forms:

1

During the time that Lindner treated Ms. Wolking, she signed two consent forms provided by his office. Neither form mentions TCC. The first was dated November 1, 2013, and was titled "Consent for Bioidentical Hormone Restoration and Nutritional Therapy." *See* Ex. A. Ms. Wolking signed this form approximately nine years before she was hospitalized with the injuries at issue in this case. The second form is dated October 6, 2021, and is titled "Consent for Treatment of

2

Chronic Babesiosis." *See* Ex. B. Ms. Wolking signed this form approximately one year before she was hospitalized.

*See Plaintiff's Brief in Support of Motion to Preclude Evidence of Consent Forms.*
(Dkt.93)

## II.    QUESTION PRESENTED

**Question 1:** Should the Court preclude any evidence of the consent forms?

**Suggested Answer:**    **No.**

## III.    ARGUMENT

The mere fact that Tunkhannock was not a party to the Consent Forms does not render them inadmissible at trial. Further the Consent Forms are relevant to

Plaintiffs' claims of negligence against Dr. Lindner and Tunkhannock, and Tunkhannock's defenses in this matter. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence "is admissible except as otherwise [provided]" the Constitution, statute, the Rules of Evidence, or other rules. Fed. R. Evid. 402. One such exception is that relevant evidence may be excluded "if its probative value is ***substantially*** outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added).

First, Tunkhannock pled as an affirmative defense in their Answer that "Plaintiffs assumed the risk." *See Tunkhannock's Twenty-Sixth Affirmative Defense*. (Dkt. 36 at 49) While the Pennsylvania Supreme Court has "in essence" abolished assumption of the risk as an affirmative defense, except in strict liability cases, cases in which the doctrine is preserved include those by statute, **or cases involving an express assumption of risk.** *Howell v. Clyde*, 620 A.2d 1107, 1113 n.10 (Pa. 1993) (plurality opinion) (**emphasis added);** *see also Dixon v. Pennsylvania Department of Corrections*, 2022 WL 3330142 (M.D. Pa. August 11, 2022). For an assumption of risk argument to succeed, as a matter of law, defendant has to establish the following: 1) [the plaintiff] consciously appreciated

the risks attending her action; (2) she assumed the risk of injury by engaging in the action despite appreciating its risks; and, (3) the injury she sustained was the same as that which she appreciated and assumed. *Bolyard v. Wallenpaupack Lake Estates, Inc*., 2012 WL 629391, at *5 (M.D. Pa. Feb. 27, 2012). Assumption of risk may be established as a matter of law only where "it is quite clear that the specific risk that occasioned injury was both fully appreciated and voluntarily accepted." *Bullman v. Giuntoli,* 761 A.2d 566, 571 (Pa. Super. Ct. 2000).

Further, the Pennsylvania Supreme Court revisited the holding in the case cited by Plaintiffs in their Brief, *Brady v. Urbas*, 111 A.3d 1155, 1162 (Pa. 2015), in the matter of *Mitchell v. Shikora,* 209 A.3d 307, 314 (Pa. 2019), finding that its decision in *Brad*y had been misconstrued, and the *Mitchell* Court found that evidence of potential risks and complications presented by the defendants at the medical negligence trial was admissible. *Mitchell v. Shikora,* 209 A.3d at 323 ("[W]e find the trial court herein properly distinguished between informed-consent evidence, which it did not admit, and surgical risks and complications evidence, which it admitted."). Further, the *Mitchell* Court stated the following:

> "[R]isks and complications evidence may clarify the applicable standard of care, and may be essential to provide, in this area, a complete picture of that standard, as well as whether such standard was breached. Stated another way, risks and complications evidence may assist the jury in determining whether the harm suffered was more or less likely to be the result of negligence. Therefore, it may aid the jury in determining both the

> standard of care and whether the physician's conduct
> deviated from the standard of care."

*Id.* at 318.

Here, Ms. Wolking expressly assumed the risk of her actions by agreeing to undergo treatment with Dr. Lindner for chronic babesiosis, agreeing to taking non-FDA approved medication for the indication; and voluntarily assuming the risks and complications associated with the treatment, making the doctrine of assumption of risk appropriate in this case. In the "Consent Form for the Treatment of Chronic Babesiosis" (the "Consent Form"), Ms. Wolking initialed beside each paragraph of the Consent Form, including beside the following paragraphs:

- that she was seeing Dr. Lindner for the diagnosis and treatment of Babesiosis;

- that she understood Chronic Babesiosis is not yet recognized by the Centers for Disease Control or the Infection Diseases Society of America and that is his practice is based upon his own interpretation of the human and veterinary literature and upon patients' response to therapy;

- that she understood the treatment is "very difficult, requirement many months or years of multiple prescription medications and non-prescription supplements" and that "[her] condition will worsen before it improves" and that if "[she does] not continue the therapy [she] may be left in a worse state";

- that she understood that Dr. Lindner will prescribe medications "that are not FDA-approved for this infections, and/or at doses and durations that are not FDA-approved for any indication";

- That she understood that Dr. Lindner may recommended corticosteroid/DHA therapy to control immune-related inflammation and may require doses that cause fluid retention, muscle loss, bone density loss, high blood sugar and high blood pressure;

- That she consented to the administration of antimicrobials, medications and supplements by Dr. Lindner for the purpose of eliminating parasites;

- and that she understood the risks and possible complications involved in treatment, including "**increased inflammation and suffering**, fever, hemolysis, **headaches**, **nausea**, **anxiety, depression**, **suicidality,** derealization, **impaired cognition,** rashes, enlargement of the spleen, and cardiac rhythm disturbances**" and that if she has "any severe psychiatric or physical symptoms, [she]  will see [her] PCP or go to an emergency room**."

*See Plaintiffs' Brief at Exhibit B*. (Dkt. 92-2) Ms. Wolking consciously appreciated the risks by agreeing to be treated by Dr. Lindner when she reviewed and signed the Consent Form, and despite knowing the risks involved, Ms. Wolking voluntarily accepted that risk and agreed to be treated by Dr. Lindner for chronic babesiosis. Lastly, the injuries she alleges to have sustained – increased inflammation, suffering, headaches, nausea, anxiety, depression, suicidality, impaired cognition, and psychiatric symptoms, including Post Traumatic Stress Disorder, are the same injuries she appreciated and assumed. *Id.*

Additionally, under *Mitchell*, the risks and complications evidence contained in the Consent Form, as well as the understanding that the treatment, which was based upon Dr. Lindner's "own interpretation of the human and veterinary

literature" and upon Ms. Wolking's responses to therapy, would be "difficult" and that she would be taking medication for a non-FDA approved treatment, potentially non-FDA approved medication, and corticosteroids as part of her treatment for an unrecognized condition, would clearly clarify the applicable standard of care at issue here and whether Dr. Lindner's treatment fell below the applicable standard of care, *i.e.*, it would assist the jury in determining whether the harm suffered was more or less likely to be the result of negligence by Dr. Lindner. Evidence of the Consent Form is highly probative as it relates to Ms. Wolking's claim of negligence against Tunkhannock because, if a jury were to find that Dr. Lindner did not breach the applicable standard of care in prescribing Ms. Wolking the of corticosteroids, which were filled by Tunkhannock, that he did here, it follows, then, that Tunkhannock cannot be found negligent for dispensing the specific corticosteroids as prescribed by Dr. Lindner to treat Ms. Wolking for chronic babesiosis.

If the Court finds that the Consent Form is not admissible to prove negligence against Dr. Lindner, himself, or even Tunkhannock, at the very least, the Consent Form signed by Ms. Wolking are admissions by Ms. Wolking made for purposes of treatment pursuant to the Rules of Evidence, which includes "a statement that is made for – and is reasonably pertinent to – medical treatment or diagnosis in contemplation of treatment." Fed. R. Evid. 803(4)(A). The Consent

Form is also not hearsay and an admission, as the statements by Ms. Wolking would be offered against her and were made by Ms. Wolking in an individual capacity. *See* Fed. R. Evid. 801(d)(2). The Consent Form is also further an exception to the hearsay rule ("prior statement by a declarant-witness who testifies to an inability to remember the subject matter of the statement, unless the court finds the claimed inability to remember to be credible, and the statement: (A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition; (B) is a writing signed and adopted by the declarant; or (C) is a verbatim contemporaneous electronic recording of an oral statement." Fed. R. Evid. 803(4).

The Consent Form clearly contains a writing signed and adopted by Ms. Wolking, as she initialed beside each paragraph noting her understanding of each paragraph, and she signed the bottom of the Consent Form. If Ms. Wolking claims she cannot remember signing the Consent Form, the Consent Form is admissible.

## IV.    <u>CONCLUSION</u>

On these grounds, the Consent Form is relevant and admissible evidence and, therefore, should not be precluded at trial. (Dkt. 92-2) Based on the foregoing, the Court should thus deny plaintiffs' Motion *in Limine*.

Respectfully submitted,

By:   */s/ Conrad James Benedetto*
      Philip D. Priore, Esquire

Attorney ID: 38987
Conrad James Benedetto, Esquire
Attorney ID: 312404
Susan C. Keesler, Esquire
Attorney ID: 312977
**MCCORMICK & PRIORE, P.C.**
2 Commerce Square
2001 Market Street, Suite 3810
Philadelphia, PA 19103
(T) 215-972-0161
(F) 215-972-5580
ppriore@mccormickpriore.com
cbenedetto@mccormickpriore.com
Attorneys for Defendant,
Youngs Apothecary, Inc. d/b/a
Tunkhannock Compounding Center

Dated: April 7, 2025